UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JASON A. RICHER, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | C.A. No.  15-162 |
| JASON PARMELEE as the Finance Director of | : | |
| THE TOWN OF NORTH SMITHFIELD, | : | |
| TOWN OF NORTH SMITHFIELD, and | : | |
| STEVEN E. REYNOLDS in his official | : | |
| capacity as Chief of the NORTH SMITHFIELD | : | |
| POLICE DEPARTMENT | : | |
| Defendants | : | |

## AMENDED VERIFIED COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS SEEKING INJUNCTIVE AND DECLARATORY RELIEF

### PARTIES

1. Plaintiff Jason A. Richer is a natural person and citizen of the United States and of the State of Rhode Island, residing in North Smithfield, Rhode Island. He is a disabled Air Force veteran who received an honorable discharge in August of 1986. He is the father of three sons.  Plaintiff is not a felon nor is he under guardianship or treatment or confinement by virtue of being a mental incompetent, or who has been adjudicated or is under treatment or confinement as a drug addict.

2. Defendant Town of North Smithfield ("the Town") is a town chartered by the State of Rhode Island. Defendant Steven E. Reynolds is the Chief of the North Smithfield Police Department. As such, he is responsible for formulating, executing and administering with the Town the laws, customs, practices, and policies at issue in this lawsuit. Through its Police Department, the Town has enforced the challenged laws, customs and practices against Plaintiff.

1

3. Defendant Jason Parmelee is the Finance Director of the Town of North Smithfield. As such, he is responsible for directing and coordinating the operations of the various divisions of the Finance Department and serves as Treasurer/Collector for the Town of North Smithfield.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this case involves a federal question pertaining to the United States Constitution. The Court has pendant jurisdiction over Plaintiff's claims arising under state law.

5. Venue lies in this Court pursuant to 28 U.S.C. § 1391 as this is the judicial district where defendants reside and this is the judicial district where the cause of action arose.

## STATEMENT OF FACTS

*Background*

6. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

7. The Second Amendment is incorporated as against the states through the Fourteenth Amendment, such that Defendant cannot, under color of law, deprive Plaintiff of his right to keep and bear arms.

8. Article 1, Section 22 of the Rhode Island Constitution provides: "The right of the people to keep and bear arms shall not be infringed."

9. Plaintiff legally obtained and possessed three guns, a Remington 1100 shotgun which was purchased in 1979 from Edgar's Sporting Goods located in Woonsocket RI, a Thompson Center .50 caliber black powder muzzleloader which was purchased in 1993

from Bullseye Shooting Supplies located in Woonsocket RI, and a .22 caliber bolt action

rifle obtained in 1982 which previously belonged to his deceased father who died in

1974. He has completed a hunter safety course and received weapons training while in

the military and gained the classification of marksman. He is well trained in gun safety

and maintenance.

10. On or about September 28, 2008, Plaintiff and his now-former wife Tracy Richer had an

argument about Ms. Richer wanting a divorce.

11. North Smithfield police officers and North Smithfield Rescue paramedics went to

Plaintiff's residence at 7 Mattity Road, North Smithfield, RI in response to a call from

Ms. Richer, who said she was concerned Plaintiff had tried to harm himself.

12. The officers informed Plaintiff they were there to check on his well-being.

13. Plaintiff informed the officers that he was not suicidal and his wife had misconstrued his

earlier actions and conversation.

14. The North Smithfield police insisted that Plaintiff submit to a mental health evaluation

and he was transported to Landmark Medical Center in Woonsocket, Rhode Island for

evaluation. The doctor at the hospital who examined him discharged him within a few

minutes of arrival without further evaluation.

15. The police officers removed from Plaintiff's garage/workshop the three guns which had

been secured in a locked room, within a locked case and transported them to headquarters

for "safe keeping."

16. On or about November 24, 2008, Plaintiff obtained from the North Smithfield Police

Department ("NSPD") a copy of its "Incident Report" with respect to the September 28,

2008 incident.   A true and accurate copy of the Incident Report that was given to him by the NSPD is attached as Exhibit A.

17. The Incident Report states, in part:

"On the reported date and time, Lt. Riccitelli, Ptlm. Amato, Ptlm. Lamoureux, Ptlm. Bergeron and I ["Patrol Gregory Landry"] were dispatched to 7 Mattity Road for a report of as suicidal male by means of pills.   Upon arrival, I met with the caller Tracy Richer while Ptlm Bergeron met with Jason Richer.   Tracy stated that she and her husband Jason Richer, had engaged in a verbal argument about her wanting a divorce from Jason…NS Rescue responded to the scene to transport Jason to LMC [Landmark Medical Center] for evaluation.   While on scene, Officers learned that Jason had three guns located upstairs in his workshop.   Officers then followed Tracy into the workshop where a 22 caliber rifle, a 12 gauge Remington shotgun and a Thompson Center 50 caliber black powder rifle were seized and held for safekeeping at NSPD."

18. The NSPD did not seize any of Plaintiff's medications as a result of the September 28, 2008 incident.

19. On information and belief, the NSPD took no steps to prevent Plaintiff from obtaining any firearms after the September 28, 2008 incident.

20. On information and belief, the NSPD researched all of the firearms seized through the National Crime Information Center (NCIC) and with all being found negative for any criminal activity.

21. On information and belief, Defendants' officers logged all of the items seized and then forwarded them to its Bureau of Criminal Investigation (BCI) Division for "safe keeping."

22. Plaintiff was not charged with any crime nor has he ever been charged with any crime.

23. On information and belief, the NSPD has never been notified by a justice of the superior court or the attorney general that the firearm is necessary as evidence in a criminal or civil matter.

24. One or about November 21, 2008, Plaintiff went to the NSPD to retrieve his guns. The police refused to return them to Plaintiff insisting that he hire a lawyer and obtain a court order for the return of his firearms. The police officer Plaintiff spoke to informed him that he would have to prove that he is fit to have his weapons returned. He was told by the police officer that they did not care about his civil rights.

25. On or about November 24, 2008, Plaintiff's psychologist, John Murphy, Psy.D., wrote a letter to the NSPD attesting that Plaintiff was not a danger to himself nor others and that there is no reason why returning his guns to him would pose a risk. A true and accurate copy of the letter is attached as Exhibit B.

26. On or about November 25, 2008, Ms. Richer, wrote a letter to the NSPD detailing the misunderstanding which led to the confiscation of Plaintiff's firearms and attesting that the telephone call that she had placed to the police department on September 28, 2008, had been a "false alarm," that the incident was unfortunate incident, that it is not necessary for the police to continue to hold the firearms, that she does not believe Plaintiff to be a danger to himself or to others, and that she was comfortable with his being in possession of his firearms at their home. A true and accurate copy of the letter is attached as Exhibit C.

27. On or about December 16, 2009, Plaintiff delivered a letter to the NSPD requesting the release of his firearms and enclosed the above-mentioned letters attached as Exhibits B

and C. Plaintiff's letter detailed that he was not charged with a crime, there have been no related incidents, requested a date and time to retrieve his firearms, and requesting a response in writing within thirty days if they did not agree to release his firearms. A true and accurate copy of the letter is attached as Exhibit D.

28. Plaintiff did not receive any response from the NSPD to the letter attached as Exhibit D.

29. On or about July 24, 2013, Plaintiff returned to the NSPD and presented to the Executive Officer Captain Tim Lafferty the letters attached as Exhibits B and C and detailed the facts listed above to which Capt. Lafferty responded that Plaintiff's firearms were still being held for "public safety." Mr. Richer presented Capt. Lafferty with a newspaper clipping regarding "Robert Machado v. City of Cranston", et al. (C.A. 12-445S) to which Capt. Lafferty responded that Plaintiff's guns could not be returned due to the liability on the police department if Plaintiff were to hurt himself or someone else upon return of the weapons. A true and accurate copy of the Providence Journal newspaper article respecting "Machado v. City of Cranston," is attached as Exhibit E.

30. On or about August 9, 2013, Plaintiff spoke on the telephone with Capt. Lafferty. Capt. Lafferty indicated he was waiting for a response from the Attorney General's Office and that he needed another week to review the matter with the Chief of Police as he would not be available for the next week.

31. On or about October 3, 2013, Capt. Lafferty indicated that the town solicitor, Assistant Attorney General Paul Karns, and he intended to get a release and/or waiver and a date and time for Plaintiff to retrieve his firearms.

32. On or about December 20, 2013, Plaintiff again emailed Capt. Lafferty inquiring about the status of the return of his firearms to which Plaintiff received no response.

33. On or about January 21, 2015, Plaintiff again emailed Capt. Lafferty inquiring about the status of the return of his firearms to which Capt. Lafferty responded that he would be having a meeting with the new town solicitor that week, that he would discuss the issue with the new solicitor, and he would "get back to" Plaintiff.

34. Plaintiff has not heard from Capt. Lafferty or the Town about this matter since January 21, 2015.

35. On or about March 20, 2015, Steven Brown, Executive Director of the American Civil Liberties Union of Rhode Island, sent a letter to Defendant Reynolds, detailing the above-stated facts and requesting arrangements be made to return the firearms by April 3, 2015 to which Mr. Brown received no response. A true and accurate copy of the letter is attached as Exhibit F.

36. When they seized Plaintiff's property, Defendants set in motion a series of events that they knew or should have known would result in Plaintiff's inability to recover, or extreme difficulty in recovering, his property.

37. Defendants have a custom, policy, or practice or requiring lawful weapons owners to engage in formal litigation to recover their seized property.

38. Plaintiff has been unable to recover his weapons even though his weapons are not evidence, have not been used to commit a crime, and Plaintiff has been cleared by Dr. Murphy as not being a threat to himself or others.

39. By seizing Plaintiff's property without notice, refusing to return it to him, and refusing to allow him a meaningful opportunity to be heard on the matter, Defendants have deprived Plaintiff of his property without due process of law.

40. By setting in motion a series of events that Defendants knew or should have known would result in inability or extreme difficulty in recovering Plaintiff's property, Defendants deprived Plaintiff of his property without due process of law.

41. By maintaining a custom, policy or practice of requiring lawful weapons owners, but not other property owners, to engage in formal litigation to recover their seized property, Defendants have denied Plaintiff the equal protection of the laws.

42. By refusing to return Plaintiff's weapons to him, Defendants have infringed on Plaintiff's right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution and incorporated to the States by the Fourteenth Amendment as well as Art. 1, Sec. 22 of the Rhode Island Constitution.

### Count I – Violation of the Rhode Island Firearms Act

43. Paragraphs 1 through 42 are incorporated as though fully stated herein.

44. Defendants' actions violate Section 22(b) of the Rhode Island Firearms Act, R.I.Gen.L. § 11-47-1, et seq., which Section states, in part: "If the police department in the city or town in which the firearm was seized or confiscated has not been notified by a justice of the superior court or the attorney general that the firearm is necessary as evidence in a criminal or civil matter, it shall be returned to the rightful owner."

45. Defendant's actions violate Sections 5, 6, and 7 of the Firearms Act which establish the exclusive grounds under Rhode Island law upon which a person may be denied possession of a firearm. These are generally that the person is a felon or fugitive from justice (Section 5), the person is a mental incompetent, drug addict or habitual drunkard (Sec. 6), or an illegal alien (Sec. 7).

## Count II -- Violation of Plaintiff's Right to Keep Arms

46. Paragraphs 1 through 45 are incorporated as though fully stated herein.

47. Plaintiff is a law abiding individual, competent in the safe handling of weapons. Plaintiff has also been declared by his psychologist to not pose a threat of harm to himself or others. Accordingly, there exists no reason to deny Plaintiff possession of his lawfully obtained weapons.

48. By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies, and practices that violate the Second and Fourteenth Amendments to the United States Constitution as well as Art. 1, Sec. 2 of the Rhode Island Constitution, and thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

## Count III -- Violation of Plaintiff's Due Process

49. Paragraphs 1 through 48 are incorporated as though fully stated herein.

50. Plaintiff has a cognizable property interest in his weapons, the seizure and retention of which was caused by Defendants without sufficient due process. Defendants are propagating customs, policies, and practices that violate Plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution and Art. 1, Sec. 2 of the Rhode Island Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

## Count IV -- Violation of Plaintiff's Right to Equal Protection

51. Paragraphs 1 through 50 are incorporated as though fully stated herein.

52. By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies and practices that violate Plaintiff's rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Art. 1 Sec. 2 of the Rhode Island Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

### Prayer for Relief

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the practice of seizing and retaining lawfully obtained weapons of individuals who are deemed to be of no threat to themselves or others, and who have not been charged with a crime;

2. Declaratory relief that the practice of seizing and retaining lawfully obtained weapons of individuals who are deemed to be of no threat to themselves or others, and who have not been charged with a crime is unconstitutional either on its face and/or as applied to bar those individuals who are legally entitled to possess weapons;

3. Declaratory relief that the practice of requiring weapons owners who are not charged with a crime to engage in formal litigation in order to recover their seized property is unlawful and unconstitutional;

4. The immediate return of Plaintiff's weapons to him;

5. Compensatory damages for the loss of use of his firearms and the cost of repair and/or replacement for any damage done to Plaintiff's weapons while in Defendants' possession;

6. Punitive damages in a sufficient amount to deter Defendants from further violating the rights of Plaintiff and other lawful weapon owners.

7. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

8. Any other relief as the Court deems just and appropriate.

Respectfully submitted,
**JASON RICHER**
By his attorney,

/s/ Thomas W. Lyons
Thomas W. Lyons          #2946
RHODE ISLAND AFFILIATE,
AMERICAN CIVIL LIBERTIES UNION
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY OF ALL ISSUES SO TRIABLE.

## VERIFICATION

I have read the allegations of this Complaint and state that they are true and accurate to the best of my knowledge and belief.

Jason A. Richer

Subscribed and sworn to before me this 20th day of April, 2015.

Notary Public
My commission expires: 5/25/16

RHIANNON S HUFFMAN
Notary Public-State of Rhode Island
My Commission Expires
May 25, 2016

11