UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JASON A. RICHER, : | |
|     Plaintiff : | |
| : | |
| v. : | C.A. No. 15-162-L-PAS |
| JASON PARMELEE as the Finance Director of : | |
| THE TOWN OF NORTH SMITHFIELD, : | |
| TOWN OF NORTH SMITHFIELD, and : | |
| STEVEN E. REYNOLDS in his official : | |
| capacity as Chief of the NORTH SMITHFIELD : | |
| POLICE DEPARTMENT : | |
|     Defendants : | |

## PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

Pursuant to LR CV 56(a)(1), Plaintiff Jason A. Richer submits this Statement of Undisputed Facts in Support of his Motion for Partial Summary Judgment. The Statement is based on his Amended Verified Complaint (ECF #4) ("Complaint") and, in part, on Defendants' Answer (ECF #10) ("Answer")[1]:

1. Plaintiff Jason A. Richer is a natural person and citizen of the United States and of the State of Rhode Island, residing in North Smithfield, Rhode Island. He is a disabled Air Force veteran who received an honorable discharge in August of 1986. He is the father of three sons. Plaintiff is not a felon nor is he under guardianship or treatment or confinement by virtue of being a mental incompetent, nor has he been adjudicated or has he been under treatment or confinement as a drug addict. (Complaint, ¶1; Answer, ¶1).

2. Defendant Town of North Smithfield ("the Town") is a town chartered by the State of Rhode Island. Defendant Steven E. Reynolds is the Chief of the North Smithfield Police Department. As such, he is responsible for formulating, executing and administering

---

[1] It appears that Defendants' Answer responds to the allegations of the original Verified Complaint (ECF #1), not the Amended Verified Complaint, as the Answer does not respond to all the allegations of the Amended Verified Complaint.

with the Town the laws, customs, practices, and policies at issue in this lawsuit. Through its Police Department, the Town has enforced the challenged laws, customs and practices against Plaintiff. (Id., ¶2).

3. Defendant Jason Parmelee is the Finance Director of the Town of North Smithfield. As such, he is responsible for directing and coordinating the operations of the various divisions of the Finance Department and serves as Treasurer/Collector for the Town of North Smithfield. (Id., ¶3; Answer ¶3).

4. Plaintiff legally obtained and possessed three guns, a Remington 1100 shotgun which was purchased in 1979 from Edgar's Sporting Goods located in Woonsocket RI, a Thompson Center .50 caliber black powder muzzleloader which was purchased in 1993 from Bullseye Shooting Supplies located in Woonsocket RI, and a .22 caliber bolt action rifle obtained in 1982 which previously belonged to his deceased father who died in 1974. He has completed a hunter safety course and received weapons training while in the military and gained the classification of marksman. He is well trained in gun safety and maintenance. (Id., ¶9; Answer ¶7).

5. On or about September 28, 2008, Plaintiff and his now-former wife Tracy Richer had an argument about Ms. Richer wanting a divorce. North Smithfield police officers and North Smithfield Rescue paramedics went to Plaintiff's residence at 7 Mattity Road, North Smithfield, RI in response to a call from Ms. Richer, who said she was concerned Plaintiff had tried to harm himself. (Id., ¶¶ 10, 11; Answer ¶ 5).

6. The officers informed Plaintiff they were there to check on his well-being. Plaintiff informed the officers that he was not suicidal and his wife had misconstrued his earlier actions and conversation. (Id., ¶¶ 12, 13).

7. The North Smithfield police insisted that Plaintiff submit to a mental health evaluation and he was transported to Landmark Medical Center in Woonsocket, Rhode Island for evaluation. The doctor at the hospital who examined him discharged him within a few minutes of arrival without further evaluation.  (Id., ¶ 14).

8. The police officers removed from Plaintiff's garage/workshop the three guns which had been secured in a locked room, within a locked case and transported them to headquarters for "safekeeping."  (Id., ¶ 15; Answer ¶ 5).

9. On information and belief, the North Smithfield Police Department researched all of the firearms seized through the National Crime Information Center (NCIC) and with all being found negative for any criminal activity.  (Id., ¶ 20; Answer ¶ 5).

10. On information and belief, Defendants' officers logged all of the items seized and then forwarded them to their Bureau of Criminal Investigation (BCI) Division for "safekeeping." (Id., ¶ 21; Answer ¶ 5).

11. Plaintiff was not charged with any crime nor has he ever been charged with any crime.  (Id., ¶ 22; Answer ¶ 5).

12. On or about November 21, 2008, Plaintiff went to the North Smithfield Police Department to retrieve his guns. The police refused to return them to Plaintiff insisting that he hire a lawyer and obtain a court order for the return of his firearms. The police officer Plaintiff spoke to informed him that he would have to prove that he is fit to have his weapons returned. He was told by the police officer that they did not care about his civil rights.  (Id., ¶ 24).

13. On or about November 24, 2008, Mr. Richer obtained from the North Smithfield Police Department ("NSPD") a copy of its "Incident Report" with respect to the September 28,

2008 incident at his home. A true and accurate copy of the Incident Report that Mr. Richer received is attached to the Complaint as Exhibit A.  (Id., ¶ 16; Answer ¶ 5).

14. The Incident Report states, in part:

"On the reported date and time, Lt. Riccitelli, Ptlm. Amato, Ptlm. Lamoureux, Ptlm. Bergeron and I ["Patrol Gregory Landry"] were dispatched to 7 Mattity Road for a report of as suicidal male by means of pills.  Upon arrival, I met with the caller Tracy Richer while Ptlm Bergeron met with Jason Richer.  Tracy stated that she and her husband Jason Richer, had engaged in a verbal argument about her wanting a divorce from Jason…NS Rescue responded to the scene to transport Jason to LMC [Landmark Medical Center] for evaluation.  While on scene, Officers learned that Jason had three guns located upstairs in his workshop.  Officers then followed Tracy into the workshop where a 22 caliber rifle, a 12 gauge Remington shotgun and a Thompson Center 50 caliber black powder rifle were seized and held for safekeeping at NSPD."  (Id., ¶ 17).

15. The NSPD did not seize any of Plaintiff's medications as a result of the September 28, 2008 incident. (Id., ¶ 18).

16. On information and belief, the NSPD took no steps to prevent Plaintiff from obtaining any firearms after the September 28, 2008 incident.  (Id., ¶ 19).

17. On or about November 24, 2008, Plaintiff's psychologist, John Murphy, Psy.D., wrote a letter to the North Smithfield Police Department attesting that Plaintiff was not a danger to himself nor others and that there is no reason why returning his guns to him would pose a risk. A true and accurate copy of the letter is attached to the Complaint as Exhibit B.  (Id., ¶ 25).

18. On or about November 25, 2008, Plaintiff's then-wife, Ms. Richer, wrote a letter to the North Smithfield Police Department detailing the misunderstanding which led to the confiscation of Plaintiff's firearms and attesting that the telephone call that she had placed to the police department on September 28, 2008, had been a "false alarm," that the incident was unfortunate incident, that it is not necessary for the police to continue to hold the firearms, that she does not believe Plaintiff to be a danger to himself or to others, and that she was comfortable with his being in possession of his firearms at their home. A true and accurate copy of the letter is attached to the Complaint as Exhibit C.  (Id., ¶ 26).

19. On or about December 16, 2009, Plaintiff delivered a letter to the North Smithfield Police Department officially requesting the release of his firearms and enclosed the above-mentioned letters attached to the Complaint as Exhibits B and C. Plaintiff's letter detailed that he was not charged with a crime, there have been no related incidents, requested a date and time to retrieve his firearms, and requesting a response in writing within thirty days if they did not agree to release his firearms. A true and accurate copy of the letter is attached to the Complaint as Exhibit D.  (Id., ¶ 27).

20. Plaintiff did not receive any response from the North Smithfield Police Department to the letter attached as Exhibit D.  (Id., ¶ 28; Answer ¶ 5).

21. On or about July 24, 2013, Plaintiff returned to the North Smithfield Police Department and presented to the Executive Officer Captain Tim Lafferty the letters attached to the Complaint as Exhibits B and C and detailed the facts listed above to which Capt. Lafferty responded that Plaintiff's firearms were still being held for "public safety." Mr. Richer presented Capt. Lafferty with a newspaper clipping regarding "Robert Machado v. City of Cranston", et al. (C.A. 12-445S) to which Capt. Lafferty responded that Plaintiff's

guns could not be returned due to the liability on the police department if Plaintiff were to hurt himself or someone else upon return of the weapons. A true and accurate copy of the Providence Journal newspaper article respecting "Machado v. City of Cranston," is attached to the Complaint as Exhibit E. (Id., ¶ 29).

22. On or about August 9, 2013, Plaintiff spoke on the telephone with Capt. Lafferty. Capt. Lafferty indicated he was waiting for a response from the Attorney General's Office and that he needed another week to review the matter with the Chief of Police as he would not be available for the next week. (Id., ¶ 30).

23. On or about October 3, 2013, Capt. Lafferty indicated that the town solicitor, Assistant Attorney General Paul Karns, and he intended to get a release and/or waiver and a date and time for Plaintiff to retrieve his firearms. (Id., ¶ 31).

24. On or about December 20, 2013, Plaintiff again emailed Capt. Lafferty inquiring about the status of the return of his firearms to which Plaintiff received no response. (Id., 32).

25. On or about January 21, 2015, Plaintiff again emailed Capt. Lafferty inquiring about the status of the return of his firearms to which Capt. Lafferty responded that he would be having a meeting with the new town solicitor that week, that he would discuss the issue with the new solicitor, and that he would "get back to" Plaintiff. (Id., ¶ 33).

26. Plaintiff did not hear from Capt. Lafferty or the Town in response to that email. (Id., ¶ 34).

27. On or about March 20, 2015, Steven Brown, Executive Director of the American Civil Liberties Union of Rhode Island, sent a letter to Defendant Reynolds, detailing the above-stated facts and requesting arrangements be made to return the firearms by April 3, 2015

to which Mr. Brown received no response. A true and accurate copy of the letter is attached to the Complaint as Exhibit F.  (Id., ¶ 35).

28. When they seized Plaintiff's property, Defendants set in motion a series of events that they knew or should have known would result in Plaintiff's inability to recover, or extreme difficulty in recovering, his property.  (Id., ¶ 36).

29. Defendants have a custom, policy, or practice or requiring lawful weapons owners to engage in formal litigation to recover their seized property.  (Id., ¶ 37).

30. After Plaintiff filed his motion for preliminary injunction, Defendants returned Plaintiff's weapons to him.  (Stipulation Respecting Plaintiff's Motion for Preliminary Injunction, ECF # 11).

> JASON RICHER
> By his attorney,
>
> /s/ Thomas W. Lyons
> Thomas W. Lyons         #2946
> RHODE ISLAND AFFILIATE,
> AMERICAN CIVIL LIBERTIES UNION
> Strauss, Factor, Laing & Lyons
> One Davol Square, Suite 305
> Providence, RI 02903
> (401) 456-0700
> tlyons@straussfactor.com

**CERTIFICATION**

I hereby certify that on September 6, 2015, a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system and served by email on Mark DeSisto, Esq. counsel for defendants. Parties may access this filing through the Court's CM/ECF system.

> /s/ Thomas W. Lyons
> Thomas W. Lyons