UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON A. RICHER,
    Plaintiff

v.   C.A. No. 15-162-L-PAS

JASON PARMELEE, as the Finance
Director of THE TOWN OF NORTH
SMITHFIELD, THE TOWN OF NORTH
SMITHFIELD, and STEVEN E.
REYNOLDS in his official capacity
as Chief of the NORTH SMITHFIELD
POLICE DEPARTMENT,
    Defendants.

## DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Jason A. Richer ("Plaintiff) has moved for partial summary judgment on liability against the Town of North Smithfield ("Town") and Steven E. Reynolds ("Reynolds") in his official capacity as Chief of the North Smithfield Police Department.[1]  In his amended verified complaint, Plaintiff alleges that the Town and Reynolds (collectively "Defendants") violated his federal and state constitutional rights and the Rhode Island Firearms Act, R.I. Gen. Laws § 11-47-1 et seq. by allegedly enforcing an unwritten policy of requiring all gun owners whose guns have been seized to obtain a state court order mandating the return of the gun.

---

[1] A suit against an individual in his or her official capacity is only a suit against the municipality.  Andino-Pastrana v. Municipio de San Juan, 215 F.3d 179 (1st Cir. P.R. 2000).  Thus, Plaintiff's suit is solely against the municipality.

Plaintiff moves for partial summary judgment on counts I, II, and III of the amended complaint. See Docket #4.[2]

## I. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party must point to specific facts demonstrating a trial worthy issue. Id. The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Insurance Co., 924 F.2d 370 (1st Cir. 1991).

## II.  Factual Background

On September 19, 2008, North Smithfield Police ("NSP") responded to Plaintiff's residence as a result of a report of a verbal domestic dispute between Plaintiff and his wife. Defendants' Statement of Undisputed Facts ¶ 30.  The NSP Incident report reflects that Plaintiff believed his wife was having an affair.  Id.   Plaintiff was "very upset" about the alleged affair and explained to NSP that he and his wife were going through the process of obtaining a divorce.

---

[2] Plaintiff moved for summary judgment pursuant to Fed. R. Civ. P. 56(d).  See Plaintiff's Motion for Partial Summary Judgment.   Fed. R. Civ. P 56(d) is a "safety net for parties that need more time to gather facts essential to resist a motion for summary judgment." Jones v. Secord, 684 F.3d 1, 6 (1st Cir. 2012).  Defendants presume that Plaintiff moves for partial summary judgment pursuant to Fed. R. Civ. P. 56(a).

Id.  NSP concluded that no crime had been committed and both parties declined to leave the residence.  Id.

Approximately one week later, On September 28, 2008, NSP again responded to Plaintiff's residence as a result of report from Plaintiff's wife that Plaintiff had tried to harm himself.  Defendants' Statement of Disputed Facts ¶ ¶ 5, 14.  The NSP incident report reflects that, on this occasion, Plaintiff and his wife were also arguing about a divorce.  Defendants' Statement of Undisputed Facts ¶ 31.  Plaintiff's wife explained to NSP that she had attempted to ask Plaintiff for a divorce on a number of occasions but Plaintiff "begs her not to file" and to try to "work it out."  Id.  During the argument, however, Plaintiff became upset, looked at his six-year old son, and exclaimed, "I'm going to bed and I wont [sic] get up."  Id.  Plaintiff's son reported to NSP that he saw his father "put pills in his mouth" and say "that he was going to bed and wasn't getting up."  Id.  Plaintiff's two other children were also present during the argument.  Id.

NSP explained to Plaintiff that they were at his residence to check on his well-being.  Defendants' Statement of Disputed Facts ¶ 6.  Following protocol, North Smithfield rescue personnel transported Plaintiff to Landmark Medical Center ("Landmark") for evaluation.  Id. at ¶ 7.  Plaintiff was subsequently evaluated and released from Landmark with instructions to "follow up [in] 2 [d]ays."  Id.

While at Plaintiff's residence, however, NSP seized three firearms for safekeeping: a 22 caliber rifle; a 12 gauge shotgun; and 50 caliber rifle.  Id. at ¶ 8.  Plaintiff was not charged with any crime and NSP determined that the firearms were not associated with any criminal activity.  Id. ¶ ¶ 9, 11.

On or about November 21, 2008, Plaintiff went to the North Smithfield Police Department ("NSPD") to retrieve his guns. Id. at ¶ 12. NSP, however, did not return the firearms to Plaintiff. On or about December 16, 2009, Plaintiff delivered a letter to NSPD requesting the release of the firearms. Id. at ¶ 19. Attached to the letter were letters from Plaintiff's psychologist and his wife. Id. The letters from Plaintiff's psychologist and wife were dated in November 2008. Id. at ¶¶ 17, 18. Plaintiff did not receive a response to the December 2009 letter. Id. at ¶ 20.

On or about July 24, 2013, Plaintiff returned to the NSPD and gave Captain Timothy Lafferty ("Lafferty") copies of the letters from his psychologist and his wife. Id. at ¶ 21. This was Lafferty's first contact with Plaintiff concerning the firearms. See id.; Exhibit 1, Lafferty Affidavit ¶ 4. Lafferty informed Plaintiff that his guns were being held for "public safety." Defendants' Statement of Disputed Facts ¶ 21. Lafferty told Plaintiff that NSPD would not return the firearms because of the potential liability that NSPD would be exposed to if Plaintiff were to hurt himself, or another individual, with the weapons. At some point soon after this meeting, Lafferty attempted to contact Plaintiff's psychologist to confirm the contents of the November 2008 letter. Defendants' Statement of Disputed Facts, Exhibit 1, Lafferty Affidavit ¶ 5. Lafferty, however, discovered that Plaintiff's psychologist was no longer employed by the medical practice listed on the letterhead. Id. Lafferty contacted Plaintiff to determine if Plaintiff had any other contact information for the psychologist but Plaintiff indicated that he did not. Id.

On or about August 9, 2013, Lafferty informed Plaintiff that he was waiting for a response from the Attorney General's Office and that he needed another week to review the matter. Defendants' Statement of Undisputed Facts ¶ 22. On or about October 3, 2013, Lafferty indicated that he intended to get a release and/or waiver of liability from the North Smithfield

4

town solicitor so that Plaintiff could execute it and retrieve his firearms. Id. at ¶ 23. In January of 2015, Plaintiff emailed Lafferty inquiring about the status of his firearms. Id. at 25. Lafferty informed Plaintiff that he would be meeting with the new Town solicitor to discuss the issue and would "get back to" Plaintiff. Id. at ¶ 25. Plaintiff, however, did not receive a response from Lafferty and ultimately filed this suit for the return of his firearms.[3]

### III.  The Rhode Island Firearms Act Does Not Provide for a Private Right of Action

Plaintiff alleges that Defendants have violated the Rhode Island Firearms Act, R.I. Gen. Laws § 11-47-1, et seq., by their continued retention of Plaintiff's firearms after the initial seizure.[4] Specifically, Plaintiff contends that Defendants have violated R.I. Gen. Laws § 11-47-22(b) by enforcing a purported unwritten policy[5] of requiring all gun owners whose guns have been seized, under any circumstances, to obtain a state District Court order before Defendants will return the guns.

R.I. Gen. Laws § 11-47-22(b) provides, in part, that:

> [w]hen a firearm is lawfully seized, confiscated from or turned in by any person, it shall be placed in the custody of the superintendent of state police or the chief of police in the city or town in which it was seized, confiscated or turned in to. The officer who takes custody of the firearm shall promptly ascertain, using available record keeping systems, including, but not limited to, the National Crime Information Center, whether the firearm has been reported stolen and if stolen shall notify the reporting law enforcement agency of the recovery of said firearm. <u>If the police department in the city or town in which the firearm was seized or confiscated has not been notified by a justice of the superior court or the attorney general that the firearm is necessary as evidence in a criminal or civil matter, it shall be returned to the lawful owner.</u> However, any owner of a firearm

---

[3] It is undisputed, however, that Defendants did not prevent Plaintiff from acquiring any <u>other</u> firearms after the September 28, 2008, incident. See Defendants' Statement of Undisputed Facts ¶ 16.
[4] Defendants have returned Plaintiff's firearms since the filing of this lawsuit.
[5] In his memorandum in support of his motion for partial summary judgment, Plaintiff only challenges an alleged policy; he does not challenge any purported custom or practice.

> who shall knowingly fail to report the loss or theft of the firearm to the proper law enforcement authorities shall not be entitled to its return.

R.I. Gen. Laws § 11-47-22(b) (emphasis added). Plaintiff argues that Defendants have not claimed that there is any civil or criminal matter involving Plaintiff's guns. Thus, Plaintiff concludes that Defendants have violated § 11-47-22 by not returning Plaintiff's firearms.

"Deputy sheriffs, the superintendant and members of the state police, members of the city or town police force, or other duly appointed law enforcement officers . . . shall have the power to enforce the provisions" of the Rhode Island Firearms Act. R.I. Gen. Laws § 11-47-55. Section 22(b) does not provide for a specific penalty for a violation of the statute. "<u>Unless otherwise specified,</u> any violation of any provision of [the Rhode Island Firearms Act] shall be punished by a fine of not more than one thousand dollars . . . or imprisonment for not more than five . . . years, or both . . . ." R.I. Gen. Laws § 11-47-26 (emphasis added). When the language of a statute is clear and unambiguous a court must interpret the statute literally and give the words their plain and ordinary meaning. <u>Shine v. Moreau</u>, 119 A.3d 1 (R.I. 2015). Furthermore, "[w]hen a statute does not plainly provide for a private cause of action . . . . such a right cannot be inferred." <u>Stebbins v. Wells</u>, 818 A.2d 711, 716 (R.I. 2003) (per curiam).

R.I. Gen. Laws § 11-47-26 provides three express remedies for enforcement; the imposition of a fine of not more than $1,000, imprisonment for not more than five years, or both. R.I. Gen. Laws § 11-47-26. The statutory language is clear; the Firearms Act does not provide for a private cause of action. Assuming arguendo that Defendants violated § 11-47-22(b), "the express language of the statue affords [Plaintiff] no personal remedy." <u>Pontbriand v. Sundlun</u>, 699 A.2d 856, 868 (R.I. 1997). Consequently, Plaintiff's state statutory claim must be dismissed.

Even if the Rhode Island Firearms Act provided for a private right of action against a municipality, summary judgment would be inappropriate. First, Plaintiff has failed his burden of showing a lack of disputed issues of material fact concerning whether Defendants acted pursuant to a policy. See Section IV B-2 of this memorandum. Second, even if Plaintiff had met his initial burden, Defendants dispute the existence of any such policy. Id. at B-3; see also Defendants' Statement of Disputed Facts, Exhibit 1, Lafferty Affidavit.

## IV.  Procedural Due Process  --  Generally

Plaintiff alleges that Defendants violated the due process clause of the United States and Rhode Island Constitutions.[6] Generally, the right to procedural due process guarantees fair procedure. Ford v. Bender, 768 F.3d 15, 24 (1st Cir. 2014). "This right assures individuals who are threatened with the deprivation of a significant liberty or property interest by the state notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 24 (internal quotation marks omitted). In order to establish a procedural due process violation, Plaintiff must show that (1) he was deprived of a protected property interest, and (2) the procedures attendant to that deprivation were constitutionally inadequate. Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81 (1st Cir. 2014).[7] Plaintiff alleges that Defendants violated his procedural due process rights -- first when Defendants initially seized his firearms and  -- second when the Defendants allegedly refused to return the firearms to Plaintiff without a state court order.

---

[6] Defendants' Federal due process argument would be equally dispositive of Plaintiff's claim pursuant to Article 1, Section 2 of the Rhode Island Constitution. See generally Pelland v. Rhode Island, 317 F. Supp. 2d 86 (D.R.I. 2004); Jones v. Rhode Island, 724 F. Supp. 25 (D.R.I. 1989) (since the due process clause of the Rhode Island Constitution was intended by the drafters to parallel the language of the Fourteenth Amendment, a determination of a litigant's federal due process claim is equally dispositive of his state due process claim).

[7] Defendants do not dispute that Plaintiff has a property interest in the firearms.

7

### A. The Alleged First Deprivation – The Initial Seizure of the Firearms

*1. Plaintiff's Claim is Barred by the Statute of Limitations*

Plaintiff first alleges that Defendants violated his due process rights when they initially seized his firearms. The initial seizure of Plaintiff's guns occurred in September 2008. Section 1983 claims are subject to the state statute of limitations governing personal injury actions – which is 3 years pursuant to R.I. Gen. Laws § 9-1-14(b). Adams v. Town of Burrillville, 249 F. Supp. 2d 151 (D.R.I. 2003). Plaintiff's procedural due process claim related to the initial seizure dates back approximately six and a half years. Plaintiff's claim is out of time.

*2. Plaintiff Has Failed To Establish a Purported Policy*

Even if however, Plaintiff's claim was not time barred, summary judgment would still be inappropriate. As noted, Plaintiff alleges that Defendants violated his due process rights when they initially seized his guns. Plaintiff, however, brings suit against a municipality. A municipality is only liable in a § 1983 action when the execution of a government policy or custom inflicts the injury. Wilson v. City of Boston, 421 F.3d 45 (1st Cir. 2005). The movant on summary judgment has the initial burden of establishing the absence of disputed issues of material fact. Kiman v. N.H. Dep't of Corr., 451 F.3d 274 (1st Cir. N.H. 2006). In his statement of undisputed facts, however, Plaintiff fails to identify any municipal policy, custom, or practice applicable to the initial seizure of Plaintiff's firearms.[8] Thus, there is no basis to hold Defendants liable for the alleged violation and summary judgment must be denied. See Wilson, 421 F.3d 45; see also Sutterfield v. Milwaukee, 751 F.3d 542, 549 (7th Cir. 2014) (noting that, in the district court, plaintiff failed to identify any policy, custom or practice to support a claim against the city).

---

[8] In his statement of undisputed facts Plaintiff refers to "safekeeping" in only three instances and does not allege a particular policy. See Plaintiff's Statement of Undisputed Facts at ¶¶ 8, 10 and 14.

*3.  Defendants Accorded Plaintiff His Due Process Rights Before Initially Seizing the Firearms*

Even if, however, the claim was not time barred and Plaintiff had identified a particular policy applicable to the initial seizure, Plaintiff's procedural due process argument with respect to the initial seizure would fail.  Plaintiff argues that Defendants failed to provide him with due process, i.e., notice and a hearing, before they seized his firearms.  Plaintiff contends that the initial seizure of the guns was unjustified because the guns were not related to the reason Defendants were called to Plaintiff's residence, i.e., a suicide attempt.  Plaintiff's argument, however, misses the mark.  Defendants initially seized Plaintiff's guns consistent with the Fourth Amendment -- thus there was no due process violation.

The touchstone under the Fourth Amendment is reasonableness, United States v. Chaney, 647 F.3d 401 (1st Cir. 2011), and courts approach Fourth Amendment and due process issues with "pragmatism."  Mora v. City of Gaithersburg, 519 F.3d 216, 222 (4th Cir. 2008).

> It is axiomatic that an individual is not entitled to a predeprivation hearing before an officer may seize property pursuant to a valid search warrant. . . . .  The same is true if one of the warrant exceptions allows an officer to seize property without a warrant.  The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the process that is due for seizures of . . . property in criminal cases . . . .

PPS, Inc. v. Faulkner County, 630 F.3d 1098, 1107 (8th Cir. 2011) (internal citation and quotation marks omitted).

The community caretaking exception to the warrant requirement recognizes that police officers perform a wide array of community functions in addition to investigating crimes.  United States v. Rodriguez-Morales, 929 F.2d 780 (1st Cir. R.I. 1991).  In performing this caretaking role, a police officer is a "jack-of-all emergencies . . . expected to aid those in distress, combat

9

actual hazards, prevent potential hazards from materializing and provide an infinite variety of services to preserve and protect community safety." Id. at 784-85 (emphasis added) (citations omitted). The community caretaking doctrine "is a catchall for [a] wide range of [police] responsibilities . . . ." Lockhart-Bembery v. Sauro, 498 F.3d 69, 75 (1st Cir. 2007). The doctrine gives police officers a "great deal of flexibility" in how they carry out their community caretaking function. Id.

While the First Circuit has recognized the community caretaking function in motor vehicle cases, the reach of the doctrine is "poorly defined outside that milieu." MacDonald v. Town of Eastham, 745 F.3d 8, 13 (1st Cir. 2014).   The First Circuit has held, however, that the "ultimate inquiry [in community caretaking situations] is whether, under the circumstances, the officer acted within the realm of reason." Lockhard-Bembery, 498 F.3d at 75 (internal quotation marks and citation omitted).  In community caretaking situations, reasonableness has a "protean quality" and involves a "concept, not a constant" – thus what may be "reasonable in one type of situation may not be reasonable in another." United States v. Rodriguez-Morales, 929 F.2d 780, 785 (1st Cir. 1991).

The Seventh Circuit has recognized "powerful arguments in favor of the temporary seizure [of a gun] as a prudential measure" in situations where officers remove a suspected suicidal individual from a home where guns are stored. See generally Sutterfield, 751 F.3d at 571. In Sutterfield, the court assumed without deciding that the seizure of the suicidal individual's gun violated the Fourth Amendment but determined that the individual defendants were entitled to qualified immunity. See id.  Sutterfield acknowledged the "lack of clarity in Fourth Amendment case law as to the appropriate legal framework that should be applied to warrantless intrusions motivated by purposes other than law enforcement evidence-gathering."

Id. at 551.  In discussing the competing interests implicated by the seizure, however, Sutterfield recognized that it "was natural, logical, and prudent for [the police] to believe that [the] firearm should be seized for safekeeping until such time as [the suspected suicidal individual] was evaluated and it was clear that [the individual] no longer posed a danger to herself."  Id. at 570; see also Arden v. McIntosh, No. 14-1517, 2015 U.S. App. LEXIS 12725, at *10 n.2 (10th Cir. July 23, 2015) (noting in its qualified immunity analysis that a "reasonable police officer might have thought, upon discovery of [a] gun [in a residence during a welfare check] that he was authorized by his community caretaking function to seize the gun for safekeeping").  Sutterfield also suggested that an "equally persuasive" justification for seizing the gun was that the gun might be accessible to a minor residing in the home during the individual's absence.  Sutterfield, 751 F.3d at 570.  "It was arguably prudent to remove the gun from the home as a prophylactic measure during [the suicidal individual's] absence."  Id.

Defendants seized the guns to "prevent potential hazards from materializing." Rodriguez-Morales, 929 F.2d at 784.   North Smithfield police officers were called to Plaintiff's residence as a result of a report that Plaintiff had attempted suicide.  Upon entering the home for the second time in a week, the officers learned that Plaintiff and his wife were again arguing over Plaintiff's wife's desire to obtain a divorce.  Plaintiff and his wife had argued about divorce in the past and Plaintiff "beg[ged]" his wife not to file for divorce and to "work it out."  Statement of Undisputed Facts at ¶ 31.  During the argument with his wife, Plaintiff looked at his six-year-old son and said, "I'm going to bed and I won't get up."  Id.   Plaintiff's six-year-old son saw Plaintiff put pills into his mouth.  Plaintiff's two other children were also present during the argument.  Plaintiff was subsequently transported to Landmark Medical Center, evaluated,

released and directed by medical personnel to "follow up [in] 2 days." See Defendants' Statement of Disputed Facts, ¶ 7.

Defendants were presented with a situation where an individual (1) had threatened to harm himself, (2) had ingested pills in front of a six-year-old child and made a suicidal threat, (3) was in a potentially volatile state of mind as a result of continuing arguments concerning a divorce he did not want, and (4) had ready access to multiple firearms. Defendants could not have known when Plaintiff would return to the residence, or whether he would use the guns to harm himself, a member of his family, or whether another family member would gain access to the guns and harm him/herself or another individual. See generally Sutterfield, 751 F.3d at 570. Under these *particular* circumstances, it is reasonable to *temporarily* remove the firearms from the house for safekeeping purposes pursuant to the "flexible" community caretaking function. See generally Lockhart-Bembery, 498 F.3d at 75; Rodriguez-Morales, 929 F.3d 780; Sutterfield, 751 F.3d 542.

> There may have been alternatives, but removing and securing the firearm was an obvious and reasonable measure. One need only imagine the public outcry that would have taken place had the police left the gun where it was and had [Plaintiff] returned home and then used the gun to take [his] own life, or had [one of Plaintiff's sons] taken the gun in [his] absence and used it to harm himself or others, to see the wisdom in what police did.

Sutterfield, 751 F.3d at 570 (emphasis added); see also Mora, 519 F.3d at 227 ("[t]here are no shortage of precedents approving preventive seizures for the sake of public safety"). Because the initial seizure of Plaintiff's firearms was pursuant to the NSPD's community caretaking function, and thus consistent with the Fourth Amendment, Defendants did not violate Plaintiff's due process rights. See generally PPS, Inc., 630 F.3d 1098.

12

B.  THE ALLEGED SECOND DEPRIVATION

*1.  The Alleged Second Deprivation Did Not Rise to the Level of Constitutional Dimensions*

In a procedural due process claim, the "unavailability of constitutionally-adequate remedies" under state law is "critically important." Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992).  The constitutional deprivation under § 1983 is not complete "unless and until the State fails to provide due process."  Id.  Plaintiff readily admits that he had access to a state court remedy: a miscellaneous petition in Rhode Island District Court.  See Plaintiff's Memorandum in Support of Partial Summary Judgment at 17, n.4.  Since Plaintiff had an adequate state law remedy available to him, his due process rights have not been violated.  Id.

*2.  Summary Judgment Must Be Denied Because Plaintiff Has Failed His Initial Summary Judgment Burden*

Where a loss of property is caused by a random, unauthorized act by a municipal employee, a postdeprivation process to retrieve the property meets constitutional requirements. Furrow v. Martin Magnusson, No. 91-1585, 1992 U.S. App. LEXIS 15180 (1st Cir. April 10, 1992) (per curiam). Postdeprivation remedies, however, do not satisfy the constraints of due process where a deprivation of property is caused by conduct pursuant to established municipal policy, unless the necessity of "quick action" justified bypassing any predeprivation process.  Id. at *8.  "Our cases establish that a government official has committed a random and unauthorized act when he or she misapplies state law to deny an individual the process due under a correct application of state law." Hadfield v. McDonough, 407 F.3d 11, 20-21 (1st Cir. 2005).  Conduct is random and unauthorized when the challenged state action is a "flaw in the official's conduct rather than a flaw in the state law itself." Id. at 21.  Thus, if the failure to return Plaintiff's

13

firearms was as a result of a random and unauthorized act of an employee, the availability of a state court process to return the firearms would satisfy due process. Furrow, 1992 U.S. App. LEXIS 15180.

Plaintiff has failed to demonstrate the absence of disputed issues of material fact concerning whether Defendants acted pursuant to a custom, policy or practice. See Kiman, 451 F.3d 274. In his statement of undisputed facts, Plaintiff avers that "Defendants have a custom, policy, or practice or [sic] requiring lawful weapons owners to engage in formal litigation to recover their seized property." Plaintiff's Statement of Undisputed Facts at ¶ 29.[9] In support of this declaration, however, Plaintiff cites to a wholly conclusory allegation in his verified complaint. See id. Declarations at summary judgment must be based upon "personal knowledge, set out facts that would be admissible in evidence, and show that . . . the declarant is competent to testify on the matters stated." Fed. R. Civ. P 56(c)(4); see also Sheinkopf v. Stone, 927 F.2d 1259, 1262-1263 (1st Cir. 1991) (court may consider factual averments based on personal knowledge in verified complaint but not conclusory allegations therein when deciding a summary judgment motion); see also Delva v. America's Servicing Co., No. 12-10100, 2012 U.S. Dist. LEXIS 121749 (D. Mass. Aug. 28, 2012) (treating plaintiff's verified complaint as the functional equivalent of an affidavit to the extent it meets the requirements of Fed. R. Civ. P. 56). Plaintiff has failed to establish any foundation for his personal knowledge of the purported customs, policies or practices of the NSPD. Thus, Plaintiff's conclusory statement may not be considered on summary judgment.

---

[9] As noted, however, in his memorandum in support of his motion for summary judgment, Plaintiff only argues that Defendants have a purported policy.

A plaintiff can establish the existence of an official policy by showing that the alleged constitutional injury was caused by a person with final policymaking authority. Rosaura Bldg. Corp. v. Municipality of Mayaguez, 778 F.3d 55 (1st Cir. 2015). Plaintiff has, however, not demonstrated that there is an absence of disputed issues of material fact concerning whether or not the purported injury was caused by a person with final policy making authority. See Kiman, 451 F.3d 274. Furthermore, Plaintiff has not demonstrated that there is an absence of disputed issues of material fact concerning whether an alleged custom or practice was so "well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of [the custom or practice] yet did nothing to end the practice." Reilly v. City of Providence, No. 10-461, 2013 U.S. Dist. LEXIS 40085, at *37 (D.R.I. March 22, 2013) (internal quotation marks and citation omitted); see also McBride v. City of Westbrook, No. 2:13-CV-272-DBH, 2015 U.S. Dist. LEXIS 118185 (D. Me. Sept. 4, 2015) (single incident did not demonstrate that custom or practice was widespread or well-settled). Plaintiff has not presented any admissible evidence to establish a municipal policy, custom or practice.

Plaintiff has failed his burden of establishing the absence of a genuine issue of material fact concerning whether Defendants' failure to return Plaintiff firearms was as a result of a custom, policy, or practice. Thus, summary judgment must be denied.

### 3. Even if Plaintiff Had Met His Initial Burden – Summary Judgment Would Be Inappropriate Because There is a Disputed Issued of Material Fact

Defendants have presented the affidavit of Lafferty. See Defendants Statement of Disputed Facts, Exhibit 1. Lafferty is a Captain and Executive Officer of the North Smithfield Police Department. Id. He has 18 experience as an officer with the NSPD. Id. Lafferty is

15

knowledgeable of the NSPD policies, customs, and practices.  Id.  In his affidavit, Lafferty attests that Defendants do not have a custom, policy, or practice of requiring lawful weapon's owners to engage in formal litigation to recover their seized property.  Id.  Because Defendants dispute any such custom, policy, or practice, with admissible evidence, Plaintiff's motion for summary judgment must be denied.

## V.  The Second Amendment and Article 1, Section 22

Plaintiff contends that Defendants violated his right "to keep arms" pursuant to the Second Amendment to the United States Constitution and Article 1, Section 22 of the Rhode Island Constitution.  As noted above, however, the applicable statute of limitations is three years.  Plaintiff's second amendment claim dates back approximately six and a half years.  Plaintiff's claim is time barred.  Adams, 249 F. Supp. 2d 151.

Even if however, Plaintiff's claim was not time barred, summary judgment would still be inappropriate.  As noted above, in order to hold a municipality liable, Plaintiff must identify a policy, custom or practice that inflicted the injury.  See Wilson, 421 F.3d 45.  Not only has Plaintiff failed his initial summary judgment burden, but Defendants have asserted, through Lafferty's affidavit, that they do not have any such policy, custom, or practice.  Thus, summary judgment is inappropriate.

Even if, however, Plaintiff presented a timely claim and admissible evidence to show that Defendants have an unwritten policy of seizing guns and refusing to return the guns to their owners without a court order (and this assertion was not properly disputed) that purported policy would not violate the Second Amendment.  The Second Amendment provides that a "well regulated Militia, being necessary to the security of a free State, the right of the people to keep

and bear Arms, shall not be infringed." U.S. Const. amend. II.  Although the Second Amendment confers an individual right to keep and bear arms, that right is not unlimited. District of Columbia v. Heller, 554 U.S. 570, 595 (2008).  The right granted by the Second Amendment does not include the right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626.

"Whether and to what extent the Second Amendment protects an individual's right to possess a particular gun . . . is an issue just beginning to receive judicial attention." Sutterfield, 751 F.3d at 571.  Courts have generally held that the Second Amendment is not implicated by the seizure of a particular individual firearm. Hopkins v. Claroni, Civil No. 1:13-CV-229-DBH, 2015 U.S. Dist. LEXIS 64530 (D. Me. May 18, 2015) ("there is no Second Amendment right presented by the seizure of a particular firearm").  The right to bear arms is not a right to "hold some particular gun." Vaher v. Town of Orangetown, 916 F. Supp. 2d 404 (S.D.N.Y. 2013) (internal quotation marks omitted); Garcha v. City of Beacon, 351 F. Supp. 2d 213, 217 (S.D.N.Y. 2005) (the right to bear arms is not a right to some particular gun).  "[W]here a plaintiff's ability to acquire other firearms has not been abridged, a Second Amendment violation has not occurred even despite a seizure of a plaintiff's particular firearm." Doutel v. City of Norwalk, No. 3:11-CV-01164, 2013 U.S. Dist. Lexis 93436, at *79 (D. Conn. July 3, 2013) (emphasis in original); see also Vaher, 916 F. Supp. 2d 404; Tirado v. Cruz, Civil No. 10-2248, 2012 U.S. Dist. LEXIS 19978, at *17 (D.P.R. Feb. 16, 2012) (finding that Heller held that in order to show a Second Amendment violation, a plaintiff must do more than show he was deprived from possessing one particular firearm, rather "plaintiff must show that he has been kept from acquiring any other legal firearm").  Here, summary judgment is not appropriate because Plaintiff does not have a Second Amendment right to the seized firearms and because

the undisputed facts clearly reflect that Defendants have not affected Plaintiff's ability to acquire other firearms.[10]

### VI.  Conclusion

For the reasons stated, Plaintiff's motion for partial summary judgment must be denied.

> Defendants,
> By their attorneys,
>
> */s/Marc DeSisto*
> Marc DeSisto, Esq. (#2757)
> DESISTO LAW
> 211 Angell Street
> Providence, RI 02906
> (401) 272-4442
> (401) 272-9937 fax
> marc@desistolaw.com

---

[10] Article 1, Section 22 of the Rhode Island Constitution provides that "[t]he right of the people to keep and bear arms shall not be infringed." R.I. Const. Art. I, § 22.  The "right to keep arms" language in the Rhode Island Constitution mirrors the language contained in the Second Amendment.  The Rhode Island Supreme Court has interpreted Article 1, Section 22 to provide a similar right to keep arms as the right to keep arms recognized by the Second Amendment.  See generally Mosby v. Devine, 851 A.2d 1031 (R.I. 2004).  It is therefore submitted that Defendants' Second Amendment argument would be equally dispositive of Plaintiff's claim pursuant to Article 1, Section 22.  See generally Pelland v. Rhode Island, 317 F. Supp. 2d 86 (D.R.I. 2004); Jones v. Rhode Island, 724 F. Supp. 25 (D.R.I. 1989) (since the due process and equal protection clauses of the Rhode Island Constitution were intended by the drafters to parallel the language of the Fourteenth Amendment, a determination of a litigant's federal due process and equal protection claims is equally dispositive of his state due process and equal protection claims).

## CERTIFICATION OF SERVICE

I hereby certify that the within document has been electronically filed with the Court on this 1st day of October, 2015, and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means:

    Thomas W. Lyons, Esq.
    tlyons@straussfactor.com

    Rhiannon S. Huffman, Esq.
    rhuffman@straussfactor.com

                                  */s/ Marc DeSisto*
                                  Marc DeSisto