UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JASON A. RICHER, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | C.A. No.  15-162 |
| JASON PARMELEE as the Finance Director of | : | |
| THE TOWN OF NORTH SMITHFIELD, | : | |
| TOWN OF NORTH SMITHFIELD, and | : | |
| STEVEN E. REYNOLDS in his official | : | |
| capacity as Chief of the NORTH SMITHFIELD | : | |
| POLICE DEPARTMENT | : | |
| Defendants | | |

**PLAINTIFF'S REPLY RESPECTING HIS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Jason Richer alleged and demonstrated violations of the Rhode Island Firearms

Act, R.I.G.L. § 11-47-1, et seq., as well as provisions of the United States and Rhode Island

Constitutions protecting his right to keep arms.  Notably, Defendants in their objection do not

deny violating the Firearms Act.  Rather, they defend their actions on the grounds that Plaintiff

has no private right of action for violation of that Act.  This argument is wrong as a matter of

law.  Accordingly, Plaintiff is entitled to summary judgment on liability on Count I of the

Amended Complaint.

With respect to the constitutional claims, Defendants argue that Plaintiff's claims are

barred by the applicable statute of limitations; that Plaintiff has failed to establish a purported

policy; that Defendants provided Plaintiff with due process; and that Defendants have not

violated Plaintiff's constitutional right to keep arms.  All these arguments are wrong as a matter

of law.  Accordingly, Plaintiff is entitled to summary judgment on liability on Counts II and III

of the Amended Complaint.

1

## ADDITIONAL UNDISPUTED FACTS

On October 1, 2015, Defendants served a Response to Plaintiff's Request for Admissions.  (copies of the Requests and the Response are attached as Plaintiff's Exhibits G and H, respectively).[1]  The Response provides additional, relevant undisputed facts, particularly as Defendants rely upon the Response in their Statement of Disputed Facts and in their objection to Plaintiff's Motion[2]:

31. Defendants have seized the firearms of persons other than Plaintiff (hereinafter "other persons).  (Response No. 1).

32. Defendants have seized the firearms of other persons for safekeeping, which Defendants define to mean "for public safety and the safety of the owner."  (Response No. 2).[3]

33.  Defendants have seized the firearms of other persons who were not charged with a crime. (Response No. 4).

34.  Defendants have seized the firearms of other persons who were not under guardianship.  (Request No. 6).

35.  Defendants have seized the firearms of other persons who were not determined to be mentally incompetent.  (Request No. 7).

36.  Defendants have seized the firearms of other persons who not under treatment or confinement as drug addicts.  (Request No. 8).

---

[1] Plaintiff will number his additional exhibits consecutively from those previously submitted to the Court in his Statement of Undisputed Facts.

[2] Plaintiff will number these additional undisputed facts consecutively continuing from those set forth in his Statement of Undisputed Facts.

[3] Plaintiff's requests defined "safekeeping" to mean "either Defendants' use of that word to explain the seizure of firearms, or the seizure of firearms to protect persons from harm those firearms even when the person from whom the firearms were seized was not charged with a crime, not under guardianship, not mentally incompetent, and/or not under treatment or confinement as a drug addict."

37.  Defendants have seized the firearms of other persons who were not charged with a crime, nor under guardianship, nor determined to be mentally incompetent, nor under treatment or confinement as drug addicts.  (Request No. 9).

38. Defendants currently possess the firearms of other persons whose firearms were seized for safekeeping.  (Request No. 19).

39.  Defendants currently possess the firearms of other persons who were not charged with a crime but whose firearms were seized for safekeeping.  (Request No. 20).

40.  Defendants currently possess the firearms of more than ten other persons whose firearms were seized for safekeeping.  (Request No. 25).

## STANDARD OF REVIEW

Under Rule 56, it is clear that Defendants cannot create an issue of fact simply by denying a fact averred by Plaintiff, especially when Plaintiff has set forth specific information demonstrating the fact exists.  "Once the moving party has pointed to the absence of adequate evidence supporting the non-moving party's case, the onus is on the moving party to present facts that show a genuine issue for trial."  Feliciano v. State of Rhode Island, 160 F.3d 780, 784 (1st Cir. 1998).  The non-moving party "[must] offer[ ]… 'significant probative evidence tending to support…'" its legal position.  Id.  As the First Circuit has said:  "[C]onclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported summary judgment motion."  Rosuara Bldg. Corp. v. Municipality of Mayaguez, 778 F.3d 55, 61 (1st Cir. 2015); "[B]ald allegations that a fact exists are insufficient to raise a factual issue."  F.D.I.C. v. Skotze, 881 F.Supp. 364, 367 (S.D.Ind. 1994).

Here, Defendants particularly rely on two such denials:  they deny that they fail to provide due process when they seize firearms (Response No. 22, Defendants' Response to Summary Judgement, p. 9 (hereinafter "Objection")), and they deny that they have a policy or practice of seizing firearms without the requisite statutory or constitutional bases.  (Response Nos. 13, 14, 17 and 18, Objection p. 16).  However, the actual facts to which Defendants have admitted or argued demonstrate that their denials are baseless.   First, Defendants do not identify any facts demonstrating that they provide a notice or an opportunity to be heard either before or after they seize firearms.  Instead, Defendants argue that that they do not have to provide due process before they seize firearms in their exercise of "community caretaking."  Even so, their only explanation of how they provide due process after the seizure is the statement that people whose firearms are seized can go to court to obtain an order that their weapons be released. (Objection, p. 13).  As a matter of law, this is insufficient.

Second, Defendants admit that they have seized and held the weapons of other people for "safekeeping," without the specific grounds set forth in the Firearms Act (Responses 2, 4, 6, 7, 8, 9), or required by the Constitution.  Moreover, Defendants are presenting holding the weapons of at least 10 other people that they seized for "safekeeping."  (Responses 19, 20, 25).  Finally, Defendants argue that their seizure of Plaintiff's firearms was justified.  Clearly, they have a policy or practice of doing so.

## ARGUMENT

### I.   Plaintiff has a private right of action for violation of the Firearms Act pursuant to R.I.G.L. § 9-1-2

Defendants argue that the Rhode Island Firearms Act, R.I.G.L. § 11-47-1, et seq., does not include an express private right of action and therefore Plaintiff may not sue for violation of

it.  However, Rhode Island law does provide for a private right of action whenever any a person is the victim of a crime and he suffers any injury to his person, reputation or estate as a result:

> Whenever any person shall suffer any injury to his or her person, reputation, or estate by reason of the commission of any crime or offense, he or she may recover his or her damages for the injury in a civil action against the offender, and it shall not be any defense to such action that no criminal complaint for the crime or offense has been made; and whenever any person shall be guilty of larceny, he or she shall be liable to the owner of the money or articles taken for twice the value thereof, unless the money or articles are restored, and for the value thereof in case of restoration.

R.I.G.L. § 9-1-2.  See, Gray v. Dederian, 400 F.Supp.2d 415, 428 (D.R.I. 2005); Iacampo v. Hasbro, 929 F.Supp. 562, 576-78 (D.R.I. 1996); Mello v. DaLomba, 798 A.2d 405, 410-12 (R.I. 2002).[4]

In Gray, plaintiffs brought claims against the fire inspector for the Town of West Warwick arising from the so-called Station Nightclub fire.  Plaintiffs alleged that the fire inspector's gross or criminal negligence amounted to involuntary manslaughter.  Judge Lagueux held that plaintiffs could pursue such a civil claim under § 9-1-2.  Similarly, in Iacampo, Judge Lagueux held that plaintiff's allegations respecting sexual harassment also constituted the crimes of assault, battery and sexual assault for which she could state a civil claim under § 9-1-2.  Finally, in Mello, the Rhode Island Supreme Court held the Superior Court had improperly granted defendant's Rule 50 motion respecting plaintiff's civil claims that defendants had compelled him to provide kickbacks in violation of state and federal criminal statutes.

Here, the Firearms Act itself provides that "[u]nless otherwise specified, any violation of any provision of this chapter shall be punishable by a fine of not more than one thousand dollars ($1,000), or imprisonment for not more than five (5) years, or both…"  (emphasis added).

---

[4] Plaintiff acknowledges that his complaint does not expressly reference R.I.G.L. § 9-1-2.  If the Court determines that such a pleading is necessary, the Court should permit Plaintiff to amend his complaint.

R.I.G.L. § 11-47-26.  Even Defendants admit that violations of the Act constitute crimes. (Objection, p. 6).

Here, the Firearms Act expressly provides the limited circumstances under which persons are barred from possessing firearms and when Defendants may seize a person's firearms:

-generally speaking, persons who have been convicted of a crime or who are fugitives from justice, R.I.G.L. § 11-47-5;

-persons who are mental incompetents, drug addicts, or habitual drunkards, R.I.G.L. § 11-47-6;

-persons who are unnaturalized foreign born persons whose presence in the United States is illegal, R.I.G.L. § 11-47-7; and,

-persons who are minors, R.I.G.L. § 11-47-33.

Further, the Firearms Act provides:  "Nothing in this section shall be construed to reduce or limit any existing right to purchase and own firearms and/or ammunition or to provide authority to any state or local agency to infringe upon the privacy of any family, home or business except by lawful warrant."  R.I.G.L. § 11-47-60.1(a).

Defendants have expressly admitted that none of these circumstances existed at the time they seized Plaintiff's firearms.  (Defendants' Answer to Plaintiff's Amended Verified Complaint ¶ 1).  Accordingly, Defendants violated the Firearms Act by seizing Plaintiff's firearms without statutory authority.  This is a crime.[5]

Moreover, the Firearms Act states "If the police department in the city or town in which the firearm was seized or confiscated has not been notified by a justice of the superior court or

---

[5] The Firearms Act includes some sections explicitly excluding police officers from certain prohibitions.  E.g., R.I.G.L. § 11-47-43.  However, no section excludes police officers from the provisions upon which Plaintiff relies.

the attorney general that the firearm is necessary as evidence in a criminal or civil matter, it <u>shall</u> be returned to the lawful owner."  (emphasis added).  R.I.G.L. § 11-47-22(b); <u>Houston v. City of New Orleans</u>, 682 F.3d 361, 364 (5th Cir. 2012) (*per curiam*).  In <u>Houston</u>, New Orleans police arrested plaintiff and seized his firearms.  The district attorney dropped the criminal charges.  Louisiana had a two statutes similar to Rhode Island's.  One statute said:

> If the seized…firearm is not contraband, and if the law enforcement agency knows the owner of the seized or forfeited firearm, and if the owner did not commit any violation of any federal or state law or local ordinance in which the seized or forfeited firearm was involve, and if the owner may lawfully possess the seized or forfeited firearm, the law enforcement agency shall return the seized or forfeited firearm to the owner.

La.Rev.Stat. 40:1798(D).  The other statute applied when there were criminal proceedings connected with the firearm but still provided for the return of the firearm under certain conditions.  La.Rev.Stat. 15:41.  The Fifth Circuit said it was unclear which statute applied but, "[o]ne thing is clear:  both statutes mandate the return of the property, firearm or other property, to its lawful owner when it is not contraband and is no longer needed by law enforcement."  <u>Id</u>. at 364.  It held that regardless of which statute applied, plaintiff has appropriately alleged a claim that the defendants had violated the statute by failing to return his weapons after criminal charges against him were dropped.  <u>Id</u>.

Here, Defendants have expressly admitted that neither the Superior Court nor the Attorney General informed them that Plaintiff's firearms were necessary as evidence in a criminal or civil matter.  (Defendants' Answer to Plaintiff's Amended Verified Complaint ¶ 8).  Moreover, they admit Plaintiff made repeated requests for the return of the firearms.  (<u>Id</u>. at ¶¶ 9, 10, and 12).  Nonetheless, Defendants failed to return Plaintiff's firearms to him for almost seven years, until he filed this lawsuit.  This is a crime.

Accordingly, pursuant to R.I.G.L. § 9-1-2, Plaintiff has a private right of action for Defendants' criminal violations of the Firearms Act. Since it is undisputed that Defendants violated the Firearms Act, Plaintiff is entitled to summary judgment on liability on Count I of his Amended Complaint.

## II. Because Defendants' actions constitute a continuing violation or tort, Plaintiff's claim is not barred by the statute of limitation

Federal courts and the Rhode Island Supreme Court have recognized that the statute of limitations for a civil claim is tolled while defendants engage in a "continuing" tort or violation of law. Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994); Page v. United States, 729 F.2d 818, 821-22 (D.C.Cir. 1984); Rural Water System No. 1 v. City of Sioux Center, Iowa, 967 F.Supp. 1483, 1508 (N.D. Iowa 1997) ("Although the 'continuing violation' theory is most often encountered in discrimination cases, it is also applicable to §1983 claims for continuing violations of a federal law of the Constitution. [citation omitted]. When a 'continuing violation' is shown, the limitations period runs from the 'last occurrence' of wrongful conduct."); West v. Town of Narragansett, 857 A.2d 764 n. 1 (R.I. 2004).

In Page, plaintiff brought medical malpractice claims alleging that Veterans Administration subjected him to harmful drugs during a course of treatment from 1961 to 1980. The district court dismissed the claims for the period from 1961 to 1972 based on res judicata and dismissed the remaining claims because they were not filed within the statutory time limits. The D.C. Circuit said:

> It is well-settled that "[w]hen a tort involves continuing injury, the cause of action accrues, and the limitation begins to run, at the time the tortious conduct cease." Since usually no single incident in a continuous chain of tortious activity can "fairly or realistically be identified as the cause of significant harm," it seems proper to regard the cumulative effect of the conduct as actionable. Moreover, since "one should not be allowed to acquire a right to continue the tortious

conduct," it follows logically that statutes of limitation should not run prior to its cessation.

729 F.2d 821-22.  The Court held that defendants' continuous treatment of plaintiff with the allegedly harmful drugs tolled the statute of limitation for his claims until the treatment ceased. Similarly, here, Defendants tortiously seized and held Plaintiffs firearms until he filed suit.  The statute of limitation was tolled until Defendants released the firearms, after suit was filed.  Any other holding would permit Defendants to "continue [their] tortious conduct."

In West, the Rhode Island Supreme Court affirmed the dismissal of property damage claims against Town of Narragansett.  However, in a footnote, the Court said:  "We note, however, that the facts pled, if proven, may constitute a continuing trespass by that town that would not be barred by the statute of limitations."  857 A.2d 764 n. 1. Accordingly, under both federal and state law, Defendants' actions constitute a continuing tort that tolls the applicable statute of limitations.  Hence, Plaintiff's claims are timely.

The case upon which Defendants' rely, Adams v. Town of Burrillville, 249 F.Supp.2d 151 (D.R.I. 2003), is distinguishable on two grounds.  First, it was decided before West in which the Supreme Court noted that a continuing trespass would not be barred by the statute of limitations.  Moreover, Judge Smith said in Adams that "[c]ourts have routinely differentiated between conduct that are continuing in nature, and the injurious *consequences* of conduct that occurred in the past."  Id. at 155.  In Adams, defendants had been denied coverage for health expenses.  The court found "those expenses were consequences of the original denial of coverage, and not additional expenses."  Id.  Here, Plaintiff made repeated efforts to recover possession of his firearms including recent efforts in 2013 and 2015.  Because Defendants' refusals in 2013 and 2015 are violations within the statutory time period, Defendants' prior

violations are part of the continuing violations and the statute of limitations does not bar a claim for them.

### III.  Defendants' Response and Objection demonstrate that they have practice or policy of seizing firearms without a legal basis, notwithstanding their denial

Defendants claim that Plaintiff has not shown the existence of a policy or practice to support his claims.  Defendants suggest that Plaintiff cannot proceed where there has been "a random, unauthorized act" by a municipal official, citing, Hadfield v. McDonough, 407 F.3d 11, 20-21 (1st Cir. 2005); Furrow v. Martin Magnusson, No. 91-1585, 1992 U.S. App. LEXIS 15180 (1st Cir. 1992).  There are several points.

First, Defendants fail to identify any such "random, unauthorized act" by any North Smithfield official.  "[B]ald allegations that a fact exists are insufficient to raise a factual issue." F.D.I.C. v. Skotze, 881 F.Supp. 364, 367 (S.D.Ind. 1994).[6]

Second, Plaintiff need only show the policy or practice when Defendants deny the existence of such a policy or practice.  Razzano v. County of Nassau, 765 F.Supp.2d 176, 182-83 (E.D.N.Y. 2011).  When defendants admit the existence of the policy through their objection, plaintiff need not prove it.  Id.  Razzano was a political activist, especially on immigration matters, who made repeated efforts to speak to United States Representative Carolyn Murphy about these matters by going to her Long Island office.  Representative Murphy's staff complained to local police who escorted Razzano out of her office and then initiated an investigation of him.  As part of that investigation, the police went to Razzano's house and seized handguns and longarms and revoked his license for the handguns.  Razzano initiated administrative procedures to challenge the revocation of the license and regain possession of the

---

[6] In any event, if any North Smithfield employee, including Capt. Reynolds or Capt. Lafferty, did engage in a random, unauthorized act, Plaintiff should be permitted to amend the complaint to bring claims against that employee in his or her personal capacity.

handguns.  There was no administrative procedure to regain possession of the longarms.

Razzano filed suit in federal court to regain possession of his longarms alleging, *inter alia*, a

claim under the Fourteenth Amendment that defendants failed to provide him due process with

respect to the seizure and retention of those firearms.

Defendants initially argued that Razzano had failed to show that "plaintiff's alleged

erroneous deprivation was pursuant to a government policy."  Id. at 185.  The district court said

it had to determine whether there was such a policy and, if so, whether defendants provided the

appropriate due process.  Id., citing Matthews v. Eldridge, 424 U.S. 319, 334 (1976).  With

respect to the policy, the Court said:

> Although the defendants have suggested that the confiscation of Razzano's
> longarms was not pursuant to an established state procedure, this position appears
> untenable.  The defendants admit that:  "[t]he Nassau County Police Department
> has a policy of confiscating longarms from their owners in any incident that
> involves the threat of violence, threat to the public, in exigent circumstances,
> where there is the imminent threat of a use of weapons, in cases involving
> harassment, intimation, threats and physical violence,…"…[T]his policy—as well
> as the defendants' continued assertion that Razzano's longarms were validly
> confiscated—belies any insinuation that the seizure was the result of "random,
> unauthorized conduct" so as to avoid the Matthews test.  [citation omitted].  The
> Court thus finds there are no genuine issues of fact with respect to whether
> Razzano's longarms were seized as a result of a state policy.  They were.
> (emphasis added).

Id. at 186.

Here, notwithstanding their denial in Defendants' Response to the Request for Admission

that they have a policy (Response Nos. 13 and 14), the rest of the Response demonstrates that

Defendants have a policy or practice of seizing people's firearms for "safekeeping" just as they

seized Plaintiff's weapons.  Here, Defendants have admitted that they have seized the weapons

of other persons for reasons not permitted under the Firearms Act:

-They have seized the firearms of persons other than Plaintiff;

-They have seized the firearms of other persons for safekeeping (which

Defendants define to mean "for public safety and the safety of the owner");[7]

 -They have seized the firearms of other persons who were not charged with a

crime;

-They have seized the firearms of other persons who were not under guardianship;

-They have seized the firearms of other persons who were not determined to be

mentally incompetent;

-They have seized the firearms of other persons who not under treatment or

confinement as drug addicts;

-They have seized the firearms of other persons who were not charged with a

crime, nor under guardianship, nor determined to be mentally incompetent, nor

under treatment or confinement as drug addicts;

-They currently possess the firearms of other persons whose firearms were seized

for "safekeeping";

-They currently possess the firearms of other persons who were not charged with

a crime but whose firearms were seized for "safekeeping."

-They currently possession the firearms of more than ten other persons whose

firearms were seized for "safekeeping."

Further, Defendants state they seized Plaintiff's firearms "to prevent potential hazards from

materializing" (Objection p. 11), and because it was pursuant to their "community caretaking

---

[7] Plaintiff's Requests defined "safekeeping" to mean "either Defendants' use of that word to explain the seizure of firearms, or the seizure of firearms to protect persons from harm from those firearms even when the person from whom the firearms were seized was not charged with a crime, not under guardianship, not mentally incompetent, and/or not under treatment or confinement as a drug addict."

function," (Objection, p. 12), i.e., "safekeeping."  Thus, Defendants' express admissions, as well as the arguments in their Objection, demonstrate that they have a policy or practice of seizing and retaining people's firearms for "safekeeping."[8]  Moreover, Defendants' ratify the seizure by arguing that it was appropriate.  (Nonetheless, the Firearms Act does not permit Defendants to seize and retain firearms for "safekeeping" or pursuant to their perceived "community caretaking function."  The statute limits whatever discretion the federal constitution may provide).

Defendants also argue that Plaintiff has failed to show that a person with final policy-making authority caused the alleged practice.  (Objection, p. 15).  Here, Plaintiff dealt with Capt. Steven Reynolds, Chief of the North Smithfield Police Department, and Capt. Tim Lafferty. With respect to Capt. Reynolds, the amended verified complaint alleges:

> Defendant Steven E. Reynolds is the Chief of the North Smithfield Police
> Department. As such, he is responsible for formulating, executing and
> administering with the Town the laws, customs, practices, and policies at issue in
> this lawsuit. Through its Police Department, the Town has enforced the
> challenged laws, customs and practices against Plaintiff.

(Amended Verified Complaint, ¶ 2).  In their answer to the Amended Verified Complaint, Defendants did not deny that Capt. Reynold is responsible for formulating, executing and administering the laws, customs, practices and policies at issue.  (Answer, ¶ 2).  (Accordingly, the allegation is deemed admitted.  F.R.Civ.P. 8(b)(6)).  Moreover, the Town Charter posted on the Town's website (p. 36) states:

> The chief of police and other members of the department shall have all the powers
> and duties as are now and hereafter vested in such police officers by the laws of
> the state and the town ordinances.  The chief of police shall be in direct command
> of the police force and shall, subject to the approval of the town administrator and

---

[8] Indeed, it is a basis of the First Circuit's decision in <u>United States v. Rodriquez-Morales</u>, 929 F.2d 780 (1st Cir. 1991), that the "community care-taking function" is a standard police responsibility.  <u>Id</u>. at 785.

town council, make rules and regulations concerning the conduct of all officers and subordinates.[9]

The Amended Verified Complaint alleges that Capt. Lafferty is an Executive Officer of the Police Department.  (Id. ¶ 29).  The North Smithfield 2014 annual report on the Town's website includes a description of the Police Department's organization (p. 13) which says:   "The BCI Unit is under the supervision of Capt. Lafferty. It is responsible for processing and gathering evidence at a crime scene."[10]  This Court has previously found that police officers in such positions have policy-making authority,  Reilly v. City of Providence, No. 10-461S, 2013 WL 1193352 at *10-12 (D.R.I. Mar. 22, 2013)[11];  Young v. City of Providence, 396 F.Supp.2d 125, 144-45 (D.R.I. 2005), as have other courts.  Cooper v. Dillon, 403 F.3d 1208, 1222 (11th Cir. 2005); Dill v. City of Edmond, Oklahoma, 155 F.3d 1198, 1211 (10th Cir. 1998); Freeman v. City of Santa Ana, 68 F.3d 1180, 1190 (9th Cir. 1995); Crowder v. Sinyard, 884 F.2d 804, 829 (5th Cir. 1989); Harris v. City of Pagedale, 821 F.2d 499, 507 (8th Cir. 1987). [12] Accordingly, Plaintiff has sufficiently established that Capt. Reynolds had policy-making authority and that Capt. Lafferty was acting within the scope of that authority.

---

[9] http://www.nsmithfieldri.org/_resources/common/userfiles/file/Charter%20Revised%204-3-15%20per%20PH.pdf (Exhibit I).

[10] http://www.nsmithfieldri.org/_resources/common/userfiles/file/2014%20NS%20Annual%20Report.pdf (Exhibit J).

[11] In Reilly, this Court held that a municipality has liability for a custom or practice if "it…is so well-settled and widespread that the policy-making officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice..."  Id. at *11, quoting, Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989). Here, Defendants not only have knowledge of the practice of seizing and failing to return firearms, they attempt to justify the practice as part of their "community caretaking."

[12] Again, if it is Defendants' position that Capt. Lafferty acted without authority, Plaintiff will amend his complaint to assert claims against Lafferty in his personal capacity.

**IV.     Defendants failed to provide Plaintiff with Due Process**

Defendants' argument that they provide due process when they seize firearms is legally baseless.  They initially make the startling statement that that "Defendants accorded plaintiff his due process rights before initially seizing the firearms."  (Objection, p. 9).  However, they identify no such due process.  Instead, Defendants argue that their initial seizure of Plaintiff's firearms was justified by their "community caretaking" function.  (Objection, pp. p. 9-12).

The facts and the case law do not substantiate this argument.  Here, even given Defendants' version of the facts, it is clear that Plaintiff's purported "suicide attempt" was by pills, not by firearms.  Yet, Defendants did not seize any of Plaintiff's pills.  They seized his firearms that were locked up in a different part of the house.  Moreover, Defendants took no steps to prevent Plaintiff from obtaining other guns or pills. [13]  Hence, Defendants exercised their "community caretaking" as an excuse to seize firearms unrelated to the alleged suicide and took no further steps to prevent any suicide attempt.  The purported suicide is simply a pretext to seize firearms.

Ordinarily, the state must provide due process before it deprives a person of a liberty or property interest.  Cleveland Bd. of Educ. v. Loudermilk, 470 U.S. 532, 542 (1985); Morales v. Chadbourne, 996 F.Supp.2d 19, 40 (D.R.I. 2014).  Here, Defendants did not attempt to provide Plaintiff with pre-deprivation due process.

Instead, they attempt to justify their failure based on their "community caretaking" function.  However, the cases upon which Defendants justify their "community caretaking function" are distinguishable.  For example, in Mora v. City of Gaithersburg, Maryland, 519 F.3d 216 (4th Cir. 2008), the plaintiff had called a local healthcare hotline operator, told her he was

---

[13] Plaintiff had other weapons in his home such as a crossbow, a compound bow and hunting knives that Defendants did not seize.

suicidal, had weapons in his apartment, could understand shooting people at work, and said "I might as well die at work."  Police were dispatched to plaintiff's apartment where they found him loading suitcases and gym bags into a van.  They handcuffed him and found one handgun in a suitcase.  The police searched his apartment where they seized many firearms.  They drove plaintiff to a psychiatrist at a hospital.  Plaintiff voluntarily admitted himself for treatment at the hospital where he stayed for several days.  Plaintiff then began attempting to recover his firearms from the police.  However, he refused to complete an "Application for the Return of Firearms," because he objected to questions about his mental health and alcohol use.  The police refused to return the weapons.  Plaintiff sued alleging violations of the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment.  The district court dismissed his claims.

The Fourth Circuit compared the plaintiff's circumstances to those in Columbine High School and Oklahoma City when "evidence surfaces that an individual [ ] intends slaughter" and there is "the threat of mass murder."  Id. at 223.  The Court said that the Supreme Court's decision in Terry v. Ohio, 392 U.S. 1 (1968), would guide whether the seizure was constitutionally permissible.  Specifically, preventative searches and seizures (1) must be objectively reasonable, (2) must be based on "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion," and (3) the scope of the intrusion must be "strictly tied to and justified by the circumstances which rendered its initiation permissible."  Id. at 224, quoting Terry, at 392 U.S. at 21, 19.  The court held that in the plaintiff's circumstances, the defendants' seizure of the firearms was justified under the Fourth Amendment.  Id. at 228.  Finally, the Fourth Circuit declined to address the issue of whether defendants' continued retention of his weapons violated his Fourteenth Amendment due process rights because that claim depended on certain determinations of state law.  Id. at 228-30.

This case presents significantly different circumstances.  Plaintiff did not call an emergency service and threaten to kill others at work; rather, Plaintiff's ex-wife called the police and said plaintiff had allegedly threatened suicide by means of pills.  Defendants did not find Plaintiff loading suitcases containing a handgun and a gym bag in a van; rather, they found Plaintiff in his home with his guns locked in a cabinet.  Plaintiff did not voluntarily admit himself for psychiatric treatment; rather, the hospital discharged Plaintiff almost immediately after examining him.  Plaintiff did not refuse to sign any forms Defendants had to regain possession of his guns; rather, Plaintiff gave Defendants letters from his doctor and his ex-wife that he was not a threat and that she had misunderstood the situation, respectively.  In short, there is no evidence Plaintiff intended "slaughter" or "mass murder."  This case is nothing like the cases upon which Defendants rely to justify the lack of pre-deprivation due process.

In any event, even if Defendants were excused from providing due process before the seizure, it is clear that they must provide it afterwards.  Fuentes v. Shevin, 407 U.S. 67 (1972).  Here, they provided no post-seizure due process.  The only "due process" they claim to provide is a statement that the people whose firearms are seized can go to court to obtain an order that the firearms be released.  (Objection, p. 13).  The only decision Defendants cite for the adequacy of this remedy, Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996 (1st Cir. 1992), is inapplicable. In that case, plaintiff contracted for the purchase of a liquor license from another business in East Providence.  It then applied to the City's Board of Licensing Commissioners for transfer of the license from the seller to it.  The Board indefinitely postponed action and, eventually, a state representative who was the brother of a Board member introduced legislation the purpose of which was to prevent plaintiff from obtaining the license.  After the legislation passed, the Board denied the application to transfer the license.  Plaintiff appealed the decision to

the Liquor Control Board but the appeal was mooted when the license seller instead transferred the license to a different entity.  Plaintiff sued the City, the members of the Board and the state representative alleging that it was deprived of its property without due process of law.  The district court dismissed the claim under Rule 12(b)(6).

The First Circuit said the complaint failed to allege that the constitutionally adequate remedies were unavailable to address an unreasonable delay in providing a hearing on the license application.  Id. at 999, quoting, Monahan v. Dorchester Counseling Center, Inc., 961 F.2d 987, 994 n. 7 (1st Cir. 1992) ("[A]bsent any allegations in the complaint concerning the state [remedial] procedures, or thorough briefing on this point, we decline to speculate concerning plaintiff's state law claim[s] for purposes of determining whether there exists an adequate state law remedy.").  Here, as set forth in Plaintiff's original memorandum, any state court remedy would be unduly time-consuming and expensive.  Moreover, there were administrative remedies available, unlike here.

Similarly, Defendants reliance on Mora with respect to post-deprivation remedies is unavailing.  The Mora Court did say that plaintiff's post-deprivation access to state court remedies provided sufficient procedural due process.  Id. at 230, citing Zinerman v. Burch, 494 U.S. 113, 125-26 (1990); and Goss v. Lopez, 419 U.S. 565, 579 (1975).  However, those Supreme Court decisions do not support that citation.  Zinerman, 494 U.S. at 124-25 ("A plaintiff, for example, may bring a § 1983 action for an unlawful search and seizure despite the fact that the search and seizure violated the State's Constitution or statutes, and despite the fact that there are common-law remedies for trespass and conversion."); Goss, 419 U.S. at 581 n. 10 ("Appellants point to the fact that some process is provided under Ohio law by way of judicial

review.  [citation omitted]….If it be assumed that it could be so used, it is…insufficient to save inadequate procedures at the school level.").

If there was any confusion about the Supreme Court's holdings, it clarified them in subsequent cases.  In <u>Parratt v. Taylor</u>, 451 U.S. 527, 541 (1981), overruled on other grounds, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986), the Court held that state judicial proceedings satisfied due process when the deprivation "is a result of a random and unauthorized act by a state employee" and "not a result of some established state procedure."  451 U.S. at 541.  In <u>Logan v. Zimmerman Bush Co.</u>, 455 U.S. 422, 435-36 (1982), the Court reiterated that post-deprivation remedies do not satisfy due process when the deprivation of property is caused by conduct pursuant to established government procedure, not random and unauthorized conduct.  Finally, in <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984), the Court held that "an <u>unauthorized</u> intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available."  (emphasis added).  In those circumstances, a post-deprivation tort claim against the employee taking the unauthorized action provides an adequate remedy.  <u>Id</u>. at 534.  Defendants do not cite any analogous authority for the proposition that a state tort claim is an adequate remedy for an authorized, intentional deprivation of property, whether guns or otherwise, by a government employee acting pursuant to policy.

Moreover, <u>Mora</u> was decided before the Supreme Court's decision in <u>District of Columbia v. Heller</u>, 554 U.S. 570, 595 (2008), and <u>McDonald v. Chicago</u>, 561 U.S. 742, 130 S.Ct. 3020, 3037 (2010), setting forth individual rights to possess guns.  Certainly, those decisions alter the constitutional analysis respecting the due process Defendants must provide in these circumstances.  See, <u>Mosby v. Devine</u>, 851 A.2d 1031, 1049 n. 39 (R.I. 2004), quoting,

Greenholtz v Inmates of the Nebraska Penal and Correctional Complex, 442 U.S 1, 9 (1979)

("There is a crucial distinction between being deprived of a liberty one has…and being denied a conditional liberty one desires."). Finally, as set forth in Plaintiff's Motion and this Reply, such state court remedies are not sufficient because of the significant cost and inconvenience.

This case is much more similar to the facts presented in Razzano, *supra*. The Razzano court considered a police department's obligation to provide due process with respect to a seizure of longarms. It noted that the Matthews test ordinarily requires a state actor to provide predeprivation due process. 765 F.Supp.2d at 186.[14] However, the court said that in exigent circumstances, including the seizure of guns, it may be impractical to provide a pre-deprivation hearing. Id. Accordingly, it focused solely on the adequacy of the post-deprivation remedies provided to Razzano.

Applying the Matthews factors, the court said Razzano had a property interest in his longarms so the first factor favored him. With respect to the second factor, the court noted that the available procedures included commencing a state court action pursuant to Article 78, New York's omnibus mandamus statute. Id. at 188. However, the court said:

> [A] state case resolving the ownership of confiscated firearms is likely to take a substantial amount of time. Further, placing the burden of going forward on the person whose property was taken is even more onerous, as it requires that such person give up not only time but also money to initiate a lawsuit and retain an attorney.

Id. at 188.

---

[14] The Matthews test requires that courts weigh (1) the private interests affected by the state action; (2) the risk of erroneous deprivation through the procedures used and the value of additional procedural safeguards; and (3) the government interest in taking the challenged action. Id. at 185.

With respect to the third <u>Matthews</u> factor, the court said that while the government has a substantial public safety interest in keeping guns from a dangerous or threatening person, there was nothing that stopped Razzano from purchasing and possession new long arms.

> Thus, to the extent that a person whose longarms are seized can readily purchase and possess new longarms, Nassau County can only have a limited interest in retaining that person's confiscated longarms.  Here, no party has obtained a protective order (or any other order) against Razzano that would prevent him from purchasing or possessing new longarms.  Thus, the state's public safety interest in keeping Razzano's old longarms appears limited.

<u>Id.</u> at 189.

The Court then went on to consider what procedural safeguards defendants must provide. It held that person who longarms are seized are entitled to a prompt post-deprivation hearing, as follows:

-First, the post-deprivation hearing must be held before a neutral decision-maker.

-Second, the right to a prompt post-deprivation hearing only applies to seized longarms that are not (1) the fruit of a crime, (2) an instrument of a crime, (3) evidence of a crime, (4) contraband, or (5) barred by court order from being possessed by the person from whom they were confiscated.

-Third, at the hearing, Nassau County shall have the burden of showing that it is likely to succeed in court on a cause of action…to maintain possession of the seized longarms.

-Fourth, if the person deprived of longarms prevails at the hearing, the longarms must be returned, barring an order to the contrary from a court to whom that finding is appealed.  If, by contrast, Nassau County prevails at the hearing, Nassau County must timely commence a proceeding by which it seeks to maintain the possession of the longarms in question.

The court concluded that because Razzano was not offered these procedures, defendants violated his Fourteenth Amendment due process rights.  Id. at 191-92.

Defendants' citation to PPS, Inc. v. Faulkner County, Arkansas, 630 F.3d 1098 (8th Cir. 2011), is also inapposite.  In that case, a police officer was told that a commercial sprayer had been stolen and pawned at a pawnshop.  The pawnshop had a commercial paint sprayer on its premises.  The police officer entered the shop, asked whether it had such a sprayer, and, when told it did, the officer demanded that it be turned over as suspected stolen property.  The pawnshop acquiesced.  However, nine months later, it filed a § 1983 claim in federal district court alleging that the seizure of the sprayer violated its rights under the Fourth and Fourteenth Amendments.  The district court granted defendants' summary judgment motion.

The Eighth Circuit said the initial seizure was justified under the "plain view" doctrine. Id. at 1105.  It then decided that because the initial seizure was justified under the Fourth Amendment, plaintiff was not entitled to pre-deprivation due process under the Fourteenth Amendment.  Id. at 1106.  Finally, the court said plaintiff had not complained that it was deprived of post-deprivation due process. Id. at 1108.  Accordingly, that decision has little bearing here.

As shown, the mere availability of state court remedies is insufficient as a matter of law to satisfy Defendants' requirement to provide due process in these circumstances.


## V.    Defendants violated Plaintiff's constitutional right to keep arms

Defendants argue that they did not violate Plaintiff's rights under the Second Amendment because they did not prevent him from acquiring firearms other than the ones they seized, citing several federal district court decisions.  E.g. Vaher v. Town of Orangetown, New York, 916

F.Supp.2d 404 (S.D.N.Y. 2013).  Notably, this is the position that the Fifth Circuit Court of Appeals had taken, Houston v. City of New Orleans, 675 F.3d 441, 445 (5th Cir. 2012). However, that opinion was subsequently withdrawn and superceded upon rehearing.  682 F.3d 361 (5th Cir. 2012).

Moreover, Defendants do not address the decisions cited in Plaintiff's motion nor do Defendants respond to Plaintiff's arguments respecting Vaher, et al.  There are two important points respecting these cases.  First, they are based on facts very different from those presented here.  For example, in Hopkins v. Claroni, Civ.No. 1:13-CV-229-DBH, 2015 WL 2371654 (D.Me. May 18, 2015), plaintiff's shotgun was seized from his car following a traffic stop, a physical altercation with the police officer, and an arrest.  The gun was returned to plaintiff when he was released from custody the same day.  The court said:  "Given the arrest of the gun's owner here, public safety required the temporary seizure of the weapon."  (emphasis added).  Id. at *9.  The rest of the court's Second Amendment discussion is *dictum*.  Here, there was no traffic stop, no altercation and no arrest but, yet, Plaintiff's weapons were not returned to him the same day.  To the contrary, even though Plaintiff provided letters from his physician and his ex-wife, Defendants held his firearms until he filed suit.

In Tirado v. Cruz, Civ. No. 10-2248(CVR), 2012 WL 525450 (D.P.R. Feb. 16, 2012), police went to plaintiff's residence after his girlfriend filed a criminal complaint of domestic violence, a municipal judge had issued an *ex parte* protective order, and plaintiff had allegedly threatened the complainants' family and friends.  The police seized two weapons for which plaintiff's licenses had expired.  Here, there was no criminal complaint, no protective order, no threat against others, and no expired license.

In Doutel v. City of Norwalk, Civ.No. 3:11-CV-01164(VLB), 2013 WL 3353977 (D.Conn. July 3, 2013), the court held that the individual defendants, who were sued in their personal capacities, were entitled to qualified immunity because plaintiff's alleged Second Amendment rights were not clearly established.  Here, Plaintiff has not (yet) sued anyone in his or her personal capacity and qualified immunity is not an issue.

Second, all these holdings are based on a gross misreading of the Heller decision.  For example, the Tirado decision cites to Walters v. Wolf, 660 F.3d 307 (8th Cir. 2011), which it mistakenly identifies as a First Circuit decision, and page 626 of the Heller opinion for the proposition that "in Heller, the Court recognized that the right secured by the Second Amendment is not unlimited nor grants a right to possess a specific firearm."  2012 WL 525450 at *6.[15]  What Heller actually says on pages 626-27 is:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th Century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.  [citation omitted].  For example, the majority of the 19th Century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues.  [citations omitted].  Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.  We also recognize another important limitation on the right to keep and carry arms.  Miller said, as we have explained, that the sorts of weapons protected were those "in common use at the time."  [citation omitted].  We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of "dangerous and unusual weapons."

---

[15] Garcha v. City of Beacon, 351 F.Supp.2d 213 (S.D.N.Y. 2005), was decided before Heller and McDonald and it cites to no authority for this novel proposition of law.  As noted in Plaintiff's initial memorandum, other post-Heller decisions cite to Garcha.

554 U.S. at 626-27.  Nothing on those pages remotely suggests that a law-abiding citizen does not have Second Amendment rights respecting specific, legal firearms.[16]  Nothing on those pages remotely justifies the conclusion that the Second Amendment permits government officials to seize and hold specific firearms "of the sort in common use at the time" of the Founding that a law-abiding citizen keeps secured in his home.

Since Defendants' policy infringes a constitutional right, the Court must determine how to analyze that infringement.  The First Circuit has noted other circuit courts have:

> adopted a two-part framework for evaluating a claim of Second Amendment infringement in the post-Heller era.  Broadly speaking, some courts first consider whether the challenge law imposes a burden on conduct that falls within the scope of the Second Amendment's guarantee as historically understood, and if so, courts next determine the appropriate form of judicial scrutiny to apply (typically, some form of either intermediate or strict scrutiny).

Powell v. Tompkins, 785 F.3d 332, 347 n.9 (1st Cir. 2015), citing, inter alia, Jackson v. City and County of San Francisco, 746 F.3d 953 (9th Cir. 2014); Woollard v. Gallagher, 712 F.3d 865 (4th Cir. 2013); Heller v. District of Columbia, 670 F.3d 1244 (D.C. 2011).  In Jackson, the Ninth Circuit considered a city ordinance requiring that any handgun in a residence either be stored in a locked container, or be disabled with a trigger lock, or be carried by a person who is over the age of 18.  The court said this ordinance burdened the plaintiffs' Second Amendment rights.  746 F.3d at 961.

Here, Plaintiff's Second Amendment rights are clearly burdened.  Defendants seized Plaintiff's three longarms from a locked cabinet in his home and refused to return them for

---

[16] Even if the Second Amendment was susceptible to such an interpretation, Article 1, Section § 22 of the Rhode Island Constitution and the Firearms Act are not.  Mosby, 851 A.2d at 1042 ("In the absence of an individual right to keep arms, the government could, by legislative act, deprive the people of their right to defend the state.); and at 1046-47 ("Thus, while attempting to promote greater gun safety in the home, the General Assembly carefully has avoided any restriction on gun ownership by a homeowner or landowner."), respectively.

almost seven years (until Plaintiff filed suit).  As set forth in Plaintiff's memorandum in support of his motion, possessing these kinds of weapons in the home clearly falls within the ambit of the rights recognized by District of Columbia v. Heller, 554 U.S. 570, 595 (2008), McDonald v. Chicago, 561 U.S. 742, 130 S.Ct. 3020, 3037 (2010), and Mosby v. Devine, 851 A.2d 1031, 1050 (R.I. 2004).  Obviously, Defendants' refusal to return those weapons deprived Plaintiff of them.  At the very least, it would require Plaintiff to purchase new weapons to recover his protected and constitutional status.  This must be recognized as a burden.

Accordingly, Defendants must provide a justification for seizing and failing to return Plaintiff's firearms promptly upon his request.  Even if only intermediate level scrutiny applies, Defendants' justification must be "narrowly tailored to serve a significant government interest." See, National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 736-37 (1st Cir. 1995).  The only justification they provided at the time was that they wanted Plaintiff to get a court order to protect them from liability.  That is essentially one of the justifications they provide now.  As a matter of law, this cannot be an appropriate justification.  Their new justification is the possibility that Plaintiff might have injured himself or others if they returned his weapons. However, Defendants did nothing to stop Plaintiff from using the pills by which he purported threatened suicide.  They did nothing to stop him from obtaining other firearms.  Moreover, they returned Plaintiff's weapons after he filed suit, without a court order.  So, Defendants' purported justification rings hollow.  Their retention of Plaintiff's firearms in the face of his repeated requests for their return violated his Second Amendment rights.


**CONCLUSION**

For the reasons stated above, Plaintiff is entitled to partial summary judgment on liability, including a declaration that Defendants' actions violated Plaintiff's statutory rights under the Rhode Island Firearms Act and his constitutional rights under the United States and Rhode Island Constitutions.

Respectfully submitted,

*/s/ Thomas W. Lyons*
Thomas W. Lyons                    #2946
Rhiannon S. Huffman, Esq.    #8642
RHODE ISLAND AFFILIATE,
AMERICAN CIVIL LIBERTIES UNION
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI  02903
(401) 456-0700
Date:  October 14, 2015                    tlyons@straussfactor.com

## CERTIFICATION

I hereby certify that on October 14, 2015, a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system and served by email on Marc DeSisto, Esq., attorney for defendants. Parties may access this filing through the Court's CM/ECF system.

*/s/  Thomas W. Lyons*