UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON A. RICHER, Plaintiff

v.

JASON PARMELEE as the Finance Director of THE TOWN OF NORTH SMITHFIELD, TOWN OF NORTH SMITHFIELD, and STEVEN E. REYNOLDS in his official capacity as Chief of the NORTH SMITHFIELD POLICE DEPARTMENT Defendants

C.A. No. 15-162

**PLAINTIFF'S REBUTTAL RESPECTING R.I.GEN.LAWS § 12-5-7**

The Rhode Island statute Defendants raise actually supports Plaintiff's claims. Specifically, R.I.Gen. Law § 12-5-7, and related law, demonstrate that Defendants conducted an illegal, warrantless seizure of Plaintiff's firearms. Accordingly, they should not be permitted to claim the statutory protections of a legal search. In any event, Defendants failed to provide Plaintiff with the post-seizure due process required by the statute. Finally, the Due Process Clauses of the United States and Rhode Island Constitutions determine the scope of due process to which Plaintiff is entitled, not a statute.

## I. Defendants' Seizure of Plaintiff's Firearms Violated the Fourth Amendment, Art. 1, Sec. 6 of the Rhode Island Constitution and the Rhode Island Search Warrant Statute, R.I.Gen. Laws, §§ 12-5-1, et seq.[1]

Defendants' Sur-Reply attempts to justify their initial seizure of Plaintiff's firearms. However the seizure is unjustifiable under federal and state law. It is undisputed that Defendants seized Plaintiff's firearms without a search warrant. Moreover, while Defendants had consent to

[1] Plaintiff acknowledges that he has not alleged violations of these constitutional provisions and statute. He raises the argument because Defendants are asserting R.I.Gen.Laws § 12-5-7 as a defense. If the Court determines that Plaintiff should assert these claims to make this argument, Plaintiff requests permission to amend the complaint.

enter Plaintiff's home, they did not have his consent to open his locked gun cabinet and seize his guns while he was going to the hospital to be examined. "Absent consent or exigent circumstances, police officers must obtain a warrant before entering a private dwelling to effect an arrest or search for evidence." State v. Gonsalves, 553 A.2d 1073, 1075 (R.I. 1999), citing, Payton v. New York, 445 U.S. 573 (1980). The requirement of a search warrant derives from the Fourth Amendment of the United States Constitution and Art. 1, Sec. 6 of the Rhode Island Constitution.[2] Vinagro v. Reitsma, 260 F.Supp.2d, 425, 430 (D.R.I. 2003); Bilida v. McCleod, 41 F.Supp.2d 142, 148 (D.R.I. 1999) (Lagueux, J.); Pimental v. Department of Transportation, 561 A.2d 1348, 1351-52 (R.I. 1989), quoting, State v. Benoit, 417 A.2d 895, 901 (R.I. 1980) (Art. 1, Sec. 6 "reflect[s] the intention of the framers to declare all warrantless searches and seizures unreasonable."). "Only if circumstances render procurement of a warrant impractible, and society demands swift action, does article 1, section 6 allow the 'temporary limited infringement of an individual's right of privacy.'" Pimental, 561 A.2d at 1352, quoting, Benoit, 417 A.2d at 901.

Both our federal and state courts have not hesitated to find warrantless seizures improper where government officials could not justify the failure to obtain a proper warrant. Vinagro,

---

[2] Art. 1, Sec. 6 of the Rhode Island Constitution states: "The right of the people to be secure in their persons, papers and possessions, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue, but on complaint in writing, upon probable cause, supported by oath or affirmation, and describing as nearly as may be, the place to be searched and the persons or things to be seized." This section provides Rhode Island citizens a "double barreled source of protection which safeguards their privacy from unauthorized and unwarranted intrusions…" State v. von Bulow, 475 A.2d 995, 1019 (R.I. 1984), quoting State v. Sitko, 460 A.2d 1, 2 (R.I. 1983). "This dual safeguard flows directly from the United States Supreme Court's explicit acknowledgement of the 'right of state courts, as final interpreters of state law, 'to impose higher standards on searches and seizures than [those] required by the Federal Constitution,' even if the state constitution provision is similar to the Fourth Amendment." Id., quoting State v. Benoit, 417 A.2d 895, 899 (1980) (quoting Cooper v. California, 386 U.S. 58, 62 (1967)).

supra; Bilida, supra; State v. Jeremiah, 696 A.2d 1220, 1225 (R.I. 1997); State v. Jennings, 461 A.2d 361, 366-67 (R.I. 1983); State v. Jenison, 442 A.2d 866, 873-74 (R.I. 1982). Significantly, Defendants do not claim that their warrantless seizure of Plaintiff's firearms was justified either by consent or exigency.

The "community caretaking function" that Defendants assert to justify their warrantless seizure of Plaintiff's firearms is a different exception. See, Dagdagan v. City of Vallejo, 682 F.Supp. 2d 1100, 1108 (E.D.Cal 2010) ("The "emergency" [community care taking] exception stems from the police officers' community caretaking function and allows them to respond to emergency situations that threaten life or limb; this exception does not derive from police officers' function as criminal investigators.").

Neither the United States Supreme Court nor the Rhode Island Supreme Court has held that the community caretaking exception can justify the warrantless seizure of property from a person's home.[3] The First Circuit has expressly not decided "whether … the community caretaking function can be applied so as to render constitutional a warrantless and non-consensual police entry into a home." McDonald v. Town of Eastham, 745 F.3d 8, 15 (1st Cir. 2014) (Selya, J.). In McDonald, the First Circuit held that police officers sued in a Section 1983 action were entitled to qualified immunity because the relevant legal question was not "resolved by clearly established law." Id.[4] In the course of his analysis, Judge Selya recognized that the other circuit courts are split as to whether this function justifies the warrantless entry of a home.

---

[3] The United States Supreme Court has approved the exercise of the community caretaker function with respect to searches of automobiles. See, Colorado v. Bertine, 479 U.S. 367 (1987); South Dakota v. Opperman, 428 U.S. 364, (1976); Cady v. Dombrowski, 413 U.S. 433 (1973). In Opperman, the Court said it "has traditionally drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment." 428 U.S. at 367.

[4] Since Plaintiff has not brought damages claims against any North Smithfield official in his or her personal capacity, qualified immunity is not an issue here.

Id. at 13, citing, Ray v. Twp. Of Warren, 626 F.3d 170-175-76 (3rd Cir. 2010) (collecting cases and concluding that "[t]here is some confusion among the circuits as to whether the community caretaking exception…applies to warrantless searches of the home."). Plaintiff is not aware of any federal or state case holding that the community caretaking function justifies the warrantless seizure of firearms in a person's home.[5]

Commentators have criticized the "community caretaking function" as the exception that threatens to swallow the rule. See, e.g., Michael Dimino, "Police Paternalism: Community Caretaking, Assistance Searches, and Fourth Amendment Reasonableness," 66 Wash. & Lee L.Rev. 1485 (2009) (reviewing scope of case law); Matthew Shapiro, "The Road to Fourth Amendment Erosion is Paved with Good Intentions: Examining Why Florida Should Limit the Community Caretaker Exception," 6 FIU L.Rev. 251 (2010-2011); Mary Naumann, "The Community Caretaker Doctrine: Yet Another Fourth Amendment Exception," 26 Am.J.Crim.L. 325 (1999). Here, Plaintiff purportedly threatened suicide by the use of pills; yet, Defendants seized no pills. Instead, they seized three firearms locked in cabinet while ignoring other weapons. They did nothing to stop Plaintiff from obtaining other pills or weapons, except to refuse to return the seized firearms (until Plaintiff filed suit). Defendants' actions meet no standard of reasonableness, never mind constitutionality.

To be clear, Defendants have the burden of establishing that a warrantless search or seizure was reasonable, including the effectiveness of a third party's consent or the exigency of the circumstances. Illinois v. Rodriguez, 497 U.S. 177, 181 (1980); State v. Linde, 876 A.2d 1115, 1125 (R.I. 2005); State v. Clark, 265 Wis.2d 557, 568, 666 N.W.2d 112, 116 (2003)

---

[5] Plaintiff is aware of two cases holding that defendants sued in their individual capacity were entitled to qualified immunity from damages in such circumstances because the relevant law was not clearly established. Sutterfield v. City of Milwaukee, 751 F.3d 542, 578-79 (7th Cir. 2014); Feis v. King County Sheriff's Dept., 165 Wash.App. 525, 267 P.3d 1022 (2011).

("[C]ompliance with an internal policy department policy does not, in and of itself, guarantee the reasonableness of a search or seizure."). Some courts have applied a three-part test to determine the reasonableness of a seizure under the community caretaking function: "(1) that a seizure within the meaning of the [F]ourth [A]mendment has occurred; (2) if so, whether the police conduct was bona fide community caretaker activity; and (3) if so, whether the public need and interest outweigh the intrusion upon the privacy of the individual." State v. Clark, 265 Wis.2d at 571, 666 N.W.2d at 118.[6]

Here, there was undoubtedly a seizure. However, it was not *bona fide* community caretaker activity nor did the public interest outweigh the intrusion on Plaintiff's rights. There was no "emergency" that would justify the Defendants' exercise of their community caretaking function to seize Plaintiff's weapons without a warrant. Plaintiff had left for the hospital at the insistence of the North Smithfield police officers. Plaintiff's firearms were locked in a gun cabinet in a closet in the detached garage. He had not threatened anyone, including himself, with the guns. There was no threat to life or limb that outweighed the intrusion upon Plaintiff's privacy (and Second Amendment rights). Rather, Defendants' community-caretaking was simply an excuse to seize firearms and hold them, until challenged in court.

In analogous situations, courts have found that the community caretaker function did not justify the warrantless seizure of property. Thompson v. Village of Monroe, No. 12-cv-5020, 2015 WL 3798152 at *13 (N.D.Ill. June 17, 2015) (community caretaker function did not justify warrantless seizure of plaintiff's car from his garage); State v. Clark, 265 Wis.2d at 574, 666 N.W.2d at 119 (police department's policy of a "safekeeping tow" did not justify seizing

---

[6] Other courts have used somewhat different tests. Cf. United States v. Garner, 416 F.3d 1208, 1213 (10th Cir. 2005); People v. Mitchell, 39 N.Y.2d 173, 177-79, 347 N.E.2d 607, 609-11 (1976).

unlocked car); State v. Christenson, 181 Or.App. 345, 352-53, 45 P.3d 511, 514-15 (2002) (unlocked house with dogs running around and no response to calls did not justify police officers in entering house).

Moreover, there was no consent. Consent to enter part of the dwelling does not necessarily extend to all parts of the dwelling and into all containers within the dwelling. United States v. Gamache, 792 F.3d 194, 198 (1st Cir. 2015) ("[C]onsent to enter a home does not, by itself, give law enforcement officers carte blance to rummage throughout the premises and perform a general search. After all, a warrantless search may not exceed the scope of the consent obtained."); Linde, id.. A third party cannot consent to a seizure of a person's property unless that third-party has mutual use of that property by virtue of joint access or control of it for most purposes. United States v. Gonzalez, 7609 F.3d 13, 18 n.1 (1st Cir. 2010). A third party cannot consent to the seizure of property from a locked container reserved for the owner's sole personal use and over which the owner had not relinquished sole control. United States v. Welch, 4 F.3d 761, 764 (9th Cir. 1993), citing United States v. Karo, 468 U.S. 705, 725-27 (O'Connor, J., concurring); Linde, 876 A.2d at 1127.

Here, Defendants did not obtain consent from Plaintiff's ex-wife to seize his firearms. United States v. Troxel, 547 F.Supp.2d 1190, 1200 (D.Kan. 2008).

> "Importantly, 'where an officer is presented with ambiguous facts related to authority, he or she has a duty to investigate further before relying on the consent."…[T]he government cannot meet its burden of demonstrating a third party's apparent authority 'if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry.'"

Id. at 1200, quoting United States v. Cos, 498 F.3d 1115, 1128 (10th Cir. 2007). In Troxel, defendant's wife called the police and told them that her husband was tearing up their house, that he had been up for several days on some kind of drug, that they had had a dispute about her

going through his things, and that she had taken her dog and left the residence. Ms. Troxel went with the police back to the house and let them in. The police officers observed extensive damage to the house and went into the defendant's "gun room" where they found drug paraphernalia in a cooler. The court found the police officer's faced an ambiguous situation respecting whether Ms. Troxel could consent to a search of the gun room. The court said:

> [B]ased on the ambiguity created by these facts, Sergeant Chambers had a duty to investigate further about whether Ms. Troxel had access to or control over that room instead of relying solely on the husband-wife relationship. The presumption created by the husband-wife relations can be rebutted by an agreement or understanding between the parties. Taking that into consideration, Sergeant Chambers should have inquired further as to whether there was such an understanding or agreement. Because he did not inquire further about these ambiguous facts, the Government cannot meet its burden of demonstrating Ms. Troxel's apparent authority.

547 F.Supp.2d at 1200. The court said Ms. Troxel could not give consent to permit a search of defendant's gun room. Id.

The court then considered whether the search was justified by exigent circumstances. The Troxel court noted that "[t]he government has the burden of establishing exigency." Id. at 1201, quoting United States v. Rhiger, 315 F.3d 1283, 1288 (10th Cir. 2003).[7] "That burden is especially heavy when the exception must justify the warrantless entry of a home." Id. quoting United States v. Najar, 451 F.3d 710, 717 (10th Cir. 2006). The court said whether exigent circumstances existed depends on "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." Id. at 1202. The court said that while

[7] The First Circuit has set forth the emergency situations that justify a warrantless search of a residence, none of which apply here. McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540, 544 (1st Cir. 1996).

searching to determine whether Mr. Troxel was present in the house constituted an exigent circumstance, it did not justify looking into the cooler in the gun room. Id. at 1204.

Here, Defendants claim that when they arrived, Mr. Richer and his ex-wife were arguing about whether she was having an affair and they should get a divorce. After Mr. Richer left for the hospital-at Defendants' insistence-they told his ex-wife they had to remove his guns if he had any in the house. She told them he kept them in a locked cabinet in a closet in a detached garage. The closet door was screwed shut. There was no basis to assume consent to enter the detached garage, unscrew the closet, open the locked gun cabinet and seize the guns.

Moreover, there were no exigent circumstances here justifying a warrantless seizure of Plaintiff's firearms. While "[t]he need to protect or preserve life or avoid serious injury" constitutes an exigent circumstance, no such circumstances were present here. Bilida v. McCleod, 41 F.Supp.2d at 149; State v. Jennings, 461 A.2d at 367. In Bilida, Judge Lagueux held there were no exigent circumstances that justified DEM's warrantless seizure of a pet raccoon from plaintiff's backyard. "[I]mminent danger requires a higher standard than the mere possibility that someone might get injured." Id., citing United States v. Curzi, 867 F.2d 36, 42 (1st Cir. 1989).

In Jennings, there had been a possible homicide in the vicinity of defendant's apartment. A police officer originally entered the apartment because defendant's landlord's son saw defendant's door was open and the apartment looked like it had been ransacked. The officer checked the apartment and determined there were no intruders present. He left the apartment and met his supervisor downstairs. The two of them then conducted a "full scale, intensive search" during which they seized a gun, ammunition and a bullet cartridge. The Rhode Island Supreme Court said the initial search was valid, but:

> There is nothing in the record, however, to justify any further intrusion by the authorities without first securing a search warrant. There is no indication that there was any continuing danger to anyone or that the destruction or removal of evidence was imminent. The exigency justifying Alberico's initial entry and security sweep had ended, and the apartment had been secured. The police had ample time to obtain a warrant.

461 A.2d at 367.

Plaintiff was not in the vicinity of the firearms when Defendants seized them. Rather, at their insistence, he had gone to the hospital to be examined. He was gone for approximately an hour. The firearms were locked in a cabinet in a closet that was screwed shut. Three police officers had come to Plaintiff's home. (See Incident Report attach to Amended Verified Complaint as Exhibit A). None of them went with Plaintiff to the hospital. Certainly, one or two of them could have watched the closet while another attempted to get a search warrant. They made no such effort. Defendants' warrantless seizure of Plaintiff's firearms violated the United States and Rhode Island Constitutions.

Plaintiff notes that Chapter 5 of Title 21 of the Rhode Island General Laws addresses Rhode Island's statutory requirements for search warrants. In sum, Chapter 5 requires that law enforcement officials like Defendants:

-apply to a judge of the Supreme, Superior, District or Family Courts for a search warrant, R.I.Gen.Law § 12-5-1;

-demonstrate specific grounds for the issuance of the search warrant, including the need to search for stolen property, concealed property in violation of law, property intended to be used to violate the law, property which is evidence used in the commission of a crime, samples of bodily tissue or fluids that may identify a criminal, or samples of blood or breath that may yield evidence of alcohol or a controlled substance. R.I.Gen.Law § 12-5-2;

-provide a complaint in writing and under oath to support the application, R.I.Gen. Law § 12-5-3(a); and,

-return the warrant within 14 days to the court that issued it, R.I.Gen. Law § 12-5-3(b).[8]

Notably, Defendants did not apply to a judge for a search warrant, did not demonstrate specific statutory grounds for a search warrant (none of which include "safekeeping" of firearms), did not provide a complaint in writing and under oath to support the request for the search warrant, and, obviously, did not obtain a search warrant before seizing Plaintiff's firearms.

The Rhode Island Supreme Court has held that this statute strictly and constitutionally limits police power to seize property by a search warrant. See State v. Gomes, 881 A.2d 97, 105 (R.I. 2005); State v. Dearmas, 841 A.2d 659, 665 (R.I. 2004); State v. DiStefano, 764 A.2d 1156, 1169 (R.I. 2000). In DeStefano and Gomes, the Supreme Court held that evidence of blood tests from a non-consenting person subject to a search warranted was not permitted under § 12-5-2, as it was then drafted. In both cases, the court held the evidence must be excluded. In Gomes, the court held that DNA test results from blood obtained by search warrant must also be excluded. The court indicated in Dearmas that the General Assembly determines the scope of a permissible search warrant:

> Because the Legislature has not hesitated to enact statutes extending the warrant authority of our trial courts in certain other limited specific circumstances, and because it has enacted statutes identifying particular situations in which persons must submit to involuntary blood tests, we decline to extend the Superior Court's general warrant authority by interpreting "property" to include the blood of a living person who does not consent to such a seizure.

841 A.2d at 665. Here, Defendants' seizure of Plaintiff's firearms completely fails to comply with Chapter 12.

---

[8] Superior Court Rule of Criminal Procedure 41 sets forth similar standards.

The failure to comply with this chapter's requirements means the seizure of property is unlawful. Hence, Defendants' seizure of Plaintiff's firearms for "safekeeping" without a search warrant violated Rhode Island statutory law. Accordingly, Defendants may not claim the protections of that chapter.

## II. Defendants Failed to Provide the Due Process Required By the Rhode Island Search Warrant Statute

The provision Defendants' cite, § 12-5-7, supports Plaintiff's claim that Defendants must initiate due process to retain seized property, which they failed to do. That section provides:

> (a) The property seized shall be safely kept by the officer seizing it, under the direction of the court, so long as may be necessary for the purpose of being used as evidence in any case.
>
> (b) As soon as may be thereafter, if the property is subject to forfeiture, further proceedings shall be had on the property for forfeiture as is prescribed by law in chapter 21 of this title.
>
> (c) If the property seized was stolen or otherwise unlawfully taken from the owner, or is not found to have been unlawfully used or intended for unlawful use, or is found to have been unlawfully used without the knowledge of the owner, it shall be returned to the person legally entitled to its possession. (emphasis added).

R.I.Gen. Law § 12-5-7.

However, Defendants failed to comply with this section. They did not keep Plaintiff's firearms "under the direction of the court." Nor, was it necessary to keep the property "as evidence in any case" because there was no case. Further, Defendants did not initiate "further proceedings" as proscribed by chapter 21. Finally, Defendants did not return the firearms to the person "legally entitled to [their] possession." Nothing in this section justifies Defendants' indefinite retention of Plaintiff's firearms.

Chapter 21 provides for "recovery of fines, penalties and forfeitures." Specifically, it says:

Unless otherwise specially provided:

(1) All fines of five hundred dollars ($500) and under shall be recovered by complaint and summons;

(2) All fines of upwards of five hundred dollars ($500), by indictment or information;

(3) All penalties and pecuniary forfeitures, by action of debt; and

(4) All forfeitures of personal property, by complaint and warrant or by information.

R.I.Gen.Law § 12-21-1. Clearly, the only provision here that could possibly apply is (4) respecting forfeitures of personal property.[9] Moreover, the section shows that it is the government that has the obligation to initiate forfeiture proceedings "by complaint and warrant or by information." A private citizen such as Plaintiff cannot initiate a "complaint and warrant" or an "information," which are criminal pleadings. See, R.I.Gen. Law §§ 12-6-1, 12-12-1.4 ("An indictment, information or complaint shall be a plain, concise, and definite statement of the offense charged.")

Other sections of Chapter 21 make it abundantly clear that it is the government seeking to retain possession of seized property that must initiate court proceedings. Section 5 states:

[9] However, this is not a criminal "forfeiture" for several reasons. Plaintiff was never charged with a crime. Defendants never claimed the right to legal title to Plaintiff's firearms. To the contrary, once he filed suit, they returned the firearms. In any event, the circumstances pursuant to Rhode Island law under which a law enforcement agency can claim a forfeiture of property are limited to when there has been a violation of law. R.I.Gen.Laws § 12-21-23. Even so, the person seizing the property "shall deliver it to a proper officer having a warrant to take and deliver the property." Id. No police officer ever obtained a warrant for his firearms.
A different statute provides for civil forfeiture of property derived from or used for the transportation or storage of a controlled substance. R.I.Gen. Laws § 21-28-5.04.2. Nonetheless, the statute requires that the Attorney General "shall immediately cause the initiation of administrative or judicial proceedings against the property." R.I. Gen. Laws § 21-28-5.04.2(g); State v. Grullion, 783 A.2d 928 (R.I. 2001). It would very strange if Rhode Island law required the Attorney General to initiate legal proceedings in those circumstances but required Plaintiff to file suit to regain possession of property unrelated to any criminal offense.

"Whenever any penalty or forfeiture…shall be given to any town by any penal statute, the town council may sue for the penalty or forfeiture in the name of the town…" R.I.Gen.Law § 12-21-5. Section 24, entitled "complaint or information asking forfeiture," provides:

> The person making or directing a seizure shall without unnecessary delay make complaint on oath and in writing to a judge of the district court for the division in which the offense for which the forfeiture has accrued was committed, regardless of the value of the property seized, and jurisdiction is conferred on the district court to try and determine the matter notwithstanding the value of the property seized is in excess of five thousand dollars ($5,000). (emphasis added).

R.I.Gen. Law § 12-21-24. Section 26 states:

> Notice of complaint or information shall be issued by the court to the owner, if known, otherwise notice shall be published in some newspaper published in the vicinity for a period of at least two (2) weeks, that all persons interested may appear, either in person or by attorney, at the time and place appointed in the notice for trial, and show cause, if they have any, why judgment of forfeiture should not be passed. (emphasis added).

R.I.Gen.Law § 12-21-26. Here, Defendants did not sue for forfeiture, they did not make a complaint on oath and in writing to the district court, nor did any court issue notice of a complaint to Plaintiff.

Another statute expressly provides for the return of seized property:

> All property, money of estate taken or detained as evidence in any criminal cause shall be subject to the order of the court before which the indictment, information, or complaint shall be brought or pending, and shall, at the termination of the cause, be restored to the rightful owner. (emphasis added).

R.I.Gen. Laws § 12-17-6. It would be very strange if Rhode Island law required that police must return property seized in a criminal case at its termination without requiring the owner to initiate court proceedings, but somehow required Plaintiff to initiate court proceedings when his property was seized without any warrant or criminal proceedings.

Even if the statutes were not sufficiently clear, Rhode Island case law is. State v. Shore, 552 A.2d 1215 (R.I. 1987); State v. DeMasi, 447 A.2d 1139 (R.I. 1982); Santiano v Auto

Placement Center, Inc., 119 R.I. 419, 379 A.2d 368 (R.I. 1977). In Shore, the state filed a criminal complaint charging him with drug crimes. The police subsequently seized some of Shore's and his wife's property pursuant to a search warrant. He filed a motion for the return of the some of the property. The district court ordered the release of the property. The state filed a petition for writ of certiorari.

The Supreme Court said: "The District Court, before which defendant was arraigned, has the jurisdiction to restore seized evidence to defendant. Jurisdiction is conferred by…§ 12-5-7, pertaining to property seized under a valid search warrant, by § 12-17-6, pertaining to property detained as evidence for trial; as well as the inherent supervisory power of the court." 522 A.2d at 1216. The Court added: "In order for the government to maintain possession of an individual's personal property, it must show a connection between the property and any alleged criminal activity of the defendant." Id. at 1217. The Court remanded the case for a hearing at which the state would "present evidence to justify this conduct." Here, there was no criminal activity, no arraignment, no other criminal proceeding, and no search warrant. Accordingly, Defendants were obligated to return Plaintiff's firearms without requiring him to initiate court proceedings.

Similarly, in DeMasi, defendant's property was seized pursuant to a search warrant. There were criminal proceedings resulting in a *nolo contendere* plea. Defendant filed a motion for the return of his property. The trial court denied the motion on the grounds that the property might have future evidentiary value. The Supreme Court reversed this ruling stating:

> [T]he seized property of potential evidentiary value has been held longer than necessary for use in future proceedings. See…§ 12-5-7. Therefore, the defendant is entitled to a return of all seized property belonging to him; provided that it is non-contraband, not subject to forfeiture, not stolen or otherwise unlawfully taken

> from the owner, and not found to have been unlawfully used or intended for unlawful use.

447 A.2d at 1140. Again, here, there was no search warrant and no criminal proceedings. Accordingly, Plaintiff was "entitled to a return of all seized property belonging to him" without the requirement of filing a lawsuit.

In Santiano v. Auto Placement Center, Inc., there was a dispute as to whether plaintiff was the rightful owner of a car that the state police had impounded as stolen property. The state police determined that the car had been stolen from Natick Auto Sales which defendant Hartford Insurance Group insured. The state police turned the vehicle over to The Hartford pursuant to § 12-5-7. ("If the property seized was stolen…from the owner…it shall be returned to the person legally entitled to its possession."). Plaintiff sought declaratory and injunctive relief arguing that he was the rightful owner of the car. The Supreme Court rejected his appeal stating:

> There is no merit to plaintiff's argument that the state police should have followed the procedure set forth in §§ 12-21-1 et seq. The facts involved in this case do not present a situation in which property used in the commission of a crime is to be forfeited to the state. The automobile seized by the state police was not subject to forfeiture under the provisions for the disposition of seized property as set forth in § 12-5-7.

119 R.I. at 423, 379 A.2d at 370. Thus, the state police simply made a determination that The Hartford was the rightful owner and turned the vehicle over to it. They did not require a court order. Here, it was never contested that Plaintiff was the rightful owner of the firearms, yet, Defendants refused to returned them to him until he filed suit.

Nothing in either Chapter 5 or Chapter 21 of Title 12 provides that a private person whose property has been seized without a search warrant must initiate court proceedings to reacquire that property. Defendants argue that the availability of a court remedy, purportedly

pursuant to Section 12-5-7, satisfies due process. Nothing indicates that the General Assembly had that intention.

Defendants' heavy reliance on State v. Rushlow, 72 A.3d 868 (R.I. 2013), is surprising for several reasons. It is not an opinion, it is a *per curiam* order. It also undercuts Defendants' arguments. Rushlow was charged with burglary and sexual assault, tried, and found guilty of the assault but acquitted of burglary. He filed a post-trial motion in the criminal case to obtain money the police had seized from him in relation to the larceny charge. The trial court denied the motion.

On appeal, the Supreme Court said:

> It is the state's burden to "show that the property is necessary to the success of an active criminal investigation, is going to be used as evidence in a pending criminal trial, or is subject to forfeiture." [citation omitted]. As such, it follows that the burden also falls on the state to show that the property had been "stolen or otherwise unlawfully taken from the owner" to prevent such property from being returned. See G.L. 1957 §§ 12-5-7, 12-17-6. As this Court noted, "the seizure of property from an individual is prima facie evidence of that individual's entitlement to the property." [citation omitted]. Therefore, if the state does not present "serious reasons to doubt the individual's entitlement" and does not "produce[ ] evidence to substantiate its claim, the individual need not come forward with additional evidence of ownership." [citation omitted].

Id. at 869, quoting State v. Shore, 522 A.2d at 1217. Because the state had not met this burden, the Court reversed and remanded for further proceedings consistent with its order. Id. at 1218.

Here, there was never a criminal case or a criminal investigation in which Plaintiff's firearms might have been evidence or in which Plaintiff might have filed a motion. The firearms were not "stolen" or "unlawfully taken from the owner," except by Defendants. The seizure of the firearms from Plaintiff was "prima facie evidence" of his ownership. Defendants could not present "serious reasons" to doubt Plaintiff's entitlement to his firearms. This is proven because

Defendants returned the firearms once he filed suit without any order from this Court. Accordingly, Plaintiff need not come forward with additional evidence of his ownership. Nothing in Rushlow substantiates Defendants' argument that in these circumstances the burden should be on Plaintiff to initiate court proceedings to obtain his firearms that he has an indisputable right to possess.

Defendants' argument that "the risk of erroneous deprivation is insubstantial," (p. 8), would be laughable if the facts were not so serious. Defendants seized Plaintiff's firearms from a locked cabinet while he was being examined at a hospital, at their insistence. Even though the hospital discharged Plaintiff after examining him, Defendants still refused to return his firearms for over six years, until he filed this lawsuit. They then returned the firearms without a court order, thus conceding there was an erroneous deprivation. Further, because Defendants are holding at least ten other persons' firearms for "safekeeping," Defendants' policy presents a substantial risk of erroneous deprivation.

### III. The United States and Rhode Island Constitutions Determine the Scope of Due Process to Which Plaintiff is Entitled

Here, it is ultimately our Constitutions that determine the scope of due process required, not our legislatures. "If the scope of the power given to officials under a statute is so broad that the exercise of constitutionally protected conduct depends upon the subjective views of those officials as to the propriety of the conduct, the statute is unconstitutional as a denial of due process." Gable v. Jenkins, 304 F.Supp. 998, 1000 (N.D.Ga. 1969), citing Lanzetta v. New Jersey, 306 U.S. 451 (1939).

Thus, even if the Court were to determine that Section 12-5-7 provided some kind of process that required Plaintiff to initiate court action to regain his firearms, the statute is

constitutionally infirm for the reasons Plaintiff has previously argued. Plaintiff's Memorandum in Support of his Motion for Partial Summary Judgment, (Dkt # 21-1, pp. 13-28); Plaintiff's Reply in Support of his Motion for Partial Summary Judgment, (Dkt # 23, pp. 10-26).[10]

## CONCLUSION

The Court should determine that nothing in R.I.Gen. Laws § 12-5-7 required Plaintiff to initiate court proceedings to obtain his firearms when Defendants failed to obtain a search warrant and there were no criminal proceedings in which the firearms were evidence. To the contrary, in these circumstances, Defendants violated Plaintiff's rights by seizing his firearms and requiring him to initiate court proceedings to obtain his property

Respectfully submitted,

*/s/ Thomas W. Lyons*

Thomas W. Lyons #2946
Rhiannon S. Huffman, Esq. #8642
RHODE ISLAND AFFILIATE,
AMERICAN CIVIL LIBERTIES UNION
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

Date: November 10, 2015

## CERTIFICATION

I hereby certify that on November 10, 2015, a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system and served by email on Marc DeSisto, Esq., attorney for defendants. Parties may access this filing through the Court's CM/ECF system.

*/s/ Thomas W. Lyons*

[10] Defendants' reliance on a Pennsylvania Rule of Criminal Procedure is irrelevant for this reason even if a Pennsylvania rule somehow applied in Rhode Island.