UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON A. RICHER,                                 :
                Plaintiff                :
                                                :
v.                                               :
                                                :          C.A. No.  15-162
JASON PARMELEE as the Finance Director of        :
THE TOWN OF NORTH SMITHFIELD,                    :
TOWN OF NORTH SMITHFIELD, and                    :
STEVEN E. REYNOLDS in his official               :
capacity as Chief of the NORTH SMITHFIELD        :
POLICE DEPARTMENT                                :
                Defendants              :

PLAINTIFF JASON RICHER'S SUPPLEMENTAL REPLY IN SUPPORT
OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT

On January 25, 2016, during a phone conference, Defendants asked to file an additional memorandum to address Plaintiff's new claims or allegations set forth in the Second Amended Complaint.   Defendants raise a variety of arguments in their Supplemental Memorandum in Response to Plaintiff's Motion for Partial Summary Judgment, many of which rehash of arguments they have made previously. Some of the arguments are contrary to controlling law, which Defendants do not address.  In addition, Defendants assert new arguments which raise significant issues that may require Plaintiff to amend his complaint.

Defendants also state that Plaintiff has not moved for summary judgment on his Fourth Amendment claim, Count II of the Second Amended Verified Complaint, filed on February 10, 2016.  Technically, this is correct because Plaintiff filed his Motion for Partial Summary Judgment on July 3, 2015, 7 months earlier.  Nonetheless, Defendants have been opposing Plaintiff's Motion on Fourth Amendment, or related grounds, ever since then.  Defendants' objection to the motion argued their actions were justified by their community care-taking function.  (Dkt,# 18 pp. 9-12).  Defendants then requested and received permission to file an

additional memorandum arguing that their actions were justified based on R.I.Gen.L. § 12-5-7, of the Rhode Island Warrant Statute.  (Dkt. # 26).  Most recently, Defendants requested and received permission to submit yet another memorandum on Plaintiff's Fourth Amendment claim. (Dkt. 32).  Defendant submits the issue has been fully briefed, at Defendants' request, and is ripe for decision as to whether the Court can grant summary judgment on liability on all of Plaintiff's claims, on the existing record, or whether there are issues of fact.

In any event, none of Defendants' arguments are sufficient to defeat Plaintiff's Motion for Partial Summary Judgment.

I.   DEFENDANTS CAN BE LIABLE FOR VIOLATING THE FIREARMS ACT BECAUSE SECTION 9-1-2 DOES APPLY TO THEM

Defendants are liable for their violations of the Rhode Island Firearms Act, R.I.Gen.L. § 11-47-1, et seq., because those violations are crimes under the Act, R.I.Gen.L. § 11-47-26, and a different statute, R.I.Gen.Law § 9-1-2, provides a civil claim for criminal violations.  Section 9-1-2 does not require that the defendant be convicted of the crime before the claimant can recover. Gray v. Derderian, 400 F.Supp.2d. 415, 429-30 (D.R.I. 2005); Cady v. IMC Mortg.Co., 862 A.2d 202, 215 (R.I. 2004).

Defendants make a series of arguments why they are not civilly liable for their violations of the Firearms Act:

1) Plaintiff's claims are only against the Town of North Smithfield because the individual defendants were sued only in their official capacity.  (Defendants' Supplemental Memorandum, pp. 4-5);

2) A municipal corporation cannot commit a criminal act, therefore, Defendants cannot be held liable pursuant to § 9-1-2.  (Id. at 5-6); and,

3) Section 9-1-2 only applies to an "offender," an "offender" can only be a "person," and a municipality cannot be a "person." (Id. at 6-7).

Plaintiff notes initially that Defendants do not argue, and have not argued, that they did not violate the Firearms Act.[1]  Plaintiff will address each of the arguments that Defendants do make.  Defendants' argument that Plaintiff's claims are only against the Town of North Smithfield, and not against the individual Defendants, fails.  The Supreme Court and this Court have held that government officials can be sued in their official capacities for prospective declaratory or injunctive relief.  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 n. 10 (1989); Tang v. State of R.I., Dept. of Elderly Affairs, 904 F.Supp. 55, 60 (D.R.I. 1995) (Pettine, J.).  Here, Plaintiff has brought claims for such equitable relief.

Defendants argue, essentially, that Plaintiff's claim pursuant to §9-1-2 is barred by sovereign immunity; however, the State of Rhode Island has waived the Town's sovereign immunity for claims such as Plaintiff's.  R.I.Gen.L. § 9-31-1, et seq.  The Governmental Tort Liability Act (or "GTLA") makes municipalities liable in tort in the same manner as private individuals or corporations:

> The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9-1-25, hereby be liable in all actions of tort in the same manner as a private individual or corporation; provided, however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in this chapter.

R.I.Gen.L. § 9-31-1(a).  There is no exception in the GTLA for claims under the Firearms Act or R.I.Gen.L. § 9-1-2.  The General Assembly knew how to create exceptions to the GTLA.  It has specifically created an exception for failures of computers or software.  R.I.Gen.L. § 9-31-1(b).  Accordingly, the Court should not read any additional exceptions into the GTLA.  Since an

---

[1] To the contrary, it appears uncontroverted that Defendants did violate the Act.

individual would be liable to Plaintiff for violating the Firearms Act, pursuant to § 9-1-2, the Town can also be held liable.

Defendants' argument that the Town cannot be held liable under § 9-1-2 because it is not a "person" is similarly incorrect.  The Supreme Court has specifically held that a municipality is a "person" subject to suit under § 1983.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 659 (1978).  This Court has already specifically determined that a municipality can be a "person." Walden v. City of Providence, 495 F.Supp.2d 245, 265-66 (D.R.I. 2007) (Smith, J.).  Further, this Court has twice held that a municipality can be found liable under § 9-1-2 for violations of a state criminal statute.  Id. at 270; Gray v. Derderian, 400 F.Supp.2d 415, 429-30 (D.R.I. 2005) (Lagueux, J.) (holding that the Town of West Warwick could be held liable under § 9-1-2).

In Walden, plaintiffs alleged that defendants, including the City of Providence, violated their rights by recording their phone conversations without their consent.  Plaintiffs based their claims, in part, on R.I.Gen.L. § 11-35-21 which makes it punishable for any person to "…intercept…wire, electronic or oral communications."  Defendants argued that this statute does not create a cause of action.  Judge Smith wrote:

> Although true, Plaintiffs correctly point out that R.I. Gen. Laws §9-1-2 is the "enabling act giving a person injured as a result of a crime or offense a right of action where none existed at common law."  [citation omitted].  This statute has been found to allow a plaintiff to "bring a cause of action even if no criminal complaint for the crime or offense has been filed."  [citation omitted].

Id. Judge Smith denied defendants' summary judgment motion because there were issues of fact whether they had violated the criminal statute.  Id.  Here, it is undisputed that Defendants violated the Firearms Act.

4

Other courts have held that municipalities or similar entities can be liable under analogous statutes. See Brownsburg Community School Corp. v. Natare Corp., 808 N.E.2d 148 (Ind.App. 2004). In that case, the Indiana Court of Appeals held that a municipality and its public school corporation were a "person" that could be found to have violated the criminal provisions of Indiana's Anti-Trust Act. Thus, they could be liable for treble damages and attorney's fees under a separate provision that provided a civil remedy for criminal violations. Id. at 154. The court specifically distinguished State v. Ziliak, 464 N.E.2d 929 (Ind.App. 1984), upon which Defendants rely, because Ziliak involved a claim against the State of Indiana. Id. at 153.

Defendants' reliance on City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 261 (1981), is also misplaced. There, the Supreme Court held that a municipality cannot be held liable under § 1983 for punitive damages. Plaintiff has not sought punitive damages from North Smithfield. Significantly, though, the Supreme Court said: "It was generally understood by 1871 that a municipality, like a private corporation, was to be treated as a natural person subject to suit for a wide range of tortious activity…" Id. at 247.

The other cases upon which Defendants' rely are also inapplicable. As noted above, the Indiana Court of Appeal has specifically distinguished State v. Ziliak, 464 N.E.2d 929 (Ind.App. 1984), upon which Defendants rely heavily, because it involved a claim against the State of Indiana, not against a municipality. Brownsburg Community School Corp. v. Natare Corp., supra. Notably, however, the Ziliak court found a state could be a "person." Id. at 930-31.

In both Nu-Life Construction Corp. v. Board of Education, 779 F.Supp. 248, 251 (E.D.N.Y. 1991), and Bonsall Village, Inc. v. Patterson, No. 90-0457, 1990 WL 139383,

(E.D.Pa. Sept. 19, 1990), the courts found that a municipality could not be a "person" subject to RICO liability because a municipality could not form the requisite *mens rea* to commit the predicate acts.  These holding are inapplicable where, as here, the criminal violations of the Firearms Act do not require any *mens rea*.  It is a "strict liability" criminal statute.  See R.Gen.L. §§ 11-47-26, 11-47-27.   See, <u>State v. Yanez</u>, 716 A.2d 759, 764 (R.I. 1998), quoting <u>People v. Cash</u>, 419 Mich. 230, 351 N.W.2d 822, 826 (1984) ("It is well established that the Legislature may, pursuant to its police powers, define criminal offenses without requiring proof of a specific criminal intent and so provide that the perpetrator proceed at his own peril regardless of his defense of ignorance or an honest mistake of fact.").

Furthermore, §11-47-22(b), insomuch as it specifically addresses the actions of the police, only applies to the police and, therefore, the police departments are the only parties who could be held liable under its specific provisions as they relate to the mandates upon the police departments.

For these reasons, Plaintiff has a claim against Defendants for violation of the Firearms Act.  Because Defendants apparently concede that they violated that Act, Plaintiff is entitled to summary judgment on liability with respect to Count I.

## II.     DEFENDANTS HAVE NOT RAISED A MATERIAL ISSUE OF DISPUTED FACT RESPECTING WHETHER THEY HAVE A POLICY OR PRACTICE

Defendants incorrectly assert that there are two material issues of disputed fact respecting whether the Town of North Smithfield is liable. First, Defendants seemingly argue that the Town is not liable for the intentional torts of its employees, including, presumably, the individual Defendants, because those actions are outside the scope of employment.  (Defendants' Supp. Memorandum, pp. 9).  Second, Defendants argue that there is an issue of fact respecting whether

their tortious activity was in furtherance of an agency practice or policy.  (Defendants' Supp. Memorandum, pp. 9-10).

The first argument is factually baseless.  Plaintiff's verified complaints specifically allege authority.  (Complaint, ¶ 2; Amended Complaint, ¶ 2, Second Amended Complaint, ¶ 2).[2]  No Defendant has pled a lack of authority, nor have they identified any specific fact supporting this argument.[3]

In addition, there are two different policies at issue in this case:  (1) whether Defendants have a policy of seizing people's weapons without a search warrant or other legal justification, and (2) whether Defendants have a policy of requiring people whose weapons have been seized to obtain a court order to get the weapons back.  With respect to whether there is an issue of fact that Defendants' weapon seizures were pursuant to an agency policy or practice, Defendants have previously made this argument.[4] Plaintiff will rely on his prior arguments respecting this issue, e.g., Defendants' responses to Plaintiff's request to admit demonstrate they are holding the firearms of at least 10 other people that they have similarly seized for "safekeeping."  (See, Exhibits G and H to Plaintiff's Reply Respecting His Motion for Partial Summary Judgment, dkt. # 23).

---

[2] Defendants denied the allegations of the original complaint and the amended complaint "based on vagueness and generalness." (See, dkt. # 10).  However, Defendants have not presented any admissible evidence indicating that any Town employee acted outside the scope of his or her employment.

[3]Moreover, to the extent that the Town of North Smithfield is arguing for the first time that it cannot be held liable for the criminal acts or intentional torts of its employees, that raises a new, critical, issue.   If the Court finds the Town is not liable for the actions of its employees or that there are issues of fact as to such liability, Plaintiff requests permission to amend the complaint to assert claims against the individual Defendants, and additional individual defendants, in their individual capacities.  See Part IV, *infra*.

[4] See, Defendants' Memorandum in Response to Plaintiff's Motion for Partial Summary Judgment, dkt. # 18, pp. 8, 13-16).

In addition, with respect to Defendants' policy of requiring people to obtain a court order to get back their firearms, this appears to be undisputed.  In fact, Defendants have previously argued that this policy is justified.  (See, Defendants' Memorandum in Response to Plaintiff's Motion for Partial Summary Judgment, Dkt. # 18, pp. 16-18 and Defendants' Sur-Reply Memorandum of Law, Dkt. # 26, pp. 6-8).  Moreover, Capt. Tim Lafferty of the North Smithfield Police Department was quoted in the "The Valley Breeze" at the time this suit was filed as saying that Defendants had a policy of requiring people whose firearms were seized to file an action to recover possession of their firearms.  (Exhibit K, attached).  Specifically, the article says:

> Asked to comment on the suit this week, Capt. Tim Lafferty said that Richer was asked to file in the district court for restoration of property, a normal process aimed at protecting the town from liability.  If no one from the department objects—and Lafferty says in Richer's case, no one would have—then the court typically grants the request.  "It's not that we don't want to give him back his weapons.  We just need to make sure the town is covered liability-wise." Lafferty said.

Thus, it is undisputed that Defendants have a policy of requiring people whose firearms they seized of filing suit in state district court to get their weapons back.

III.     DEFENDANTS' ACTIONS VIOLATE THE FOURTH AMENDMENT AND ART. 1, SEC. 6 OF THE RHODE ISLAND CONSTITUTION

Defendants make two incorrect arguments respecting Plaintiff's claims under the Fourth Amendment and Art. 1, Sec. 6 of the Rhode Island Constitution:  (1) Plaintiff has not shown an absence of disputed facts (Defendants' Supp. Memorandum, pp. 10-12), and (2) Defendants' seizure of Plaintiff's firearms was permissible pursuant their "community caretaking function." (Id. pp. 12-25).[5]

---

[5] Defendants have previously made both of these arguments.  (Defendants' Memorandum in Response to Plaintiff's Motion for Partial Summary Judgment, dkt., # 18, pp. 9-12). Moreover,

Defendants argue there is a factual dispute respecting whether they had consent to seize Plaintiff's firearms. However, consent is an "avoidance or affirmative defense" which Defendants have the burden to plead and prove. See, F.R.Civ.P. 8(c); Armijo ex rel. Armijo Sanchez v. Peterson, 601-F.3d 1065, 1070 (10th Cir. 2010); Hernandez v. K-Mart Corp, 497 So.2d 1259, 1260 (Fla.App. 1986) (holding that consent to a search is an affirmative defense).[6] At the very least, Defendants must provide some evidence of consent. Walden v. City of Providence, 495 F.Supp.2d 245, 264 (D.R.I. 2007) ("Finally, although Defendants argue that the 'consent exception' also compels granting their motion for summary judgment, the record suggests otherwise…[T]here is simply no evidence suggesting that the Plaintiffs were aware their conversations were being recorded."). Here, Defendants have failed to show any evidence of consent, because there is none. Thus, this argument fails.

With respect to the law, neither the Supreme Court nor the First Circuit supports Defendants' argument that the community caretaking function permits their seizure of Plaintiff's firearms in his home without a warrant. Plaintiff previously addressed this argument.

---

to the extent Defendants are arguing that Plaintiff's Motion for Partial Summary Judgment does not include a Statement of Undisputed Facts respecting his Fourth Amendment claim, it could not have because Plaintiff filed his Motion before he amended his complaint to add the Fourth Amendment claim. In any event, Plaintiff has now filed his Second Amended Verified Complaint, including the Fourth Amendment claim (Count III). To the extent necessary, Plaintiff relies on the those verified allegations, in addition to his previously filed material, as his Statement of Undisputed Facts.

[6] There is a split among the circuits as to whether the plaintiff or defendant bears the ultimate burden of proof of consent or other justification in a § 1983 action for a warrantless arrest or search. See, Der v. Connolly, 666 F.3d 1120, 1127-28, n.2 (8th Cir. 2012) (collecting cases). It appears the First Circuit has not addressed the issue. However, even among the circuits that place the ultimate burden of proof on plaintiff, there is still a presumption that a warrantless search is unreasonable, which presumption requires the defendant to produce evidence to rebut it. Id. at 1129. See also, Lopera v. Town of Coventry, 652 F.Supp.2d 203, 212 (D.R.I. 2009) (Smith, J.), citing Arizona v. Gant, 556 U.S. 332 (2009) ("warrantless searches are per se unreasonable under the Fourth Amendment and justified only under specifically established and well-delineated exceptions."). Defendants have produced no such evidence of consent.

(Plaintiff's Reply Respecting His Motion for Partial Summary Judgment, Dkt. # 23, pp. 4, 12-15 and Plaintiff's Rebuttal Respecting R.I.Gen.Laws §12-5-7, Dkt. # 27, pp. 3-11).[7]

Moreover, the most analogous cases from other circuits demonstrate the community caretaking function does not apply in these circumstances.  Arden v. McIntosh, 622 Fed.Appx. 707 (10th Cir. 2015); Storey v. Taylor, 696 F.3d 987 (10th Cir. 2012); Miranda v. Cornelius, 429 F.3d 858 (9th Cir. 2005).  In Arden, plaintiff's wife called "911" to report that her husband was taking pills, slurring his words, and told her he would continue taking his pills because nobody cared about him.  When a sheriff arrived, she found plaintiff in his bedroom incoherent and unresponsive.  There were several firearms in the bedroom.  A deputy learned plaintiff had overdosed ten days earlier.  After EMTs took plaintiff to the hospital, the deputy collected 23 firearms and ammunition, put them in the truck of her patrol car and then booked them for "safekeeping" at the police station.  The firearms and ammunition were returned to plaintiff after he was released from the hospital.  Plaintiff filed suit in federal district court alleging the seizure of his firearms had violated his constitutional rights.  Defendants argued the seizures were justified by their community caretaking function.  The district court found no constitutional violation and plaintiff appealed.

The Tenth Circuit said that defendants' warrantless entry into the house and the initial seizures, while plaintiff was still in the house, were justified by the exigent circumstances "to

---

[7] Plaintiff addressed the appropriate level of scrutiny in his memorandum in support of his motion for partial summary judgment.  (Dkt. # 12, pp. 9-10).  Plaintiff notes that on February 4, 2016, the Fourth Circuit held that a state statute that imposed a ban on the possession of semi-automatic weapons in the home was subject to strict scrutiny.  Kolbe v. Hogan, No. 14-1945, 2016 WL 425829 at * 1 (4th Cir. Feb. 4, 2016).  The circuit court remanded the case for a new hearing based on strict scrutiny.  Id.  Plaintiff submits that this decision supports his argument that Defendants' policies and practices here be subjected to strict scrutiny.

secure the premises for reasons of police and medical-personnel safety."  622 Fed.Appx. at 709-

10, citing <u>Storey</u>, <u>supra</u>.  However, the court continued:

> As for the search and seizure of the firearms after Mr. Arden had left for the
> hospital, viewing the evidence in the light most favorable to Mr. Arden, the
> exigent situation had ended when Deputy Blondell seized his firearms and placed
> them in the truck of her patrol car.  The authorities had already determined that no
> one else was present in the home.  Mr. Arden had been taken to the hospital.
> There was no indication that Mr. Arden's possession of the guns was illegal.  The
> defendants have cited no authority, and we have found none, authorizing a police
> officer to confiscate weapons that would otherwise be left in an unoccupied home.
> <u>The evidence and reasonable inferences therefrom interpreted in the light most
> favorable to Mr. Arden are sufficient for a jury to conclude that Deputy Blondell's
> seizure of his firearms beyond the immediate need to protect officer safety during
> an emergency violated the Fourth Amendment.</u>  (emphasis added).

<u>Id</u>. at 710.[8]

In <u>Storey</u>, the police received an anonymous phone call reporting a loud argument at

plaintiff's address.  When the police arrived there was no argument but they knocked at the door.

Plaintiff answered the door and got into a dispute with police about whether he had to answer all

their questions about the reported argument and whether he would step outside.  They arrested

him.  Plaintiff sued, alleging violation of his constitutional rights.  The district court granted

summary judgment and plaintiff appealed.

The Tenth Circuit said a warrantless arrest or search may be justified if there were

"exigent circumstances" or if the police officer was acting in a "community caretaking" role.  <u>Id</u>.

at 992-93.  Exigent circumstances may exist if there is a risk of personal danger.  <u>Id</u>.  The court

used a two part test:  (1) the police officers have an objectively reasonable basis to believe there

is an immediate need to protect the lives or safety of themselves or others, and (2) the manner

and scope of the police actions are reasonable.  <u>Id</u>.  The Circuit said:

---

[8] However, the court found that the law was not clearly established at the time of the seizure so
the individual defendants were entitled to qualified immunity.  <u>Id</u>. at 711.

> A report of a domestic argument—standing alone—does not demonstrate exigent circumstances per se.  [citation omitted].  Thus, officers responding to a report of a domestic dispute must point to *something* beyond the mere fact of an argument to demonstrate an "objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others.  [citation omitted].  Either additional depth and detail in the report, or additional facts learned in the course of the investigation, are required to support the exigency. (emphasis original).

Id. at 994.  The court noted, *inter alia*, that (1) by the time police arrived the argument was over, (2) the police observed plaintiff's wife and there was nothing that suggested a risk to her safety, (3) and there was no visible or audible indications of past or present violence.  It contrasted the situation with other cases in which there was "credible evidence known to the officers of physical abuse or additional corroborating circumstances that increase the potential for violence."  Id. at 996.

The Tenth Circuit said that for these reasons there were no exigent circumstances nor other circumstances that would justify the community caretaking role:  "[T]he facts do not show a likelihood of violence such that Taylor's actions were necessary to protect the safety of Storey, his wife, the officers or others."  Id.  The Court concluded:

> We are not unsympathetic to officers in Taylor's position, who in the performance of their duties must often make split-second decisions based on incomplete information.  We also recognize these decisions are sometimes complicated in potential domestic violence situations, in which one occupant's interest in privacy may be pitted against another's safety.  It is our hope that citizens would be cooperative with police under such circumstances.  Nonetheless, these policy concerns must yield to the Fourth Amendment.  Absent additional facts indicating a greater possibility of violence, a loud argument between spouses does not justify a warrantless seizure within the home.

Id. at 996-97.  The Tenth Circuit reversed the district court's grant of summary judgment.  Id. at 997.[9]

---

[9] The Tenth Circuit also found that the police officer was not entitled to qualified immunity.  Id. at 997.

In <u>Miranda</u>, Mr. Miranda, who had a driver's license, was giving a driving lesson to his wife, who did not have a license.  A police officer observed that Mrs. Miranda was driving poorly and at about 10 m.p.h.  He activated the overhead lights on his patrol car and followed the Mirandas until Mrs. Miranda stopped the car in their driveway.  After learning that Mrs. Miranda did not have a driver's license, the police officer impounded the Mirandas' car and had it towed. The next day, Mr. Miranda appeared at the police station, paid an administrative fee and retrieved the car.  The Mirandas filed suit alleging a violation of their Fourth Amendment rights. The district court granted defendants' summary judgment motion and plaintiffs appealed.

The Ninth Circuit said the impoundment of an automobile is a seizure within the meaning of the Fourth Amendment.  429 F.3d at 862.  The court considered whether the community caretaking function justified the impoundment.  It said: "An officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers."  <u>Id</u>. at 866.  Further, the court rejected defendants' argument that impounding the vehicle would deter the Mirandas from further illegal activity.

> While the Supreme Court has accepted a deterrence rationale for civil forfeitures of vehicles that were used for criminal activity, [citation omitted], the deterrence rationale is incompatible with the principles of the community caretaking doctrine.  Unlike in civil forfeitures, where the seizure of property penalizes someone who has been convicted of a crime, the purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard.  The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the "caretaker" rationale.

<u>Id</u>. The Ninth Circuit reversed the district court with respect to plaintiff's Fourth Amendment claim.

Here, there was no emergency by the time Defendants arrived at Plaintiff's house. Plaintiff had spit his prescription medications into a waste basket, which was plainly visible to

the EMT's and the police.  (Exhibit C to Plaintiff's Second Amended Verified Complaint).

Plaintiff's argument with his then-wife had ceased.  The Town's EMTs told the Town's police

officers that Plaintiff was not suicidal.  (Second Amended Verified Complaint, ¶ 14).

Nonetheless, Defendants insisted Plaintiff go to a hospital for an examination.  Plaintiff

peaceably went to the hospital and was discharged almost immediately.  Plaintiff had not

threatened himself or others with his firearms.  There was no violence, no evidence of violence,

and no history of violence.  Nonetheless, Defendants seized Plaintiff's firearms from a secure

cabinet in his home.  Defendants did not return those firearms until Plaintiff filed suit six years

later.  And, by Defendants' own admission, their purpose was "to make sure the town is covered

liability-wise."  However, a public official's goal of protecting himself or his employer from

liability is not an exception to the Fourth Amendment.

As Defendants point out in their Supplemental Memorandum, the First Circuit has issued

its most recent holding on this issue, Matalon v. Hynnes, 806 F.3d 627 (1st Cir. 2015).  In

Matalon, police officers were pursuing a robbery suspect on foot when they lost track of him in a

neighborhood.  An unidentified witness reported seeing a person resembling the suspect running

between two houses.  One of the police officers knocked on the door of the one of the houses and

rang it doorbell without a response.  She thought she heard footsteps inside the house.  The

police searched the house and found the plaintiff who had been sleeping in an upstairs bedroom.

Plaintiff had words with the officers who arrested him.  He was subsequently acquitted of the

criminal charges and brought a civil rights action against the police officers and the municipality.

After an adverse judgment, the defendants appealed arguing that their actions were justified by

the community caretaking function.

Writing for the First Circuit, Judge Selya initially noted:

> The case law concerning community caretaking functions most often has involved actions by police officers with respect to motor vehicles. [citation omitted]. The doctrine's applicability has been far less clear in cases involving searches of the home. [citation omitted]. <u>Although we do not decide the question</u>, we assume, favorably to [defendant], that the community caretaking function may apply to warrantless residential searches. (emphasis added).

<u>Id</u>. at 634. Judge Selya reiterated that "the parameters of the community caretaking function are nebulous in some respects (such as whether the exception applies at all to residential searches…)." <u>Id</u>. He went on to say that the function could not apply when the police were clearly involved in a criminal investigation. "Put another way, an objectively reasonable officer should have known that a warrantless entry into the plaintiff's home could not be effected on the basis of the community caretaking exception." <u>Id</u>. at 635. Thus, nothing in this decision provides any support for Defendants' argument that their warrantless seizure of Plaintiff's firearms from a secure cabinet in his house is justified by the by community caretaking function.

The other cases upon which Defendants rely are similarly distinguishable. In <u>Lockhart-Bembery v. Sauro</u>, 498 F.3d 69 (1st Cir. 2007), plaintiff's car lost power and she brought it to a halt on Route 30 in Natick, Massachusetts. Plaintiff testified that, although she thought she had gotten her car out of the lane of travel, she was concerned it might be struck by a passing car. A police officer told her to move her car or it would be towed. Plaintiff attempted to push the car and was injured. She filed suit alleging violations of her Fourth Amendment rights and of state common law. On appeal, the First Circuit said that, pursuant to the community caretaking function, "[p]olice are entitled to remove disabled vehicles from the streets in order to protect public safety and ensure the smooth flow of traffic." <u>Id</u>. at 76, citing <u>South Dakota v. Opperman</u>, 428 U.S. 364, 369 (1976).

In <u>United States v. Rodriquez-Morales</u>, 929 F.2d 780 (1st Cir. 1991), two Rhode Island State Police detectives encountered two motorists apparently shouting at each other while driving

15

on Route 95.  They pulled over the two vehicles.  One of the drivers told the police that the other

driver was asking for directions to Boston and he was permitted the leave.  Rodriquez-Morales

(Rodriquez) also said he was asking for directions to Boston but he and his passenger gave

inconsistent stories about why they were going to Boston.  Rodriguez produced an expired

Puerto Rican drivers license that the officers thought was suspect.  He then produced a second

piece of identification with a different birth date than the license.  Rodriquez identified his

passenger by a different name than the passenger identified himself.  A subsequent inspection of

the car by a trained "drug dog" indicated the presence of cocaine.  The police found two kilos of

cocaine in the car.  The First Circuit said that pursuant to their community caretaking function it

was appropriate for the police to impound the vehicle in those circumstances.  Id. at 785-86,

citing a litany of cases.  Finally, the court said it was also appropriate for the police to have the

trained dog sniff defendant's car.  Id. at 788, citing United States v. Place, 462 U.S. 696, 707

(1983); United States v. Jacobson, 466 U.S. 109 (1984).

Many of the cases upon which Defendants' rely for their warrantless seizure of Plaintiff's

firearms from his home were decided before the Supreme Court held there was an individual

right to keep and bear arms.  (See, District of Columbia v. Heller, 554 U.S. 570 (2008) and

McDonald v. Chicago, 561 U.S. 742 (2010)).  They are distinguishable on that ground alone.

Defendants rely heavily on Sutterfield v. City of Milwaukee, 751 F.3d 542 (7th Cir.

2014), though that decision supports Plaintiff's claims.  In Sutterfield, Plaintiff's psychiatrist

called "911" to report that plaintiff just left an outpatient appointment in her office after

expressing suicidal thoughts.  Specifically, plaintiff had said "I guess I'll go home and blow my

brains out."  The police prepared a Statement of Emergency Detention by Law Enforcement

Officer, pursuant to a Wisconsin statute.[10]  The statute specifies a set of procedures that must be followed in effecting a detention when the police officer has cause to believe that a person is mentally ill and evidences "[a] substantial probability of physical harm to himself or herself as evidence by recent threats of or attempts at suicide or serious bodily harm."  Wis.Stat. § 51.15(1)(a)(1).  The law enforcement officer must sign a statement of detention specifying the information upon which the detention is based.  Id. § 51.15(4)(a).   Signing the statement knowing it contains false information is a felony offense.  Id. § 51.15(12).  Other police officers followed department procedures in executing the detention.  Then, they searched her home and found a locked case for CDs that they forced open.  Inside, there were a semi-automatic handgun and a BB gun that resembled a Glock 29 handgun, both of which were seized for "safekeeping."  Plaintiff eventually sued the City of Milwaukee and its police officers alleging violation of her Fourth Amendment rights.  The district court granted defendants' summary judgment motion and plaintiff appealed.

The Seventh Circuit did not apply the community caretaking function to defendants' actions, noting its prior decision, United States v. Pichany, 686 F.2d 204, 208–09 (7th Cir.1982), in which it had declined to extend the doctrine beyond searches of automobiles.  751 F.3d at 548.  Nonetheless, the court found that the police officer's forced entry into plaintiff's home was legal based on the "emergency aid" exception to the Fourth Amendment.  Id at 561, citing, Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006).

However, the court found that this exception did not apply to the search of the CD case and the seizure of the firearms, and it assumed that those actions violated the Fourth Amendment.  Id. at 566-69.  The Court then went on an extensive analysis of the police officer's

---

[10] https://docs.legis.wisconsin.gov/statutes/statutes/51/15

defense of qualified immunity, determined the officers were entitled to it based on Wisconsin state court decisions respecting the community caretaking function.  Accordingly, the Seventh Circuit affirmed the grant of summary judgment.  Id. 572-79.[11]  So, Sutterfield actually supports Plaintiff's argument that Defendants' search of his secure gun cabinet and their seizure of the guns in that cabinet violated the Fourth Amendment.  Moreover, the Rhode Island Supreme Court has not adopted the community caretaking function so there would be no state court decisions upon which defendants might rely, if they were arguing qualified immunity here (which they are not).

Notably, Rhode Island has a procedure somewhat similar to Wisconsin's for the emergency certification of mentally ill persons "whose continued unsupervised presence in the community would create an imminent likelihood of serious harm by reason of mental disability…"  R.I.Gen.L. § 40.1-5-7.  It includes an *ex parte* application to a judge if the mentally ill person will not agree to detention.  R.I.Gen.L. § 40.1-5-7(e).  Over thirty years ago, Justice Weisberger commented, with respect to this statute, "…the failure of public officials to apply promptly for required judicial authorization to commit or retain involuntary patients may give rise to civil liability in the event that such a patient should be wrongfully deprived of his liberty."  In re Doe, 440 A.2d 712, 716 (R.I. 1982).  These Defendants did not follow this procedure.  To the contrary, the Town's own EMT's told its police officers that Plaintiff was not suicidal and the hospital to which Plaintiff went discharged him almost immediately. (Second Amended Verified Complaint, ¶¶ 14-15).

---

[11] The district court had held that the City of Milwaukee was entitled to summary judgment because plaintiff had failed to show the police officers had acted pursuant to a City policy or practice.  Sutterfield did not appeal that decision.  Here, Plaintiff has alleged and shown evidence of such policies or practices.

Here, Plaintiff did not violate any law, nor did he present any threat to the well-being of any other person.  He was not violent and he has no history of violence.  The Town's own EMT's told its police officers that Plaintiff was not suicidal.  (Second Amended Verified Complaint, ¶ 14).  Nonetheless, Defendants insisted Plaintiff go to the hospital for an examination.  Plaintiff peacefully went to the hospital and was discharged almost immediately.  However, while he was gone, Defendants, in accordance with their practice, seized his firearms for "safekeeping," from a secure cabinet in his home and refused to return them until he had filed suit because they wanted "to protect the town liability-wise."

Defendants present no evidence to justify their seizure of Plaintiff's firearms other than the purely hypothetical possibility that those weapons might have been used by someone to harm somebody.  Were that a sufficient basis, then Defendants could also bar the private ownership of firearms and seize all the guns in the Town.  But, such a policy would be unconstitutional.  It would not pass strict scrutiny nor does it pass intermediate level scrutiny.  Similarly, Defendants' policy of seizing firearms for "safekeeping" even when the person who owns the firearms is not charged with any crime passes neither strict nor intermediate level scrutiny.  Defendants have presented no evidence of a likelihood of gun violence in these circumstances.  For the reasons set forth in prior memoranda, Defendants' other policy of requiring such gun owners to go to court to get an order that their firearms be returned also fails to pass constitutional muster.

Defendants' policies and practices violate the Constitutions of the United States and of the State of Rhode Island as well as the state Firearms Act.

## IV.    PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED

Finally, Plaintiff addresses what he acknowledges is the complicated part of this action: whether any of his claims against any present or potential defendants are time-barred.  As an

initial matter, Plaintiff notes that Defendants did not raise a statute of limitations defense in their original answer to Plaintiff's Verified Complaint nor did they ask permission of the Court to add such a defense in their subsequent answers to Plaintiff's amended complaints.  Accordingly, the statute of limitations defense should be deemed waived.  Dunlap v. Aulson Corp., 90 F.R.D. 647 (D.N.H. 1981).

Assuming, *arguendo*, that the Court chooses to address the merits of Defendants' statute of limitations defense, Plaintiff observes that part of the reason why the issue is complicated is that the Town, in its most recent Supplemental Memorandum, disavows responsibility for the criminal or intentionally tortious conduct of its unidentified employees.  (See, Defendants' Supplemental Memorandum, dkt. # 32, pp. 9-10).  This position may require Plaintiff to seek to amend his complaint to add as defendants additional Town employees in their individual capacities.  However, the limitations issue is also complicated because Plaintiff has claims under both federal and state law for both equitable and legal (damages) relief.   Accordingly, Plaintiff will first respond to Defendants' arguments and then will analyze how the law applies to each part of his claims.

Defendants incorrectly assert that Plaintiff's civil rights claims are time-barred based on R.I.Gen.L. § 9-1-25 which sets a three-year statute of limitations on claims against municipalities. (Defendants' Supp. Memorandum, pp. 7-9).[12]  However, this Court ruled over 30 years ago that §9-1-25 does not apply to § 1983 actions against municipalities.  Pearman v. Walker, 512 F.Supp. 228, 234 (D.R.I. 1981) (Pettine, J.).  Rather, as Judge Pettine noted, "Because 42 U.S.C. § 1983 does not contain its own statute of limitations, courts have uniformly

---

[12] Defendants previously argued that Plaintiff's claims are time-barred for other reasons.  (See, Defendants' Response to Plaintiff's Motion for Partial Summary Judgment, dkt. # 18). Defendants' Supplemental Memorandum raises new arguments.

'borrowed' the statute of limitation that would apply to the most analogous state cause of action."  Id. at 230.  In Pearman, plaintiff alleged physical injuries so Judge Pettine applied Rhode Island's three-year statute of limitation for personal injuries.  R.I.Gen.L. § 9-1-14.  The Supreme Court has since held that courts hearing § 1983 cases should borrow the forum state's statute of limitations for personal injury claims.  Wilson v. Garcia, 471 U.S. 261 (1985).

However, even if the correct statute of limitation is applied, Defendants' argument overlooks three important points:  (1) Plaintiff seeks prospective equitable relief in the form of a declaration that Defendants' policies and practices are unconstitutional and violate the Firearms Act and an injunction preventing Defendants from further applying their illegal policies and practices, (2) Plaintiff's claims under the state Firearms Act, especially against individual Town employees, are governed by the ten-year statute of limitations set forth in R.I.Gen.L. § 9-1-13(a), and (3) Defendants' actions with respect to Plaintiff constitute a continuing violation.

Defendants' Supplemental Memorandum fails to address Plaintiff's equitable claims.  Here, Plaintiff lives in a Town which has a policy or practice of seizing firearms from residents without a warrant or other legal justification—for "safekeeping"—and, by their admission, requiring residents to get a court order for the return of those firearms.  Plaintiff has personally experienced this.  Defendants seized his legally-owned firearms from a secure cabinet in his home and held them for over six years, until he filed this lawsuit.  Defendants admit they are still holding the firearms of at least ten other people which they have also seized for "safekeeping."  Clearly, Plaintiff is at risk for another such seizure in the Town and reasonably fears another such seizure.  He brings this lawsuit, in part, to prevent that from happening to him, again, and to

others. Defendants' actions are constitutional and statutory violations that are capable of repetition, yet evade review.[13]

There is no statute of limitations on Plaintiff's equitable claims respecting ongoing policies or practices that violate the federal and state constitutions as well as the Firearms Act. In these circumstances, under federal law, the statute of limitations does not accrue so long as the policies and practices continue.  Lavey v. City of Two Rivers, 994 F.Supp. 1019, 1023 (E.D.Wis. 1995); Chaudhuri v. State of Tennessee, 767 F.Supp. 860, 867 (M.D.Tenn. 1991).   Plaintiff is not aware of any Rhode Island state court decision addressing whether an action seeking to enjoin a continuing violation of law is subject to any statute of limitation.  Plaintiff submits that the Rhode Island Supreme Court would hold that such continuing violations of constitutional and legal rights are not constrained by any statute of limitations.

With respect to Plaintiff's equitable and legal claims under the Firearms Act, Rhode Island law indicates the applicable statute of limitations is § 9-1-13.  Lyons v. Town of Scituate, 554 A.2d 1034, 1036-37 (R.I. 1989) (Shea, J.); Fitzgerald v. O'Connor, 120 R.I. 240, 245, 386 A.2d 1384, 1387 (1978) (Keller, J.) ("Today in this jurisdiction there is but one form of action, a civil action, Super.R.Civ.P. 2, and "all civil actions" now have an applicable statute of limitations.  Section 9-1-13."). In Lyons, plaintiffs sued the Town of Scituate and some of its police officers alleging that they suffered personal injuries when the police officer assaulted and battered them.  The first count of their complaint alleged § 1983 claim for violation of their civil rights.  The second count sought relief pursuant to § 9-1-2.  The Court said that § 9-1-2 is an

---

[13] Plaintiff has standing to bring this action seeking prospective relief for future enforcement of illegal policies and practices.  See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 191 (2000); County of Riverside v. McLaughlin, 500 U.S. 44, 50-51 (1991); City of Houston, Texas v. Hill, 482 U.S. 451, 459 n.7 (1987); Puerto Rico Camper's Ass'n. v. Puerto Rico Aqueduct and Sewer Authority, 219 F.Supp.2d 201, 214 (D.P.R. 2002).

enabling statute that creates a right of action for injuries from a crime where no right existed at common law.  Id. at 1036.  "However, it does not create a distinct cause of action for purposes of determining the appropriate cause of action."  Id. at 1037.  The Court analyzed whether §9-1-13 or § 9-1-14 provided the appropriate limitations period.  It considered the phrase "injuries to the person" as used in the latter statute to mean harm:

> resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property.

Id., quoting Commerce Oil Refining Corp. v. Miner, 98 R.I. 14, 199 A.2d 606 (1964).  The Court concluded the plaintiffs' particular harm, "physical injuries, pain and suffering, lost earning capacity…," all stemmed from the assault and battery, so §9-1-14 was the applicable statute.  In Fitzgerald, the Court held that an equitable action for specific performance was governed by the general statute of limitations.[14]

Here, Plaintiff's claim through § 9-1-2 arises because of Defendants' seizure and retention of his property, i.e., his firearms, in violation of the Firearms Act.  Defendants themselves have argued that these claims are most analogous to conversion.  (Defendants' Supplemental Memorandum, p. 7).  Plaintiff agrees.  See, Fuscellaro v. Industrial National Corp., 117 R.I. 558, 560, 368 A.2d 1227, 1229 (1977).  The Rhode Island limitations period for a conversion claim is ten years.  R.I.Gen.L. § 9-1-13(a); Waters v. Walt Disney World Co., 237 F.Supp.2d 162, 167 (D.R.I. 2002); Fuscellaro, id. at 560, 368 A.2d at 1229.

---

[14] Moreover, to the extent the court held that laches could still apply to an action brought within the limitations period, it also held that "A delay [in bringing the action] is excusable where it is induced or caused by the adverse party, as by acknowledging the justness of the claim and promising to make good thereon."  Id. at 246, 380 A.2d at 1387.  That is exactly what Capt. Lafferty did.  (Exhibit K).

However, given that the Town now argues it is not responsible for the actions of its employees who allegedly committed criminally or intentionally tortious acts, Plaintiff states he may seek to assert damages claims against the other police officers who searched his home and seized his firearms without a warrant and then refused to return those firearms without due process of law.[15]   Accordingly, Plaintiff's claims or prospective claims under the Firearms Act against Chief Reynolds, Capt. Lafferty and the other Town police officers are within the applicable limitations period.

Regarding Plaintiff's damages claims under Section 1983, the Court must separately address which statute of limitation may apply to which Defendants.  Plaintiff's claims against individual defendants, present or prospective, are governed by Rhode Island's "residual" ten-year statute of limitations, R.I.Gen.L. § 9-1-13(a), and not by the three-year statute for claims against municipalities, R.I.Gen.L. § 9-1-25.  No Rhode Island court has addressed whether Section 9-1-25 applies to claims against individual town employees.  However, courts in other jurisdictions have held in analogous cases that different statutes of limitation may apply to claims against municipal employees in their individual capacity than apply against the municipality.  Herrman v. Fossom, 270 N.W.2d 18, 20 (Minn. 1978) (six year statute of limitation for conversion applies to claims against municipal employees even though one year statute applies to claims against municipality); Crowe v. City of Athens, 733 So.2d 447, 450-51 (Ala.App. 1999) (holding that conversion claim against town employee allowed under six-year statute of limitation but claim against town barred by two-year statute of limitation).  Similarly, here, even

---

[15] Those prospective, additional individual defendants would include Capt. Tim Lafferty and Officers Lt. Riccitelli, Ptlm. Amato, Ptlm. Lamoureux, Ptlm. Bergeron, and Ptlm. Landry (collectively, "the Officers").  According to Defendants' Incident Report, Exhibit A to Plaintiff's Second Amended Complaint, Lafferty directed the Officers to seize Plaintiff's firearms, which they did, and then refused to return them despite Plaintiff's numerous requests.

if Plaintiff's claims against the Town under the Firearms Act are barred by § 9-1-25, he has

viable claims against the Town's employees under § 9-1-13.[16]

Further, because Defendants' actions, including their unlawful retention of Plaintiff's

firearms, constitute a continuing violation, the statute of limitation did not begin until Defendants

returned Plaintiff's firearms on May 5, 2015.  Plaintiff previously briefed this argument in

Plaintiff's Reply Respecting His Motion for Partial Summary Judgment (Dkt. # 23).  See also,

Tang v. State of R.I., Dept. of Elderly Affairs, 904 F.Supp. at 60-61 (holding that statute of

limitation did not apply where plaintiff demonstrated that at least one civil rights violation

occurred within the limitations period).  Defendants have not attempted to rebut this argument.

Pursuant to R.I.Gen.Laws §11-47-22(b), Defendants were required to return Plaintiff's

guns to him absent notification "by a justice of the superior court or the attorney general that the

firearm is necessary as evidence in a criminal or civil matter."[17] In this matter, Defendants never

received any notification from any source that Plaintiff's firearms were necessary as evidence in

---

[16] Plaintiff acknowledges that the caption of the present complaint states his claims against Chief Reynolds are in in his official capacity.  However, the First Circuit has adopted the "course of proceedings" approach to determine whether suits are brought against a government employee in his official and/or individual capacity.  Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004).  The factors considered include whether the plaintiff seeks compensatory damages and whether the litigation is in its early stages.  Here, Plaintiff seeks damages and discovery has not commenced. The Court should construe the complaint as bringing both official and individual capacity claims against Reynolds.  Duhani v. Town of Grafton, 52 F.Supp.3d 176, 184 n.5 (D.Mass. 2014).

[17] R.I.G.L. §11-47-22(b) states: When a firearm is lawfully seized, confiscated from or turned in by any person, it shall be placed in the custody of the superintendent of state police or the chief of police in the city or town in which it was seized, confiscated or turned in to. The officer who takes custody of the firearm shall promptly ascertain, using available record keeping systems, including, but not limited to, the National Crime Information Center, whether the firearm has been reported stolen and if stolen shall notify the reporting law enforcement agency of the recovery of said firearm. If the police department in the city or town in which the firearm was seized or confiscated has not been notified by a justice of the superior court or the attorney general that the firearm is necessary as evidence in a criminal or civil matter, it shall be returned to the lawful owner. However, any owner of a firearm who shall knowingly fail to report the loss or theft of the firearm to the proper law enforcement authorities shall not be entitled to its return.

a criminal or civil matter. Therefore, every day without such notification that Defendants did not

return Plaintiff's guns to him they were violating R.I.Gen.Laws §11-47-22. In fact, Defendants

continued to violate this statute until they returned Plaintiff's guns to him on May 5, 2015, after

the filing of this lawsuit, which constitutes a continuing violation tolling the statute of limitations

until May 5, 2015.  Therefore, each day that Defendants wrongfully retained possession of

Plaintiff's firearms was a constitutional violation and an unlawful act under the Firearms Act.

Accordingly, any statute of limitation did not begin to run on Plaintiff's claim until the wrongful

possession ceased which was not until Plaintiff's guns were returned to him after the

commencement of this lawsuit.

Moreover, the Rhode Island Supreme Court has held that the conversion and continued

retention of another person's property can be a continuing offense. Narragansett Electric Co. v.

Carbone, 898 A.2d 87, 100 (R.I. 2006). The Court said:

> The statute of limitations argument presented to the trial justice in defendants'
> post-trial memorandum was that, if the court found that the bypass was installed
> in 1986, the entire action would be time-barred. The trial justice was correct to
> reject this reasoning. The causes of action for conversion and unjust enrichment
> encompassed an ongoing and continuous theft of electricity from 1986 to 2000.
> The accrual of such actions, therefore, was not fixed in time as of the date the
> illegal bypass was installed.

Id. Here, Defendants' seizure and continued retention of Plaintiff's firearms constituted a

continuing violation of his rights until Defendants returned the firearms to him in 2015.

The cases upon which Defendants rely do not support their argument.  In Fuscarella v.

Industrial National Corp., 117 R.I. 558, 368 A.2d 1227 (1977), the defendant banks cashed

checks made payable to plaintiff with forged endorsements.  Plaintiff's alleged that they did not

learn of the cashing until six years later.  They sued the banks for conversion.  The Uniform

Commercial Code provided that a negotiable instrument is converted when it is paid on a forged

endorsement.  R.I.Gen.L. § 6A-3-419(1)(c).  The Court held that under the UCC the cause of

action accrued at the time of the checks were endorsed and deposited and accordingly, it was

time-barred when plaintiff filed suit.   Here, the UCC does not apply to Plaintiff's constitutional

claims or his claim under the Firearms Act.  Additionally, §9-1-25 does not apply to Plaintiff's

claims under the Firearms Act as §9-1-25 applies to "actions or claims in tort" and the Firearms

Act is under Title 11 of the R.I.Gen.Laws which governs "Criminal Offenses."

     In Bartlett v. Fitts, No. PC 00-2002, 2007 WL 1581475 (R.I.Super. May 17, 2007), the

parties were a divorced couple disputing the ownership of stock.  The former wife sued the

former husband making a variety of claims, including conversion.  The ex-husband had listed the

shares of stock in both their names in 1964, after they were married. However, he did not tell her

about the stock.  Their divorce became final in 1975.  In 1978, the ex-wife became aware of the

stock when the ex-husband asked her to sign documents transferring sole ownership of the stock

to him.  The stock paid quarterly dividends that were paid by check to the couple jointly and sent

to the ex-husband's address.  He endorsed the checks with just his name and deposited them in

his account.  The ex-husband paid taxes on the dividends.  The ex-wife did not.  She filed suit in

2002.  The parties held a bench trial before Justice Savage and she issued a decision.

     Justice Savage did not consider the merits of the ex-wife's conversion claim, except to

the extent she discussed them in a footnote.  Id., p. 14-15, n. 13.[18]  She said that if she did

address the merits, she would find the claims "meritorious and not time-barred."  Id.  Justice

Savage said that the conversion consisted of the ex-husband depositing the dividend checks in

his own account.  Id.  "[W]hen a series of dividend checks are cashed as part of an ongoing

---

[18] Unlike other decisions on Westlaw, this decision does not have any "*" in it to mark different
pages of the opinion.  Accordingly, Plaintiff will identify the pages as they printed out for his
counsel.

scheme or plan, the plan constitutes a single transaction for purposes of the commencement of the statute of limitation, and the date on which the last check was deposited governs as the date for all checks in determining when the statute of limitation begins to run." Id.

Accordingly, Plaintiff's claims for equitable relief are not time-barred. His damages claims pursuant to § 9-1-2 and the Firearms Act, especially against Town employees, are not time-barred because the ten-year limitations period of § 9-1-13 governs them. His damages claims pursuant to § 1983 are also not time-barred because they are based on continuing violations.

CONCLUSION

The Court should grant Plaintiff Jason Richer's Motion for Partial Summary Judgment, including all claims set forth in his Second Amended Verified Complaint. Further, to the extent the Court determines the current complaint does not permit it to grant complete relief to Plaintiff, the Court should permit Plaintiff to amend the complaint.

Respectfully submitted,
**JASON RICHER**
By his attorneys,

/s/ Thomas W. Lyons
Thomas W. Lyons          #2946
Rhiannon S. Huffman     #8642
RHODE ISLAND AFFILIATE,
AMERICAN CIVIL LIBERTIES UNION
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

## <u>CERTIFICATION</u>

I hereby certify that on February 17, 2016 a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system and served by email on Marc DeSisto, Esq. and Patrick Cunningham, attorneys for defendants. Parties may access this filing through the Court's CM/ECF system.

/s/ Thomas W. Lyons