UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JASON A. RICHER, )
         Plaintiff, )
 )
v. )     C. A. No. 15-162-M-PAS
 )
JASON PARMELEE as the Finance )
Director of the Town of North )
Smithfield, TOWN OF NORTH )
SMITHFIELD, and STEVEN E. )
REYNOLDS in his official capacity as )
Chief of the North Smithfield Police )
Department, )
         Defendants. )
 )

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

The North Smithfield police confiscated three guns from Jason A. Richer after he allegedly threatened to commit suicide during a domestic dispute with his wife. The police retained his guns for six and a half years, refusing to return them absent a court order. The Court finds that this conduct violated Mr. Richer's constitutionally protected procedural due process rights.

I.    PROCEDURE

The case is before the Court on Mr. Richer's Motion for Partial Summary Judgment against the Town of North Smithfield and Steven E. Reynolds in his official capacity as Chief of the North Smithfield Police Department.[1] ECF No. 12.

_____

[1] Because Mr. Richer sued Chief Reynolds in his official capacity only, "the suit . . . is for all practical purposes solely against the Municipality." *Andino-*

Mr. Richer's First Amended Complaint against the Defendants alleged violations of procedural due process; the right to bear arms; and the right to equal protection of the laws; all under the federal and state constitutions.[2]  ECF No. 4.  Mr. Richer also alleged a violation of the Rhode Island Firearms Act.  *Id.*  He moved for summary judgment on all of the counts, except the claim alleging violation of the equal protection of the laws.  ECF No. 12-1 at 10.  Several months after moving for summary judgment, Mr. Richer amended his complaint for a second time, to allege a violation of the right to be free from unreasonable searches and seizures under the federal and state constitutions.  ECF No. 33.  He asks the Court to consider summary judgment on this count as well, arguing that the issue had been fully briefed as part of the parties' procedural due process discussion.  ECF No. 34 at 2.  The Court accedes to doing so in light of the parties' extensive briefing of the issue.

The parties submitted four briefs each in support of their positions.  (ECF Nos. 12-1, 23, 27, and 34 for Mr. Richer and ECF Nos. 18, 26, 32, and 37 for the Town).  Mr. Richer also submitted a Statement of Undisputed Facts (ECF No. 16) and the Town responded with a Statement of Disputed Facts (ECF No. 19) and Undisputed Facts (ECF No. 20).  After reviewing all of the parties' briefs, the

---

*Pastrana v. Municipio De San Juan,* 215 F.3d 179, 180 (1st Cir. 2000).  Therefore, this Order does not distinguish between the Defendants, and refers to them collectively as the Town.  Mr. Richer did not include Mr. Parmelee, the Town's Finance Director, in his summary judgment motion, and this Order does not directly address any claims against him.

[2] Mr. Richer does not argue that his rights are different as between the federal and state constitutions, and the Court has found no analytical difference between them.  The Court therefore does not analyze the two separately in this Order.

submitted evidence, and the relevant substantive and procedural law, Mr. Richer's Motion for Partial Summary Judgment (ECF No. 12) is GRANTED in part and DENIED in part.

## II.   STATEMENT OF UNDISPUTED FACTS

In September 2008, Mr. Richer and his then-wife were having domestic difficulties that required two visits by the North Smithfield Police in a span of ten days.[3] ECF No. 20 at 1-2. The first visit by the Town police occurred when Mr. Richer called them in the midst of an argument and informed them that the couple was getting divorced and that he believed his wife was having an affair. *Id.* The second time, Mr. Richer's wife called the police to report that Mr. Richer was threatening to kill himself. *Id.* When the police and the paramedics arrived following this second call, Ms. Richer told them that she had asked for a divorce on more than one occasion, and that Mr. Richer begged her not to go through with it. *Id.* She told them that Mr. Richer looked at the couple's six-year old son and told him "I'm going to bed and I won['']t get up." *Id.* Mr. Richer then appeared to ingest some pills. *Id.* The couple's son confirmed the story to the police. *Id.*

Mr. Richer was taken to a hospital for a mental health evaluation. ECF No. 19 at 3. While still at the residence, the police learned that Mr. Richer had three guns located in his home workshop. ECF No. 12 at 4. Officers followed his wife into another room where they seized a 22-caliber rifle, a 12-gauge shotgun, and a 50-

---

[3] Mr. Richer was not under guardianship, treatment, or confinement by virtue of being a mental incompetent. He is not a felon, a fugitive from justice, a drug addict, or a habitual drunkard.

caliber black powder rifle. *Id.* The police researched all of the seized firearms through the National Crime Information Center and none returned positive for criminal activity. ECF No. 19 at 4. The police removed the guns from the premises, and transported them to headquarters for the safety and protection of the public, Mr. Richer, and his family. *Id.*

The hospital discharged Mr. Richer that same day, and asked him to follow up two days later. *Id.* at 3. Although the police never charged Mr. Richer with any crime, he would not be reunited with his guns until six and a half years after this September 28, 2008 incident. *Id.* at 4, 9.

About three weeks after the incident, Mr. Richer went to the North Smithfield police station to retrieve his guns. *Id.* at 4. He reports that the police told him that he would need to obtain a court order to regain them. *Id.* Mr. Richer waited more than a year, and again requested the return of his guns, this time in writing. In his request, he included letters from his wife and his psychologist attesting to his well-being. *Id.* at 6. He did not receive a response from the Town. *Id.*

Three and a half years later, on July 24, 2013, Mr. Richer returned to the North Smithfield police station and again requested the return of his property from Police Captain Tim Lafferty. *Id.* at 6. Captain Lafferty refused, citing concern over the police department's potential liability if the department returned the guns and someone used them for something improper. ECF No. 33 at 6 ¶ 30 and No. 38 at 2 ¶ 5. Mr. Richer continued to communicate with Captain Lafferty by phone and email

on at least three more occasions in 2013 and once in 2015, all to no avail.  ECF No.

19 at 7.  On March 20, 2015, the American Civil Liberties Union of Rhode Island

(ACLU) sent a letter to Chief Steven E. Reynolds asking that the police return Mr.

Richer's guns.  ECF No. 19 at 8.  The ACLU received no response.  *Id.*

Mr. Richer filed this suit for injunctive and declaratory relief, return of the

weapons, and damages.  ECF No. 1.  On May 1, 2015, he moved for a preliminary

injunction requesting the return of his firearms.  ECF No. 8.  On May 5, 2015,

before the Court heard the preliminary injunction, but six and a half years after the

police seized his property, the police returned Mr. Richer's guns to him.  ECF No. 19

at 9.  In the interim, the Town did not offer Mr. Richer any opportunity — short of

obtaining a state court order — to contest the confiscation or retention of his

property.  ECF No. 16 at 12.

III.   STANDARD OF REVIEW

Summary judgment is warranted when "the pleadings [and discovery],

together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c).

IV.   ANALYSIS

Mr. Richer seeks relief under the R.I. Firearms Act, the Second, Fourth, and

Fourteenth Amendments to the U.S. Constitution, and article 1, sections 2, 6, and

22 of the R.I. Constitution.

A.  *Fourteenth Amendment Procedural Due Process*

5

The Fourteenth Amendment to the United States Constitution forbids the Town from depriving "any person of life, liberty, or property, without due process of law." This constitutional right is actionable against state and municipal officials through 42 U.S.C. § 1983. Mr. Richer claims that when the Town seized his guns from his house, and refused to return them without giving him an opportunity to contest the seizure and retention, the Town deprived him of his property without due process of law. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("property [ ] cannot be deprived except pursuant to constitutionally adequate procedures"). "In evaluating a procedural due process claim under the Fourteenth Amendment, we must determine 'whether [the plaintiff] was deprived of a protected interest, and, if so, what process was his due.'" *Garcia-Gonzalez v. Piug-Morales*, 761 F.3d 81, 88 (1st Cir. 2014) (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

The Town deprived Mr. Richer of his property for six and a half years, which qualifies as a constitutional deprivation.[4] *See Fuentes v. Shevin*, 407 U.S. 67, 85 (1972) ("a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." (citing *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969) and *Bell v. Burson*, 402 U.S. 535 (1971))). The crux of the issue before the Court is what process Mr. Richer was due under the U.S. and Rhode Island Constitutions to contest this deprivation.

---

[4] Both parties agree that Mr. Richer had a property interest in his three guns. ECF No. 26 at 7.

Due process is not a fixed set of procedures, but "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).   The Town argues that Mr. Richer was afforded adequate procedures in this case, because he could have requested the return of his property by "fil[ing] a [case in state court and a] motion to restore property pursuant to [R.I. Gen. Laws] § 12-5-7," whereupon the state would have had the burden of disproving his entitlement to the property.   ECF No. 26 at 6-7.   *See Parratt v. Taylor*, 451 U.S. 527, 554 (1981) (holding that access to state court is sufficient procedure when prisoner was deprived of a $23 package).   Mr. Richer disagrees that access to a court action met the minimum required by the Constitution.   ECF No. 12-1 at 16-17; ECF No. 23 at 15-22.

The procedural protections due to an individual facing a constitutional deprivation are determined by considering three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The private interest here is in the "use and possession of property." *Fuentes*, 407 U.S. at 81.   Although coming after "life" and "liberty" in the Fourteenth Amendment trilogy, the explicit inclusion of the word "property" in that text "reflects the high value, embedded in our constitutional and political history, that

we place on a person's right to enjoy what is his, free of government interference."
*Id.* In *Fuentes*, the U.S. Supreme Court ruled unconstitutional state statutory
schemes that permitted private parties to obtain writs of replevin for property,
enforceable by state agents, simply by filing some paperwork and posting a bond.
*Id.* at 69-70. The Supreme Court held that absent extenuating circumstances, due
process requires a baseline of notice and an opportunity to be heard when chattels
are to be confiscated. *Id.* at 96.

Turning next to the risk of erroneous deprivation, the Court evaluates the
procedures afforded to Mr. Richer. The Town argues that requiring Mr. Richer to
file a state court action pursuant to R.I. Gen. Laws § 12-5-7 ("Disposition of Seized
Property")[5] to recover his property presents a low risk of erroneous deprivation and
satisfies the constitutional floor. Under similar circumstances, another district
court disagreed, holding that when a lawsuit is the only remedy to contest a
property deprivation, the resulting burden on the person deprived creates an
inappropriately high risk of error:

---

[5] R.I. Gen. Laws § 12-5-7: "Disposition of seized property: (a) The property
seized shall be safely kept by the officer seizing it, under the direction of the court,
so long as may be necessary for the purpose of being used as evidence in any case.
(b) As soon as may be thereafter, if the property is subject to forfeiture, further
proceedings shall be had on the property for forfeiture as is prescribed by law in
chapter 21 of this title. (c) If the property seized was stolen or otherwise unlawfully
taken from the owner, or is not found to have been unlawfully used or intended for
unlawful use, or is found to have been unlawfully used without the knowledge of the
owner, it shall be returned to the person legally entitled to its possession."
This statutory provision has no application to Mr. Richer's situation because
it deals with property seized pursuant to a search warrant. Under this statute,
court involvement by way of issuing a warrant is assumed, which is not true in Mr.
Richer's case.

> [T]he concern over erroneous deprivation . . . is primarily temporal . . .
> . [A] state case resolving the ownership of confiscated [guns] is likely
> to take a substantial amount of time. Further, placing the burden of
> going forward on the person whose property was taken is even more
> onerous, as it requires that such person give up not only time, but also
> money to initiate a lawsuit and retain an attorney.

*Razzano v. Cty. of Nassau*, 765 F. Supp. 2d 176, 188 (E.D.N.Y. 2011). Bringing a

state court action would have cost Mr. Richer a $104.02 filing fee and approximately

$45 per defendant to effect service. ECF No. 12-1 at 17 n. 4. If he were unable to

navigate this process on his own, he would also have needed to hire a lawyer. These

are not hypothetical barriers. In his own case, Mr. Richer did not sue until he got in

touch with the ACLU over six years after the police seized his property. That is

simply too long of a wait to determine whether the seizure and retention of his

property was lawful. Appropriate procedures initiated or noticed by the Town

would have eliminated the risk of such a lengthy deprivation without Mr. Richer

having a meaningful opportunity to contest it.

The last factor to consider is the Town's interest. In this case, the Town's

interest in public safety is extremely weighty at the time of the initial seizure.

When the Town's police officers are summoned by a member of a household to

diffuse a domestic dispute involving alleged suicidality, the Town has a critical

interest in empowering its police officers to remove objects "dangerous in

themselves," including lethal firearms, from the premises. *See Coolidge v. New*

*Hampshire*, 403 U.S. 443, 470 (1971). After the dangerous objects are removed, the

Town's interest in retaining the confiscated property without offering its owner an

opportunity to contest the retention is much harder to articulate. As the *Razzano*

court observed, "once a person whose [guns] are taken has the opportunity to legally obtain and possess new [guns], the retention of that individual's old [guns] does not greatly protect the public from potential harm." 765 F. Supp. 2d at 189.[6]   In this case, the Town does not dispute that Mr. Richer was free to obtain new firearms after the initial seizure.  ECF No. 19 at 5 ¶ 16.

Although the Town does not articulate this interest in its own briefing, Mr. Richer reports that the Town was reluctant to return his guns "due to the liability on the police department if [Mr. Richer] were to hurt himself or someone else upon return of the weapons." *Id.* at 6-7 ¶ 21; ECF No. 33 at 6 ¶ 30 and No. 38 at 2 ¶ 5. This concern would be most appropriately addressed by a clear procedure adopted by the Town about how to review and resolve the seizure and retention of guns.  It does not justify the deprivation of Mr. Richer's procedural due process rights.  Any additional administrative and fiscal burdens borne by the Town in providing some sort of post-deprivation procedure to persons in Mr. Richer's position would likely be less burdensome than if the Town were forced to defend lawsuits under R.I. Gen. Laws § 12-5-7 in every such situation.  The Town's avoidance in doing so only comes at the expense of individual procedural rights.  Furthermore, "[f]inancial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard . . . ." *Mathews*, 424 U.S. at 348.

---

[6] This reasoning only applies to situations such as Mr. Richer's, and not to firearms seized because they are "(1) the fruit of a crime, (2) an instrument of a crime, (3) evidence of a crime, (4) contraband, or (5) barred by a court order from being possessed by the person from whom they were confiscated." *Razzano*, 765 F. Supp. 2d at 190 (E.D.N.Y. 2011).

Finally, the Town attempts to evade responsibility for their lack of procedures in two ways.[7] First, it asserts that Mr. Richer has failed to establish an unconstitutional policy, which immunizes the Town under *Wilson v. City of Boston*, 421 F.3d 45 (1st Cir. 2005). It also suggests that a random, unauthorized act of a Town employee caused the deprivation. ECF No. 18 at 13-16. Both arguments are untenable. In its own briefs, the Town argues that its police officers acted properly and within their authority when they confiscated Mr. Richer's guns. *Id.* at 12. The Town also admits that the only procedure available to a person in Mr. Richer's position was to obtain an order in state court. ECF No. 26 at 6-7. Mr. Richer can bring a claim against the Town on these facts.

Upon balancing the individual's property interest, the Town's interests, the risk of erroneous deprivation in maintaining the current procedures, and the probable value of additional procedures, the Court concludes that the Town's policy or practice violated Mr. Richer's procedural due process rights. Access to a state court action pursuant to R.I. Gen. Laws § 12-5-7 is insufficient to ensure Mr. Richer

---

[7] The Town also argues that Mr. Richer's claim under the 14th Amendment is time-barred. That is not so. Mr. Richer attempted to retrieve his firearms on several occasions in 2013 and 2015, and suffered from a lack of procedures for doing so at each turn. *See Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (noting that violation is measured from time when process is denied, not when deprivation occurs). Every time Mr. Richer contacted the police about his seized property, the police refused to hear him on the substantive issue or offer him any process short of going to court. Because the last time this occurred was in 2015, Mr. Richer's claim is well within the three-year statute of limitations available under 42 U.S.C. § 1983. *See Wilson v. Garcia*, 471 U.S. 261, 279 (1985) ("The characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983."); R.I. Gen. Laws § 9-1-14(b) (setting a three-year statute of limitations for personal injury actions).

an adequate opportunity to challenge the Town's confiscation and retention of his property under these circumstances. The Court concludes that some post-deprivation procedures, noticed by the Town, are necessary to meet the standards of due process.[8]

The precise nature and form of such constitutionally required post-deprivation procedures "are legitimately open to many potential variations and are a subject, at this point, for legislation — not adjudication." *Fuentes*, 407 U.S. at 96-97. Mr. Richer has already been reunited with his property, so the Court need not prescribe specific procedures in order to resolve his claim. Because the Town has failed to show the existence of a genuine issue as to any material fact concerning its policy and practices in Mr. Richer's situation, the Court concludes that Mr. Richer was entitled to more process than he was afforded, and therefore enters summary

---

[8] The Court has dealt only with post-deprivation requirements here because the Court is skeptical that a pre-deprivation hearing would be required in Mr. Richer's situation. Where a seizure is necessary to secure an important government interest, there is a special need for prompt action, and the government official executing the seizure has sufficient information to determine if it is justified, notice and an opportunity for a hearing may sometimes be postponed until after the seizure. *See Fuentes*, 407 U.S. at 90-91. Mr. Richer's situation meets these requirements, and presents exigent circumstances that would have made a pre-deprivation hearing practically inconceivable. *See San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 487 (1st Cir. 2012); *Zinermon v. Burch*, 494 U.S. 113, 132 (1990); *Hudson v. Palmer*, 468 U.S. 517, 522 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). *See also Razzano v. Cty. of Nassau*, 765 F. Supp. 2d 176, 186 (E.D.N.Y. 2011) (concluding that due process does not require a pre-deprivation hearing under analogous circumstances). In such circumstances, prompt post-deprivation procedures that provide individuals a meaningful opportunity to be heard satisfy procedural due process requirements. *See S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82, 85 (1st Cir. 2014).

judgment in his favor on his claim for a violation of the 14th Amendment's procedural due process guarantees.

B. *Second Amendment*

Mr. Richer next argues that he "has been denied his absolute constitutional right to keep arms for the purpose of self-defense . . . as his weapons were taken from his home and have yet to be returned." ECF No. 12-1 at 22.[9] Mr. Richer's right to keep arms is not "absolute." *See D.C. v. Heller*, 554 U.S. 570, 626 (2008) ("Like most rights, the right secured by the Second Amendment is not unlimited."); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 802 (2010) ("No fundamental right — not even the First Amendment — is absolute.")

More to the point, it is dubious whether Mr. Richer's Second Amendment rights are at all implicated in this case. *See Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571-72 (7th Cir.), *cert. denied sub nom. Sutterfield v. City of Milwaukee, Wis.*, 135 S. Ct. 478, 190 L. Ed. 2d 362 (2014) (expressing doubt whether the Second Amendment protects an individual's right to possess a *particular* gun); *accord Walters v. Wolf*, 660 F.3d 307, 317-18 (8th Cir.2011). It is undisputed that Mr. Richer could have obtained other firearms at any point during the preceding six and a half years. ECF No. 19 at 5 ¶ 16 and No. 18 at 5 n. 3. What prevents the Town from confiscating those hypothetical new guns, and what makes the Town's conduct allegedly objectionable in this case, is Mr. Richer's Fourth and Fourteenth

---

[9] The Court notes at the outset that Mr. Richer had been reunited with his weapons for two months at the time he made this statement in his summary judgment filing.

Amendment rights to be secure in his home and possessions, not the Second Amendment. Mr. Richer's claim invokes rights protected entirely by the Fourth and Fourteenth Amendments. The Court concludes that the Town has not violated Mr. Richer's Second Amendment rights, which remain intact. Therefore, Mr. Richer is not entitled to summary judgment under the Second Amendment as a matter of law.

### C. *Fourth Amendment — Seizure*

Mr. Richer also asserts violations of the Fourth Amendment[10] based on the Town's conduct during the September 28, 2008 incident. This claim is time-barred. Mr. Richer clearly knew of his injuries when the police entered his house and seized his guns, more than six years before he filed suit. The statute of limitation for bringing a claim alleging a Fourth Amendment violation pursuant to § 1983 is subject to Rhode Island's personal injury statute of limitations — which is only three years.[11] *See Wilson v. Garcia*, 471 U.S. 261 (1985); R.I. Gen. Laws § 9-1-14(b). The Court finds that a violation of the Fourth Amendment, if any occurred, would have taken place on September 28, 2008, and is therefore time-barred by the

---

[10] Fourth Amendment rights were incorporated against the states through the Fourteenth Amendment by the U.S. Supreme Court's decision in *Mapp v. Ohio*, 367 U.S. 643 (1961).

[11] Claims brought under § 1983 that were made possible by a post-1990 Congressional Act are subject to a four-year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). This longer limitation does not affect Mr. Richer's situation.

applicable statute of limitations.[12]   *See Adams v. Town of Burrillville ex rel. Mainville*, 249 F. Supp. 2d 151, 154 (D.R.I. 2003) (denying summary judgment in a § 1983 action for conduct occurring three and a half years before plaintiff filed suit). Mr. Richer is not entitled to summary judgment on this claim.[13]

D. *Rhode Island Firearms Act*

Mr. Richer also moved for summary judgement on his claim that the Town violated R.I. Gen. Laws § 11-47-22(b).  The problem for Mr. Richer is that this statute only contemplates injunctive relief, and not damages.  Because Mr. Richer's guns are already back in his possession, this statute is no longer of any help to him.[14]   R.I. Gen. Laws § 11-47-22(b) states, in relevant part: "If the police department in the city or town in which the firearm was seized or confiscated has not been notified by a justice of the superior court or the attorney general that the firearm is necessary as evidence in a criminal or civil matter, *it shall be returned to the lawful owner*." *Id.* (emphasis added).

This law ensures:

---

[12] Insofar as Mr. Richer has a right to sue the Town for an analogous state constitutional violation, he is also limited by a three-year statute of limitations.  R.I. Gen. Laws § 9-1-25.

[13] Even if this claim were timely, Mr. Richer would not be entitled to summary judgment for two reasons.  First, there exists a dispute of material fact about whether his then-wife consented to the seizure of the guns.  ECF No. 32 at 11 n. 1.  Second, the police's actions were likely a valid exercise of their community caretaking functions.  *See Matalon v. Hynnes*, 806 F.3d 627, 633-36 (1st Cir. 2015) (discussing the community caretaking functions doctrine).

[14] The Town argues that the Rhode Island Firearms Act does not provide for a private right of action against a municipality, while Mr. Richer argues that R.I. Gen. Laws § 9-1-2 does so.  The Court need not reach this issue in light of its ruling about the limited relief contemplated by § 11-47-22(b), which Mr. Richer cannot circumvent by recasting his claim as arising under § 9-1-2.

> that any firearm which is found to be the property of an innocent
> owner shall be returned to such owner if an[d] when no longer needed
> for evidentiary purposes. The . . . Police should be able to implement
> crime preventive policies such as retaining weapons legally seized until
> circumstances demonstrate that a return of the weapons would no
> longer threaten public safety.

*Galipeau v. State*, No. 77-574, 1981 WL 390927, at *3 (R.I. Super. Mar. 12, 1981)

(Shea, J.).

In *Galipeau*, the police had seized the plaintiff's weapons while she was out of

state, in response to a report that her babysitter had assaulted one of her children.

*Id.* at 1*. The plaintiff's weapons were retained for about seven years pursuant to

departmental policy intended to insulate the department "from claims of negligence

in releasing weapons to persons who may harm others." *Id.* Justice Donald F.

Shea, then of the R.I. Superior Court, dismissed the plaintiff's damages claim, and

ordered that she is only "entitled to possession of her property seized by the State

Police." *Id.* at *3.

Similarly, with regard to Mr. Richer's claim under this statute, if the Town

were continuing to retain his property, he may be entitled to summary judgment,

but because his weapons have already been returned, he no longer has a claim for

violation of R.I. Gen. Laws § 11-47-22(b). Summary judgment in his favor is not

appropriate under the Rhode Island Firearms Act.

## V.    CONCLUSION

In these circumstances, the Town cannot deprive an individual of personal

property without adequate post-deprivation procedures. The failure to provide

these procedures violated Mr. Richer's constitutional rights. For the reasons stated

above, Mr. Richer's Motion for Partial Summary Judgment (ECF No. 12) is GRANTED on Count IV (Fourteenth Amendment Procedural Due Process), but DENIED on Counts I (Rhode Island Firearms Act), Count II (Second Amendment), and Count III (Fourth Amendment), and the state constitutional analogues.[15]

IT IS SO ORDERED:

_____

John J. McConnell, Jr.
United States District Judge

June 1, 2016

---

[15] Mr. Richer's request for declaratory judgment and injunctive relief is denied as moot, because his weapons have been returned.  He does not have standing to sue for these remedies "[a]bsent a sufficient likelihood that he will again be wronged in a similar way," which he has not demonstrated.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

The issue of damages awaits a jury determination.  Because the Town has not cross-filed for summary judgment on Counts I, II, and III, and neither party filed for summary judgment on Count V (equal protection), these issues also await trial or other pre-trial motions.