UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JASON A. RICHER,<br>    Plaintiff<br><br>v.<br>JASON PARMELEE as the Finance Director of<br>THE TOWN OF NORTH SMITHFIELD, TOWN OF<br>NORTH SMITHFIELD, and STEVEN E. REYNOLDS,<br>individually and in his Official Capacity as Chief of the<br>NORTH SMITHFIELD POLICE DEPARTMENT, TIM<br>LAFFERTY, Individually and in his Official Capacity as<br>Captain of the North Smithfield Police Department, and<br>OFFICERS STEPHEN RICCITELLI, RUSSELL<br>AMATO, GLENN LAMOUREUX, MARK BERGERON,<br>and GREGORY LANDRY, Individually and in their<br>Official Capacities as Members of The North Smithfield<br>Police Department, John and Jane Doe<br>    Defendants | C.A. No. 15-162 |

**THIRD AMENDED VERIFIED COMPLAINT FOR VIOLATION OF
CONSTITUTIONAL RIGHTS SEEKING DAMAGES, INJUNCTIVE AND
DECLARATORY RELIEF**

**PARTIES**

1. Plaintiff Jason A. Richer is a natural person and citizen of the United States and of the State of Rhode Island, residing in North Smithfield, Rhode Island. He is a disabled Air Force veteran who received an honorable discharge in August of 1986. He is the father of three sons. Plaintiff is not a felon nor is he under guardianship or treatment or confinement by virtue of being a mental incompetent, or who has been adjudicated or is under treatment or confinement as a drug addict.

2. Defendant Town of North Smithfield ("the Town") is a town chartered by the State of Rhode Island. Defendant Steven E. Reynolds is the Chief of the North Smithfield Police Department. As such, he is responsible for formulating, executing and administering with the Town the laws, customs, practices, and policies at issue in this lawsuit. Through its

1

Police Department, the Town has enforced the challenged laws, customs and practices against Plaintiff.

3. Defendant Jason Parmelee is the Finance Director of the Town of North Smithfield. As such, he is responsible for directing and coordinating the operations of the various divisions of the Finance Department and serves as Treasurer/Collector for the Town of North Smithfield.

4. Defendant Tim Lafferty is a Captain of the North Smithfield Police Department, whose actions in this matter are set forth below in Paragraphs 37 through 46.  He is sued individually and in his official capacities as a member of the North Smithfield Police Department.

5. Detective Stephen Riccitelli is a member of the North Smithfield Police Department whose actions in this matter are set forth below in Paragraphs 18 through 32.  He is sued individually and in his official capacities as a member of the North Smithfield Police Department.

6. Officer Russell Amato is or was a member of the North Smithfield Police Department whose actions in this matter are set forth below in Paragraphs 18 through 32.  He is sued individually and in his official capacities as a member of the North Smithfield Police Department.

7. Captain Glenn Lamoureux is a member of the North Smithfield Police Department whose actions in this matter are set forth below in Paragraphs 18 through 32.  He is sued individually and in his official capacities as a member of the North Smithfield Police Department.

8. Sergeant Mark Bergeron is a member of the North Smithfield Police Department whose actions in this matter are set forth below in Paragraphs 18 through 32. He is sued individually and in his official capacities as a member of the North Smithfield Police Department.

9. Lieutenant Gregory Landry is a member of the North Smithfield Police Department whose actions in this matter are set forth below in Paragraphs 18 through 32.  He is sued individually and in his official capacities as a member of the North Smithfield Police Department.

10. John and Jane Doe are other members of the North Smithfield Police Department who participated in violating Mr. Richer's constitutional rights whose identities are presently unknown.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this case involves a federal question pertaining to the United States Constitution. The Court has pendant jurisdiction over Plaintiff's claims arising under state law.

12. Venue lies in this Court pursuant to 28 U.S.C. § 1391 as this is the judicial district where defendants reside and this is the judicial district where the cause of action arose.

## STATEMENT OF FACTS

*Background*

13. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

14. The Second Amendment is incorporated as against the states through the Fourteenth Amendment, such that Defendant cannot, under color of law, deprive Plaintiff of his right to keep and bear arms.

15. Article 1, Section 22 of the Rhode Island Constitution provides: "The right of the people to keep and bear arms shall not be infringed."

16. Plaintiff legally obtained and possessed three guns, a Remington 1100 shotgun which was purchased in 1979 from Edgar's Sporting Goods located in Woonsocket RI, a Thompson Center .50 caliber black powder muzzleloader which was purchased in 1993 from Bullseye Shooting Supplies located in Woonsocket RI, and a .22 caliber bolt action rifle obtained in 1982 which previously belonged to his deceased father who died in 1974. He has completed a hunter safety course and received weapons training while in the military and gained the classification of marksman. He is well trained in gun safety and maintenance.

17. On or about September 28, 2008, Plaintiff and his now-former wife Tracy Richer had an argument about Ms. Richer wanting a divorce.

18. North Smithfield police officers and North Smithfield Rescue paramedics went to Plaintiff's residence at 7 Mattity Road, North Smithfield, RI in response to a call from Ms. Richer, who said she was concerned Plaintiff had tried to harm himself.

19. The officers informed Plaintiff they were there to check on his well-being.

20. Plaintiff informed the officers that he was not suicidal and his wife had misconstrued his earlier actions and conversation.

21. The paramedics at the scene examined Plaintiff and told the North Smithfield police that Plaintiff was not suicidal.

22. On information and belief, Defendants made no attempt to obtain a certification from the Rhode Island state district court or from a physician that Plaintiff was in need of care and treatment in a mental health facility and that his continued presence in the community would create a likelihood of serious harm by reason of mental disability, pursuant to the Rhode Island Mental Health Law, R.I.Gen.L. § 40.1-5-1, et seq. (the "Mental Health Law").

23. On information and belief, Defendants did not attempt to certify to any mental health "facility," as defined by the Mental Health Law, that Plaintiff was a person "in need of immediate care and treatment", and "one whose continued presence in the community would create an imminent likelihood of serious harm by reason of mental disability."

24. Nonetheless, the North Smithfield police insisted that Plaintiff submit to a mental health evaluation and he was transported to Landmark Medical Center in Woonsocket, Rhode Island for evaluation. The doctor at the hospital who examined him discharged him within a few minutes of arrival without further evaluation.

25. While Plaintiff was at the hospital, the police officers removed from Plaintiff's garage/workshop the three guns which had been secured in a locked room, within a locked case and transported them to headquarters for "safe keeping."

26. On or about November 24, 2008, Plaintiff obtained from the North Smithfield Police Department ("NSPD") a copy of its "Incident Report" with respect to the September 28, 2008 incident. A true and accurate copy of the Incident Report that was given to him by the NSPD is attached as Exhibit A.

27. The Incident Report states, in part:

"On the reported date and time, Lt. Riccitelli, Ptlm. Amato, Ptlm. Lamoureux, Ptlm. Bergeron and I ["Patrol Gregory Landry"] were dispatched to 7 Mattity Road for a report of as suicidal male by means of pills.  Upon arrival, I met with the caller Tracy Richer while Ptlm Bergeron met with Jason Richer.  Tracy stated that she and her husband Jason Richer, had engaged in a verbal argument about her wanting a divorce from Jason…NS Rescue responded to the scene to transport Jason to LMC [Landmark Medical Center] for evaluation.  While on scene, Officers learned that Jason had three guns located upstairs in his workshop.  Officers then followed Tracy into the workshop where a 22 caliber rifle, a 12 gauge Remington shotgun and a Thompson Center 50 caliber black powder rifle were seized and held for safekeeping at NSPD."

28. The NSPD did not seize any of Plaintiff's medications as a result of the September 28, 2008 incident.

29. On information and belief, the NSPD took no steps to prevent Plaintiff from obtaining any firearms after the September 28, 2008 incident.

30. On information and belief, the NSPD researched all of the firearms seized through the National Crime Information Center (NCIC) and with all being found negative for any criminal activity.

31. On information and belief, Defendants' officers logged all of the items seized and then forwarded them to its Bureau of Criminal Investigation (BCI) Division for "safe keeping."

32. Plaintiff was not charged with any crime nor has he ever been charged with any crime.

33. On information and belief, the NSPD has never been notified by a justice of the superior court or the attorney general that the firearm is necessary as evidence in a criminal or civil matter.

34. On or about November 21, 2008, Plaintiff went to the NSPD to retrieve his guns. The police refused to return them to Plaintiff insisting that he hire a lawyer and obtain a court order for the return of his firearms. The police officer Plaintiff spoke to informed him that he would have to prove that he is fit to have his weapons returned. He was told by the police officer that they did not care about his civil rights.

35. On or about November 24, 2008, Plaintiff's psychologist, John Murphy, Psy.D., wrote a letter to the NSPD attesting that Plaintiff was not a danger to himself nor others and that there is no reason why returning his guns to him would pose a risk. A true and accurate copy of the letter is attached as Exhibit B.

36. On or about November 25, 2008, Ms. Richer, wrote a letter to the NSPD detailing the misunderstanding which led to the confiscation of Plaintiff's firearms and attesting that the telephone call that she had placed to the police department on September 28, 2008, had been a "false alarm," that the incident was unfortunate incident, that it is not necessary for the police to continue to hold the firearms, that she does not believe Plaintiff to be a danger to himself or to others, and that she was comfortable with his being in possession of his firearms at their home. A true and accurate copy of the letter is attached as Exhibit C.

37. On or about December 16, 2009, Plaintiff delivered a letter to the NSPD requesting the release of his firearms and enclosed the above-mentioned letters attached as Exhibits B and C. Plaintiff's letter detailed that he was not charged with a crime, there have been no

related incidents, requested a date and time to retrieve his firearms, and requesting a response in writing within thirty days if they did not agree to release his firearms. A true and accurate copy of the letter is attached as Exhibit D.

38. Plaintiff did not receive any response from the NSPD to the letter attached as Exhibit D.

39. On or about July 24, 2013, Plaintiff returned to the NSPD and presented to the Executive Officer Captain Tim Lafferty the letters attached as Exhibits B and C and detailed the facts listed above to which Capt. Lafferty responded that Plaintiff's firearms were still being held for "public safety." Mr. Richer presented Capt. Lafferty with a newspaper clipping regarding "Robert Machado v. City of Cranston", et al. (C.A. 12-445S) to which Capt. Lafferty responded that Plaintiff's guns could not be returned due to the liability on the police department if Plaintiff were to hurt himself or someone else upon return of the weapons.  A true and accurate copy of the Providence Journal newspaper article respecting "Machado v. City of Cranston," is attached as Exhibit E.

40. On or about August 9, 2013, Plaintiff spoke on the telephone with Capt. Lafferty.  Capt. Lafferty indicated he was waiting for a response from the Attorney General's Office and that he needed another week to review the matter with the Chief of Police as he would not be available for the next week.

41. On or about October 3, 2013, Capt. Lafferty indicated that the town solicitor, Assistant Attorney General Paul Karns, and he intended to get a release and/or waiver and a date and time for Plaintiff to retrieve his firearms.

42. On or about December 20, 2013, Plaintiff again emailed Capt. Lafferty inquiring about the status of the return of his firearms to which Plaintiff received no response.

43. On or about January 21, 2015, Plaintiff again emailed Capt. Lafferty inquiring about the status of the return of his firearms to which Capt. Lafferty responded that he would be having a meeting with the new town solicitor that week, that he would discuss the issue with the new solicitor, and that he would "get back to" Plaintiff.

44. Neither Capt. Lafferty nor the Town responded to Plaintiff's emails.

45. On or about March 20, 2015, Steven Brown, Executive Director of the American Civil Liberties Union of Rhode Island, sent a letter to Defendant Reynolds, detailing the above-stated facts and requesting arrangements be made to return the firearms by April 3, 2015 to which Mr. Brown received no response. A true and accurate copy of the letter is attached as Exhibit F.

46. Plaintiff filed this lawsuit on April 23, 2015.

47. Plaintiff did not and could not replace the firearms Defendants had seized because Plaintiff experienced health issues, financial constraints and the firearms held sentimental value that could not be replaced with other or new firearms.

48. On May 5, 2015, Capt. Lafferty left a voicemail message for Plaintiff telling him he could pick up his firearms, and Plaintiff did so.

49. On information and belief, Defendants have seized the firearms of numerous other people for "safekeeping."

50. Defendants are presently holding the firearms of at least ten other people which they have seized for "safekeeping.'

51. When they seized Plaintiff's property, Defendants set in motion a series of events that they knew or should have known would result in Plaintiff's inability to recover, or extreme difficulty in recovering, his property.

52. Defendants have customs, policies, or practices of seizing firearms for "safekeeping" even when the owners are not charged with a crime and are otherwise lawful guns in Rhode Island and of requiring lawful weapons owners to obtain court orders to recover their seized property.

53. Plaintiff was unable to recover his weapons for over six years even though his weapons are not evidence, have not been used to commit a crime, and Plaintiff has been cleared by Dr. Murphy as not being a threat to himself or others.

54. By seizing Plaintiff's property without notice, refusing to return it to him for over six years, and refusing to allow him a meaningful opportunity to be heard on the matter, Defendants have deprived Plaintiff of his property without due process of law.

55. By setting in motion a series of events that Defendants knew or should have known would result in inability or extreme difficulty in recovering Plaintiff's property, Defendants deprived Plaintiff of his property without due process of law.

56. By maintaining a custom, policy or practice of requiring lawful weapons owners, but not other property owners, to engage in formal litigation to recover their seized property, Defendants have denied Plaintiff the equal protection of the laws.

57. By refusing to return Plaintiff's weapons to him for over six years, Defendants have infringed on Plaintiff's right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution and incorporated to the States by the Fourteenth Amendment as well as Art. 1, Sec. 22 of the Rhode Island Constitution.

58. Defendants' actions are capable of repetition, yet evade review, because, on information and belief, they have a practice of returning seized firearms when the owner files suit.

**Count I – Violation of the Rhode Island Firearms Act**

59. Paragraphs 1 through 58 are incorporated as though fully stated herein.

60. The Rhode Island Firearms Act, R.I.Gen.L. § 11-47-1, et seq., specifically governs this situation.  The Firearms Act expressly provides the limited circumstances under which persons are barred from possessing firearms and when Defendants may seize a person's firearms.

61. R.I.Gen.L. § 11-47-6 states: "No person who is under guardianship or treatment or confinement by virtue of being a mental incompetent, or who has been adjudicated or is under treatment or confinement as a drug addict, shall purchase, own, carry, transport, or have in his or her possession or under his or her control any firearm."

62. This restriction does not apply to Plaintiff, nor do the other statutory restrictions on which persons cannot possess a firearm. R.I.Gen.L. §§ 11-47-5 (felons and fugitives from justice), 11-47-7 (unnaturalized foreign born persons).

63. Section 22(b) of the Act states:  "If the police department in the city or town in which the firearm was seized or confiscated has not been notified by a justice of the superior court or the attorney general that the firearm is necessary as evidence in a criminal or civil matter, it shall be returned to the rightful owner."  R.I.Gen.L. § 11-47-22(b) (emphasis added).

64. Plaintiff is not aware and has not been notified of any civil or criminal matter involving the guns nor have Defendants claimed there is any.

65. Defendants' unwritten policy of requiring persons whose guns they have seized to obtain an order in state court before they return them violates the Firearms Act.

66. The Firearms Act itself provides that "[u]nless otherwise specified, any violation of any provision of this chapter shall be punishable by a fine of not more than one thousand dollars ($1,000), or imprisonment for not more than five (5) years, or both…" R.I.Gen.L. § 11-47-26.

67. Rhode Island law provides for a private right of action whenever any a person is the victim of a crime and he suffers any injury to his person, reputation or estate as a result. R.I.Gen.Law § 9-1-2.

**Count II-Violation of Plaintiff's Right to Keep Arms**

68. Paragraphs 1 through 67 are incorporated as though fully stated herein.

69. Plaintiff is a law abiding individual, competent in the safe handling of weapons. Plaintiff has also been declared by a doctor to not pose a threat of harm to himself or others. Accordingly, there exists no reason to deny Plaintiff possession of his lawfully obtained weapons.

70. By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies, and practices that violate the Second and Fourteenth Amendments to the United States Constitution as well as Art. 1, Sec. 2 of the Rhode Island Constitution, and thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

**Count III– Violation of Plaintiff's Rights Under the Fourth Amendment and Art. 1, Sec. 6 of the Rhode Island Constitution**

71. Paragraphs 1 through 70 are incorporated as though fully stated herein.

72. The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

73. Article 1, Section 6 of the Rhode Island Constitution provides: "The right of the people to be secure in their persons, papers and possessions, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue, but on complaint in writing, upon probable cause, supported by oath or affirmation, and describing as nearly as may be, the place to be searched and the persons or things to be seized."

74. By seizing Plaintiff's guns from his home without a warrant, Defendants violated the Fourth Amendment of the United States Constitution and Art. 1., Sec. 6 of the Rhode Island Constitution.

### Count IV – Violation of Plaintiff's Due Process

75. Paragraphs 1 through 74 are incorporated as though fully stated herein.

76. Plaintiff has a cognizable property interest in his weapons, the seizure and retention of which was caused by Defendants without sufficient due process. Defendants are propagating customs, policies, and practices that violate Plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution and Art. 1, Sec. 2 of the Rhode Island Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

### Count V– Violation of Plaintiff's Right to Equal Protection

77. Paragraphs 1 through 76 are incorporated as though fully stated herein.

78. By maintaining and enforcing a set of customs, practices, and policies depriving Plaintiff of his lawfully obtained weapons, Defendants are propagating customs, policies and practices that violate Plaintiff's rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Art. 1 Sec. 2 of the Rhode Island Constitution, thereby damaging Plaintiff in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to permanent injunctive relief against such customs, policies, and practices.

**Count VI-Violation of the Rhode Island Mental Health Law**

79. Paragraphs 1 through 78 are incorporated as though fully stated herein.

80. The Rhode Island Mental Health Law sets for the exclusive processes by why Rhode Island governmental officials may deprive private citizens of their rights due to the citizens mental health issues. R.I.Gen.L. § 40.1-5-34.

81. On information and belief, Defendants did not attempt to obtain a certification from a physician or the state district that Plaintiff was "a person in need of immediate care and treatment, and…whose continued unsupervised presence in the community would create an imminent likelihood of serious harm by reason of mental disability…"  R.I.Gen. L. §§ 40.1-5-7, 40.1-5-8.

82. On information and belief, Defendants did not make any application for emergency certification to a mental health "facility" as defined under the Mental Health Law.

83. Instead, Defendants insisted that Plaintiff go to Landmark Medical Center in Woonsocket, Rhode Island for evaluation. The doctor at the hospital who examined him discharged him within a few minutes of arrival without further evaluation.

84. On information and belief, Defendants knowingly and willfully conspired unlawfully to improperly attempt to cause Plaintiff to be admitted or certified to a medical or mental health facility even though he was not "a person in need of immediate care and treatment, and…whose continued unsupervised presence in the community would create an imminent likelihood of serious harm by reason of mental disability…"

85. Accordingly, Defendants' actions violate the Rhode Island Mental Health Law and their actions constitute a crime, pursuant to R.I.Gen.Law § 40.1-5-38.

86. Rhode Island law provides for a private right of action whenever any a person is the victim of a crime and he suffers any injury to his person, reputation or estate as a result. R.I.Gen.Law § 9-1-2.

## Count VII-Trover and Conversion

87. Paragraphs 1 through 86 are incorporated as though fully stated herein.

88. On September 28, 2008, Plaintiff lawfully possessed his firearms in his home.

89. Defendants seizing his firearms without his permission and retained them for over six years despite his repeated requests that they be returned.

90. Plaintiff has a right to possession of those firearms

91. Defendants had no legal justification for seizing and retaining his firearms.

92. Defendants' actions constituted conversion of Plaintiff's firearms.

## Prayer for Relief

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who

receive actual notice of the injunction, from enforcing the practice of seizing and retaining lawfully obtained weapons of individuals without a warrant who are deemed to be of no threat to themselves or others, and who have not been charged with a crime;

2. Declaratory relief that the practice of seizing and retaining lawfully obtained weapons of individuals who are deemed to be of no threat to themselves or others, and who have not been charged with a crime is unconstitutional either on its face and/or as applied to bar those individuals who are legally entitled to possess weapons;

3. Declaratory relief that the practice of requiring weapons owners who are not charged with a crime to engage in formal litigation in order to recover their seized property is unlawful and unconstitutional;

4. Damages for Plaintiff's loss of use of his weapons;

5. Punitive damages in a sufficient amount to deter Defendants from further violating the rights of Plaintiff and other lawful weapon owners.

6. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

7. Any other relief as the Court deems just and appropriate.

>Respectfully submitted,
>**JASON RICHER**
>By his attorneys,
>
>/s/ Thomas W. Lyons
>Thomas W. Lyons         #2946
>Rhiannon S. Huffman     #8642
>RHODE ISLAND AFFILIATE,
>AMERICAN CIVIL LIBERTIES UNION
>Strauss, Factor, Laing & Lyons
>One Davol Square, Suite 305
>Providence, RI 02903
>(401) 456-0700
>tlyons@straussfactor.com

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY OF ALL ISSUES SO TRIABLE.

16

## **VERIFICATION**

I have read the allegations of this Complaint and state that they are true and accurate to the best of my knowledge and belief.

_____
Jason A. Richer

Subscribed and sworn to before me this \_\_\_ day of _____, 2016.

_____
Notary Public
My commission expires:

## **CERTIFICATION**

I hereby certify that on _____ 2016 a copy of the foregoing was filed and served electronically on all registered CM/ECF users through the Court's electronic filing system and served by email on Marc DeSisto, Esq., attorney for defendants. Parties may access this filing through the Court's CM/ECF system.

/s/ Thomas W. Lyons