UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JASON A. RICHER,
    Plaintiff,

v.                                                         C.A. No. 15-162-M-PAS

JASON PARMELEE as the Finance Director
of THE TOWN OF NORTH SMITHFIELD, TOWN
OF NORTH SMITHFIELD, and STEVEN E. REYNOLDS,
Individually and in his Official Capacity as Chief of the
NORTH SMITHFIELD POLICE DEPARTMENT, TIM
LAFFERTY, Individually and in his Official Capacity as
Captain of the North Smithfield Police Department, and
OFFICERS STEPHEN RICCITELLI, RUSSELL AMATO,
GLENN LAMOREUX, MARK BERGERON, and
GREGORY LANDRY, individually and in their Official
Capacities as Members of the North Smithfield Police
Department, John and Jane Doe,
    Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**[1]

Plaintiff contends that the continuing violation doctrine applies to his conversion claim "as well as his other claims under state law." See Docket #88, Plaintiff's Objection to Defendants' Motion for Summary Judgment at 7. In support of his argument that the continuing violation doctrine applies to his conversion claim, Plaintiff cites to Keough v. Pawtucket Postal Employees, C.A. No. 93-2968, 1993 R.I. Super LEXIS 41 (R.I. Super. Ct. Oct. 14, 1993). Keough, however, is a Truth in Lending Act claim and does not support the premise that the continuing violation doctrine applies to a conversion claim. See id. Conversion is a permanent act that deprives another of property. The continuing violation doctrine does not apply to a conversion claim.

---

[1] Defendants incorporate by reference all arguments made in their memorandum in support of their motion for summary judgment and in their objection to Plaintiff's motion for summary judgment. Unless specifically necessary, in the interest of brevity, Defendants will not repeat those arguments.

1

Plaintiff also argues that the continuing violation doctrine applies to "his other claims of state law." Docket #88 at 7. Plaintiff, however, does not identify the particular state law claims and how the continuing violation doctrine applies to those claims. Plaintiff has failed to develop any argument on this issue; thus his argument is waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Plaintiff next argues that the Rhode Island Law provides a damage remedy to victims of crimes. With respect to the Firearms Act claim, Defendants rely upon the Court's holding that because the Town returned Plaintiff's guns to him, he no longer has a claim pursuant to R.I. Gen. Laws § 11-47-22(b). See Richer v. Parmelee, 189 F. Supp. 3d 334, 343-44 (D.R.I. 2016). Moreover, any claim against the Town is out of time. See Docket at #32 at 8-9. Furthermore, § 9-1-2 provides that the alleged crime victim may recover his or her alleged damages in a "civil action against the offender . . ." R.I. Gen. Laws § 9-1-2 (emphasis added). In any *civil* action, however, no individual Defendant can be held liable to a third party for any acts performed within the scope of his employment. Kennet v. Marquis, 798 A.2d 416, 418 (R.I. 2002) (it "has long been settled that an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his authority").

Plaintiff contends that none of the grounds for which an individual can purportedly be deprived of possession of a firearm as listed in the Rhode Island Firearm's Act are applicable in this case. Although Plaintiff argues that the Firearms Act gives Plaintiff a right to possesses firearms, that right certainly "does not trump the right of a law enforcement officer to take precautionary steps to protect and ensure . . . safety" – the safety of Plaintiff, his family and the general public. See generally Greene v. Knight, 564 F. Supp. 2d 604, 613 n.2 (N.D. Texas

2

2008). Plaintiff's Rhode Island Firearms' Act claim fails for the various reasons outlined by Defendants.

Defendants submit that they did not violate R.I. Gen. Laws § 40.1-5-38 for the reasons outlined in their memorandum in support of summary judgment. See Docket #79.1 at 33-37. Moreover, Plaintiff's misstate Defendants' position. Defendants did not "attempt" to get Plaintiff committed for mental health reasons. See Docket #88 at 10. Defendants did not make an application for certification; did not request Plaintiff be admitted to a facility; and Plaintiff was not admitted into a facility. As a result, Defendants certainly did not "improperly cause [Plaintiff] to be admitted or certified. . . ." R.I. Gen. Laws 40.1-5-38. In addition, although Plaintiff argues a conspiracy, Plaintiff fails to point to any admissible evidence where two or more Defendants' specifically agreed to commit this purported unlawful act. See Docket #88 at 11 (referring to Plaintiff's Statement of Undisputed Facts 53, 63, 94-95). Moreover, because Plaintiff brings his claim pursuant to § 9-1-2, no individual Defendant can be held liable to a third party for any acts performed within the scope of his employment. Kennet v. Marquis, 798 A.2d 416, 418 (R.I. 2002) (it "has long been settled that an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his authority").

Plaintiff also relies upon State v. Gonsalves, 476 A.2d 108, 111 (R.I. 1984), for the proposition that the "Rhode Island Supreme Court has [sic] that a criminal statute prohibits an attempt to violate it even if the statute does not expressly refer to an attempt." Docket #88 at 11. Gonsalves actually supports Defendants' argument. Gonsalves involved the interpretation of an *ambiguous* statute. Id. at 111. The Court determined that it was clear from the reading of the statute that the Legislature intended to prohibit attempts. Id. Plaintiffs simply conclude that it is

clear that the Legislature intended to criminalize attempts in § 40.1-5-8 without any substantive analysis – except for the allegation that Defendants' argument is "non-sensical." Docket #88 at 12.  R.I. Gen. Laws § 40.1-5-38 provides that any

> <u>person who knowingly and willfully conspires</u> with any other person unlawfully to improperly <u>cause to be admitted or certified to any facility</u>, any person not covered by the provisions of this chapter, shall on conviction thereof, be fined not exceeding five thousand dollars ($5,000) or imprisoned not exceeding five (5) years at the discretion of the court.

R.I. Gen. Laws § 40.1-5-38 (emphasis added).  When construing a statute, the court must be guided by the plain and ordinary meaning of unambiguous language.  <u>Walden v. City of Providence</u>, 596 F.3d 38 (1st Cir. 2010).  The statutory scheme prohibits "persons" from unlawfully conspiring to improperly "<u>cause</u> [an individual] to be admitted or certified" to a facility.  R.I. Gen. Laws § 40.1-5-38 (emphasis added).  Section § 40.1-5-38 is clear and unambiguous – it does not criminalize attempts.

      Moreover, Plaintiff brings his Rhode Island Mental Health Act claim via R.I. Gen Laws § 9-1-2.  In order to recover under § 9-1-2, Plaintiff must show that a Defendant committed a crime.  It is Defendants' position that no Defendant violated R.I. Gen. Laws § 40.1-5-38 for various reasons.  Docket # 79.1 at 33-37.  It appears, however, that Plaintiff also argues that Defendants also violated R.I. Gen. Laws §§ 40.1-5-7 and 40.1-5-8.  The statutory scheme, however, does not provide that violations of those sections are crimes.  In fact, the statutory scheme specifically identifies other actions as crimes.  <u>See</u> R.I. Gen. Laws §§ 40.1-5-19; 40.1-5-38; 40.1-5-39; 40.1-4-40.1.  Consequently, R.I. Gen. Laws § 9-1-2 does not apply to any claim for a purported violation of §§ 40.1-5-7 and 40.1-5-8.

      In support of his argument, Plaintiff cites <u>In re Doe</u>, 440 A.2d 712, 716 (R.I. 1982).  In <u>Doe</u>, the Rhode Island Supreme Court held that the "failure of public officials to apply promptly

for required judicial authorization to commit or retain patients may give rise to civil liability in the event that such a patient should be wrongfully deprived of such liberty." Id. at 716 (emphasis added). First, as Defendants have argued, Defendants did not move to commit or retain Plaintiff in a mental health facility. Consequently they did not violate the statutory scheme.

Furthermore, as Doe recognizes, even if Defendants somehow violated sections 40.1-5-7 or 40.1-5-8, that violation "may" give rise to "civil liability" --- not criminal liability. Consequently, any claim under § 9-1-2 would not apply because there is no crime. Taking that theory one step further, any such civil claim would be out of time. Salvato v. Tourism & Development Corp., P.C. No. 83-3394, 1985 R.I. Super LEXIS 192 (R.I. Super. Ct. Oct. 11, 1985) (statute of limitations on false imprisonment claim is 3 years). Even if, however, that claim was not out of time, no individual Defendant can be held liable to a third party for any acts performed within the scope of his employment. Kennet v. Marquis, 798 A.2d 416, 418 (R.I. 2002) (it "has long been settled that an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his authority").

Plaintiff argues that Art. 1 Sec. 22[2] grants him more expansive rights than the Second Amendment. Docket #88 at 14-16. Plaintiff contends that in Mosbey v. Devine, 851 A.2d 1031, 1043 n.7 (R.I. 2004), the Rhode Island Supreme Court held that an individual has an "absolute right to keep arms in his house." Docket #88 at 14. The statement to which Plaintiff's point appears in footnote 7 in a decision that includes 63 footnotes. See generally id. The footnote is in response to an issue raised by a dissenting judge and is dicta. See id. Putting that aside, however, according to Plaintiff's definition of the term "absolute right," the right gives an

---

[2] Plaintiff appears to miscite the Rhode Island Constitutional provision governing the right to bear arms – the proper section is Art. I, Sec. 22.

individual "uncontrolled dominion over the object at all times and for all purposes."  Docket #88 at 14 (emphasis added).  If the Court accepts Plaintiff's argument, the government could seemingly never seize a gun in a house as evidence or prevent others from owning guns.  See generally Sutterfield v. City of Milwaukee, 870 F. Supp. 2d 633, 641-42 (E.D. Wis. 2012), aff'd 751 F.3d 542 (7th Cir. 2014).  The Court, however, need not evaluate Plaintiff's argument because Plaintiff's claim pursuant to Art. I, Sec. 22 is out of time.  See Shire v. Rhode Island Department of Transportation, C.A. No. PB 09-5686, 2012 R.I. Super. LEXIS 32 (R.I. Super. Ct. March 2, 2012) (Rhode Island Constitutional claim subject to 3 year statute of limitation); Chuck & Sons Towing, Inc. v. Town of Smithfield, No. POC 06-2530, 2007 R.I. Super. LEXIS 30 (R.I. Super. Ct. Feb. 22, 2007).

Defendants did not violate Plaintiff's Second Amendment rights.  See Docket #45.1 at 11-13.  First, as noted in Defendants' memorandum in support of summary judgment, the claim is out of time.  See Docket #79.1 at 9-10.  Moreover, the Second Amendment is not implicated in this matter because the Second Amendment does not protect a right to a specific firearm.  See id. at 10.  Among other courts around the country, at least four District Courts within the First Circuit have so held.  See id. at 10-11; see also Marutyan v. Las Vegas Metro. Police Department, No. 2:16-cv-01089-MMD-GWF, 2017 U.S. Dist. LEXIS 41342 (D. Nev. March 22, 2017).

Notwithstanding that argument, however, the individual Defendants are entitled to qualified immunity on the claim.  Defendants assert that not only was there no constitutional violation of the Second Amendment, no case law as of September 2008 would have put Defendants on notice that removing a firearm from the home of a suicidal individual during a community caretaking function is a violation of the *Second Amendment.*  See Baskin v. City of

6

Fort Wayne, No. 1:16-CV-180-TLS, 2017 U.S. Dist. LEXIS 174650, at *6-7 (N.D. Ind. Oct. 20, 2017); Brown v. Zydek, No. 15 C 1044, 2016 U.S. Dist. LEXIS 108207, at *10-12 (N.D. Ill. Aug. 16, 2016).

Plaintiff contends that the Rhode Island Constitution provides "stronger" protections against unreasonable searches and seizures than the Fourth Amendment. Docket #88 at 19. Plaintiff argues that the Rhode Island Supreme Court has distinguished between seizure in the home as compared to seizures in an automobile or elsewhere. This matter occurred as a result of the multi-faceted community caretaking role that police officers undertake on a daily basis. The Court has to view the facts under a totality of circumstances based on the reasonableness of Defendants' exercise of their community caretaking function. This matter involved both exigency and the Defendants exercise of their community caretaking function. The Rhode Island Supreme Court has invoked the community caretaking doctrine in situations of exigency, to protect specific individuals, and to protect police officers and the general public. See State v. Cook, 440 A.2d 137 (R.I. 1982); State v. Roussell, 770 A.2d 858 (R.I. 2001). In this matter, Defendants acted pursuant to their community caretaking function and reacted within the realm of reason to protect Plaintiff, Mrs. Richer, Plaintiff's children.[3]

Plaintiff has amended his complaint four times. Despite amending his complaint four times, *twice* while motions for summary judgment were pending, Plaintiff continues to argue claims that are *not* pled in his fourth amended complaint. In response to an argument Defendants made concerning Defendants Reynolds and Lafferty, Plaintiff now argues that the record evidence supports a failure to train case. Docket #88 at 27 n.7. The fourth amended complaint does not include a failure to train claim under § 1983. Plaintiff cannot plead new claims at

---

[3] Despite Plaintiff's argument that the Rhode Island Supreme Court strictly limits the application of the community caretaking function to the automobile context, Defense counsel has not identified any case from the Rhode Island Supreme Court specifically holding that the application of the doctrine is limited to the automobile context *only*.

summary judgment.  Ruiz-Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008).  "The fundamental purpose of our pleading rules is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him."  Id. (internal quotation marks omitted) (affirming summary judgment where claim was not sufficiently plead in amended complaint).  Moreover, in order to sustain a failure to train case, Plaintiff must point to evidence in the record supporting the premise that the failure to train amounts to deliberate indifference.  Canton v. Harris, 489 U.S. 378 (1989).  Plaintiffs have wholly failed to develop any such argument.  Defendants Reynolds and Lafferty are entitled to summary judgment as outlined in Defendants' memorandum in support of their motion for summary judgment.

Plaintiff contends that one of the reasons the Court should reject Defendants' qualified immunity argument is because, in a concurring opinion, Justice Thomas has urged the Supreme Court to reconsider its qualified immunity jurisprudence.  Docket #88 at 30.  However, contrary to Plaintiff's use of the analogy comparing Defendants to aggressive pit bulls, the qualified immunity defense is premised on balancing two important interests – the need to hold public officials accountable when the exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability *when they perform their duties reasonably*.  Pearson v. Callahan, 55 U.S. 223, 231 (2009).  There is absolutely no evidence in the record to suggest that, on September 28, 2008, Defendants acted out of anything but a concern for the safety of Plaintiff, his family, and the public.  Rather than acting as aggressive dogs, as Plaintiff alleges, Defendants acted reasonably under the circumstances.

Plaintiff, citing Richardson v. McKnight, 521 U.S. 399 (1997), also argues that Defendants are not entitled to qualified immunity because they have insurance coverage for the claims in the complaint.  Docket #88 at 29.  Plaintiff's argument misses the mark.  In

Richardson, the Supreme Court held that employees of *privately operated* prison could not assert a qualified immunity defense. See id. Defendants are not employed by a private entity, consequently, they enjoy the opportunity to advance a qualified immunity defense irrespective of availability of insurance coverage. Defense counsel could not identify any case citing Richardson that stands for the proposition that a public employee cannot invoke the defense of qualified immunity as a result of insurance coverage.

It is respectfully submitted that, based on the arguments outlined above and the arguments outlined in Defendants' memoranda in support of their motion for summary judgment and in opposition to Plaintiff's motion for summary judgment, the Court grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment.

Defendants,
By their attorneys,

*/s/ Marc DeSisto*
Marc DeSisto, Esq. (#2757)
Patrick K. Cunningham, Esq. (#4749)
DESISTO LAW LLC
60 Ship Street
Providence, RI 02903
401-272-4442
marc@desistolaw.com
patrick@desistolaw.com

**CERTIFICATION OF SERVICE**

I hereby certify that the within document has been electronically filed with the Court on this 6th day of February 2019 and is available for viewing and downloading from the ECF system.

Thomas W. Lyons, Esq.
tlyons@straussfactor.com

Rhiannon S. Huffman, Esq.
rhuffman@straussfactor.com

*/s/ Marc DeSisto*
Marc DeSisto