UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JASON A. RICHER,<br>      Plaintiff,<br><br>v.<br><br>JASON PARMELEE as the Finance Director of the Town of North Smithfield, TOWN OF NORTH SMITHFIELD, and STEVEN E. REYNOLDS in his official capacity as Chief of the North Smithfield Police Department, TIM LAFFERTY, Individually and in his Official Capacity as Captain of the North Smithfield Police Department, and OFFICERS STEPHEN RICCITELLI, RUSSELL AMATO, GLENN LAMOREUX, MARK BERGERON, and GREGORY LANDRY, Individually and in their Official Capacities as Members of the North Smithfield Police Department, John and Jane Doe,<br>      Defendants. | C. A. No. 15-162-M-PAS |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Jason Richer filed suit after North Smithfield Police, responding to a well check request made by his then-wife, confiscated three guns from his home and refused to return them to him. He filed a partial Motion for Summary Judgment a few years ago and this Court granted his motion on his Count IV due process claim, finding that the Town's refusal to return his guns for six and a half years "violated [his] constitutionally protected procedural due process rights." *Richer v. Parmelee*, 189 F.

Supp. 3d 334, 336 (D.R.I. 2016) (*Richer I*). The Court denied Mr. Richer's motion on all other grounds.

The case has been enhanced somewhat since the Court's decision. Mr. Richer originally sued Jason Parmelee, the Finance Director for the Town of North Smithfield, the Town of North Smithfield, and Steven Reynolds, as Chief of the North Smithfield Police Department ("The Town"). He has since amended his complaint, expanding his claims and adding North Smithfield Police Captain Tim Lafferty and Officers Stephen Riccitelli, Russell Amato, Glenn Lamoreux, Mark Bergeron, and Gregory Landry. Operating from Mr. Richer's Fourth Amended Complaint (ECF No. 86), both parties have filed Cross-Motions for Summary Judgment. The Town has moved on all the remaining counts: Counts I, II, III, V, VI, VII, and claims for Declaratory and Injunctive Relief (ECF No. 79) and Mr. Richer has moved on Counts III, IV, VI, and VII[1] and also on the Town's immunity and community caretaking function defenses. ECF No. 77.

I. FACTS

On September 19, 2008, Mr. Richer and his then-wife Tracy had an argument, prompting him to call 911. ECF No. 89 at ¶ 11. Although he hung up the phone before speaking to an operator, North Smithfield Police Department ("NSPD") responded. *Id.* Apparently, Mrs. Richer tried to take the phone out of his hand as he

---

[1] Count I–Rhode Island Firearms Act; Count II–Second Amendment/Article I, § 2 of the R.I. Constitution; Count III–Fourth Amendment/Article 1, § 6 of the R.I. Constitution; Count V–Equal Protection; Count VI–R.I. Mental Health Law; and Count VII–Conversion.

was calling, but he did not reveal this assault to the police because he did not want her to get arrested. *Id.* at ¶ 12. Officers left the Richer's home that day without seizing any firearms or arresting anyone. ECF No. 93 at ¶ 32. Police responded to another 911 call about a week later, this time from Mrs. Richer; during that call, she told police that she was concerned that Mr. Richer had tried to harm himself. ECF No. 89 at ¶ 13. She believed that he put a handful of pills in his mouth intending to overdose. ECF No. 93 at ¶ 35. A tape recording of the argument revealed that Mr. Richer made several statements revealing that he "lost his will to live," his family "would be better off without" him, and that he was "getting out of [her] life." ECF No. 89 at ¶ 52A. He put pills into his mouth and told his wife that he was "going to bed and [would not] get up." *Id.* at ¶ 16. While it appears that Mr. Richer put four pills in his mouth, his regular dose of prescription medication, Mrs. Richer told the 911 operator that he swallowed a handful of pills and she did not know what they were. *Id.* at ¶ 17. The 911 tape revealed that Mr. Richer told her they were his prescribed pills, but she told the operator that he had "prescriptions for all kinds of stuff." *Id.* at ¶ 18.

The 911 operator communicated this information to NSPD officers, who responded to the Richer's home for a possible suicidal male who had ingested pills. *Id.* at ¶ 20. Officers spoke with both Mr. and Mrs. Richer and one of their young sons. *Id.* at ¶¶ 24-27. Mrs. Richer told officers that she and Mr. Richer had been fighting and about what he said and did. *Id.* at ¶¶ 26-27. It is disputed when Mrs. Richer and the officers knew that he had taken only his prescribed dose of medications and

spit them out into the trash can–Mr. Richer says he told her while she was on the phone with 911 and the Town says it was at or about the time the officers arrived on the scene–but in any event, the officers concluded that Mr. Richer's actions suggested that he wanted to harm himself and, based on the totality of the circumstances at the scene, insisted that Mr. Richer go to the hospital for an evaluation. *Id.* at ¶¶ 26-28; ECF No. 93 at ¶¶ 52-53. Officer Riccitelli testified that the key to his determination that Mr. Richer had made a suicide attempt was his conversation with the Richer's son's. ECF No. 95 at ¶ 119.

North Smithfield Rescue also responded to the scene and informed Mr. Richer that they were going to take him to the hospital to have him evaluated and treated if necessary. ECF No. 89 at ¶ 43. The rescue report stated that "Pt threaten[ed] to kill himself, pt took 4 pills then spit them out. PD wanted pt seen for an evaluation. Pt has emotional problems going on at home. Pt transported without any problems." ECF No. 93 at ¶ 39. Mr. Richer told rescue personnel that he was not suicidal. *Id.* at ¶ 37. Mrs. Richer wanted Mr. Richer to be medically evaluated because although he told her he took only his regular medication she believed he could have taken a lot more than he said or could have taken something else. ECF No. 89 at ¶¶ 44-45. Mr. Richer agreed to go to Landmark Medical Center. *Id.* at ¶ 47. He was not admitted, but told to follow up with his regular physician; he was discharged within minutes of arriving there. *Id.* at ¶¶ 48-49.

Meanwhile, NSPD officers asked about whether there were guns on the property and Mrs. Richer confirmed that there were. ECF No. 89 at ¶ 30. There is a

4

semantic dispute over whether Mrs. Richer asked for the guns to be removed or whether the officers asked her if she wanted them removed, but nevertheless, the guns were found, she gave her permission to NSPD to take the guns, and police removed them from the property for safekeeping. *Id.* at ¶¶ 31-33, 36; ECF No. 93 at ¶¶ 61-62. Mr. Richer did not specifically consent to the seizure of his guns. ECF No. 93 at ¶ 60. NSPD agree that there was no crime committed that day and no resulting criminal investigation. *Id.* at ¶ 66.

NSPD did not prevent Mr. Richer from buying any other firearms after the September 28, 2008 incident.[2] ECF No. 89 at ¶ 54. NPSD returned Mr. Richer's guns six and a half years after the seizure, and only after he filed this lawsuit. ECF No. 89 at ¶ 56.

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the pleadings [and discovery], together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The analysis needed for cross-motions for summary judgment is the same. *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009) ("The

---

[2] Mr. Richer submitted a post-hearing affidavit in support of his argument that the Town violated his Second Amendment rights because it prevented him from possessing any guns. ECF No. 100. He states that he purchased a shotgun in Woonsocket, for which he completed an application submitted to Woonsocket Police. Woonsocket Police denied his application based on disqualifying information from North Smithfield Police stating that his firearms had been removed. *Id.* at ¶ 6. The Town objects and moves to strike. ECF No. 101. The Court will address this affidavit in its discussion of the Second Amendment.

5

presence of cross-motions neither dilutes nor distorts this standard of review"). In evaluating cross-motions, the court must determine whether either party is entitled to judgment as a matter of law based on the undisputed facts. *Id.*

III. ANALYSIS

The Court will first begin its analysis with the four claims it considered on Mr. Richer's motion in *Richer I*. It will be brief because the Court's decision against Mr. Richer is unchanged and the undisputed facts analyzed through the law of these claims falls in favor of the Town's motion.

A. Count I–Rhode Island Firearms Act

The Court previously denied Mr. Richer's Motion for Summary Judgment on his claim under the Rhode Island Firearms Act ("RIFA") because that statute contemplates only injunctive relief, not money damages and the Town returned Mr. Richer's guns, so no injunctive relief was available to him. *Richer I*, 189 F. Supp. 3d at 343. And the Court rejected Mr. Richer's argument that he was entitled to relief under R.I. Gen. Laws § 9-1-2, finding that he could not recast his claim under another statute. *Id.* at 344. The Town now moves for summary judgment.

R.I. Gen. Laws § 9-1-2 "provides civil liability for criminal offenses" and a "plaintiff may recover civil damages for injury ... that results from the commission of a crime or offense, irrespective of whether charges have been filed against the offender." *Morabit v. Hoag*, 80 A.3d 1, 4 (R.I. 2013). The criminal act alleged is "Defendants' unwritten policy of requiring persons whose guns they have seized to obtain an order in state court before they return them." ECF No. 86 at ¶ 65. But it

is undisputed that the Town returned Mr. Richer's guns without a state court order so he cannot now argue that the Town violated the RIFA.³ The Town did not commit a crime, so he is not entitled to money damages under § 9-1-2. The Court therefore GRANTS the Town's Motion for Summary Judgment (ECF No. 79) on Count I.

### B. Count II–Second Amendment

The Town moves for summary judgment on Mr. Richer's Second Amendment claim. In *Richer I*, the Court remarked that "it is dubious whether [his] Second Amendment rights are at all implicated in this case" because his claims invoked rights protected under the Fourth and Fourteenth Amendment. *Richer I*, 189 F. Supp. 3d at 343. The Court relied on caselaw finding that the Second Amendment does not give an individual an absolute right to keep arms and does not protect that person's right to have a particular gun. *See id.* at 342-43. Because the Town returned Mr. Richer's guns and did not prevent him from obtaining other guns, the Court dismissed Mr. Richer's motion on that claim.

Through a supplemental affidavit–one that the Town vigorously objects to both procedurally⁴ and substantively–Mr. Richer asserts that NSPD did prevent him from obtaining other guns. He details an attempt to purchase a shotgun and asserts that

---

³ Even if there were a violation of the RIFA, "[t]he plain language of the statute [] requires a causal connection between the alleged crime and the claimed injury." *Kelly v. Marcantonio*, 187 F.3d 192, 203 n.8 (1st Cir. 1999). Mr. Richer has failed to allege or produce evidence of a causal connection between the crime and his injury–presumably because he has his property back and he has no evidence of current injury.

⁴ The Town moves to strike this affidavit. ECF No. 101. In light of the outcome of Mr. Richer's Second Amendment claim, the motion to strike is DENIED as moot.

7

the Woonsocket Police Department rejected his application for that weapon based on information that it received from NSPD that his guns had been taken previously. Even if the Court considers this affidavit, one that includes hearsay statements from a Woonsocket Police Officer, the decision to deny his application belongs to Woonsocket, not the Town. Even if it were absolutely clear that NSPD told Woonsocket every detail of the events occurring in this case, which from the language of the affidavit it is not, it was still ultimately Woonsocket's decision to deny the application. That NSPD provided Woonsocket with information from its incident files pursuant to Woonsocket's request does not support Mr. Richer's claim that the Town violated his Second Amendment rights.

Law enforcement must maintain a difficult balancing act in respecting "an individual's right to possess a firearm" while continuing to be able "to take appropriate action when they are confronted with a firearm that may or may not be lawfully possessed, and which, irrespective of the owner's right to possess the firearm, may pose a danger to the owner or others." *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 572 (7th Cir. 2014). NSPD officers were summoned to the Richer's home on a report of a suicidal individual and after taking in the scene and speaking with both adults and their six-year-old child, they determined that Mr. Richer's behaviors justified removing his guns from the home. The Town's policy of removing guns from a home under these circumstances does not infringe on Mr. Richer's Second Amendment rights. The Town's Motion for Summary Judgment (ECF No. 79) on Count II is GRANTED.

C. Count III–Fourth Amendment

Mr. Richer argues that the Town violated the Fourth Amendment in two ways: 1) by seizing him and forcing him to have a mental health evaluation at Landmark Medical Center, and 2) by seizing his guns. In *Richer I*, the Court determined that Mr. Richer's Fourth Amendment claim was time barred because the statute of limitations for 42 U.S.C. § 1983 claims is three years and he filed his suit more than six years after his known injuries occurred. *See Richer I*, 189 F. Supp. 3d at 343. This decision is dispositive for the Town who, not surprisingly, has moved for summary judgment on this ground. Mr. Richer also moves for summary judgment, asking the Court to reconsider its ruling based on the continuing violation doctrine. He argues that the Town's policies of seizing guns from its citizens and refusing to return them and sending an individual for a mental health evaluation are continuing violation such that his claim is not barred. The Town objects, arguing that the continuing violation doctrine is not a fit here because Mr. Richer's claims did not take time to materialize; he knew of the alleged injuries on the day they occurred thus starting the clock.

The Court agrees with the Town. "[A] section 1983 claim accrues at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim." *Nieves v. McSweeney*, 241 F.3d 46, 52 (1st Cir. 2001) (citing *Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1, 3 (1st Cir. 1995)). Mr. Richer's Fourth Amendment violations are untimely under this standard. Mr. Richer bases his continuing violation argument on the Town's retention of his guns for six and a half years, but

the proper focus for accrual purposes is on the time of the alleged unlawful acts, "not upon the time at which the *consequences* of the acts became most painful." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (quotation marks omitted). The search of his home and seizure of his person and guns occurred on September 28, 2008. It is undisputed that Mr. Richer knew of the Town's acts and his injuries on that date, and he has not claimed otherwise. His Fourth Amendment claim accrued on the same day as the allegedly unlawful search and seizure, so it is time barred.[5] The Court GRANTS the Town's Motion for Summary Judgment (ECF No. 79) on Count III; Mr. Richer's motion (ECF No. 77) on the same claim is DENIED.

D. Count IV–Due Process

Mr. Richer claims that the Town and its employees violated his due process rights by refusing to return his property to him for six and a half years and giving him no opportunity to contest the seizure and retention. In *Richer I*, the Court granted Mr. Richer's motion on this basis, mainly focusing on the Town's refusal, in the face of Mr. Richer's many requests, to return his property for six and a half years. *Richer I*, 189 F. Supp. 3d at 338-42.

---

[5] The Court also noted in *Richer I* that even if this claim were not time barred, Mr. Richer's motion would be denied because there was a dispute over whether there was a consent to search and also that the officers' "actions were likely a valid exercise of their community caretaking functions." 189 F. Supp. 3d at 343 n.13. Mr. Richer moves here for summary judgment on the Town's community caretaking function defense as well as qualified immunity; however, because the Court has not found it necessary to consider those defenses in the disposition of these motions, it declines to discuss the Town's conduct in those terms.

He now alleges that the Town violated his constitutional right to due process by seizing him and sending him to Landmark for a mental health evaluation. The Town objects on both procedural and substantive grounds, arguing that this claim is not incorporated into the due process allegations in his complaint and that it is time barred because it is actually a Fourth Amendment seizure claim, not a due process claim. The Court agrees with the Town.

While it is arguable that this due process claim rooted in his seizure is a new claim, for expediency, the Court will address it instead of finding it procedurally waived. To evaluate "a procedural due process claim under the Fourteenth Amendment, we must determine 'whether [the plaintiff] was deprived of a protected interest, and, if so, what process was his due.'" *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 88 (1st Cir. 2014) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)). Mr. Richer's liberty is a protected interest, but what process was his due? He voluntarily went to Landmark; a doctor examined him and was almost immediately sent home. Even if Mr. Richer could successfully remodel his Fourth Amendment seizure claim as a due process claim, he was given due process because the trip to the hospital was voluntary and over quickly.

But the Court finds that he cannot somehow recast these allegations into the due process mold. There is no dispute that Mr. Richer's claim that he was unlawfully seized and sent for a medical evaluation is more properly made under the Fourth Amendment. In fact, Mr. Richer argued for summary judgment on his Fourth Amendment claim on these very seizure allegations. The Court has decided both in

*Richer I* and here that this claim is time barred. The Court DENIES Mr. Richer's motion (ECF No. 77) as to Count IV due process. The Court's decision on this claim in *Richer I* stands.

Now the Court will move on to the claims not raised in *Richer I*.

### E. Count V–Equal Protection

The Town moves for summary judgment on Mr. Richer's Equal Protection claim. He alleges that he is entitled to injunctive relief against the Town's policy, custom, and practice of depriving him of his legal guns in violation of the Fourteenth Amendment. Because Mr. Richer fails in both his pleading and his presentation of any disputed material facts, his Equal Protection claim cannot survive.

"The equal protection guarantee of the Fourteenth Amendment prohibits the state from 'deny[ing] any person within its jurisdiction the equal protection of the laws.'" *Pagan v. Calderon*, 448 F.3d 16, 34 (1st Cir. 2006) (quoting U.S. Const. Amend. XIV, § 1). Equal protection has been interpreted to mean that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Plaintiffs claiming an equal protection violation must first identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently." *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) (emphasis in original) (internal quotation mark omitted). "Thus, the proponent of the equal protection violation must show that the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the

comparison inutile." *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (citing *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996)).

Looking through the entire record, from the complaint through the summary judgment evidence, Mr. Richer does not point to any other individual similarly situated who was treated differently. He speculates that other gun owners could fall victim to the Town's unconstitutional gun seizure policies and procedures, but fails to cite any specific cases. At this stage of the case, Mr. Richer's Equal Protection claim allegations are not enough to survive summary judgment.

The Court GRANTS the Town's Motion for Summary Judgment (ECF No. 79) on Count V.

### F. Count VI–Rhode Island Mental Health Law

The Rhode Island Mental Health Law ("RIMHL") provides the processes through which state actors can require an individual to submit to care for mental health issues. Specifically, the statute dictates that before the state moves forward with admitting or certifying an individual to a medical or mental health facility, they must obtain a certification from a doctor that the individual needs immediate care. Mr. Richer alleges that the Town violated the RIMHL because it failed to get the certification and conspired to have him admitted to Landmark.

Both parties move for summary judgment. The Town argues it is entitled to dismissal because first, the RIMHL does not provide for a private right of action, and second, there is no evidence that the Town attempted and/or conspired to have Mr. Richer committed or admitted to Landmark Medical Center so no doctor

certification was required. Mr. Richer concedes the first point but argues again that he has a cause of action for damages under R.I. Gen. Laws § 9-1-2 because the Town violated the statute when its officers mandated the mental health evaluation without the required doctor certification.

Putting aside whether there is a private right of action, the Court finds that there is no evidence that the Town violated the RIMHL. The Court imagines that it is not unusual for police to send an individual to the hospital for an evaluation after being summoned by a family member to check on his or her well-being. This is not the scenario that the RIMHL was meant to address. The purpose of the RIMHL is "remedial. It was designed to establish a due-process framework for the commitment of mentally ill persons and for their periodic reevaluation." *In re Doe*, 440 A.2d 712, 716 (R.I. 1982). Based on all the information received at the scene, the officers asked Mr. Richer to go with rescue to get checked out at Landmark Medical Center. He asserts that he did not feel like he had a choice, but he went voluntarily. ECF No. 89 at ¶ 47. The hospital released him shortly after he arrived. ECF No. 93 at ¶ 49. There was never a suggestion that the officers conspired to ensure that Mr. Richer was admitted or committed post-evaluation. There is no evidence that officers had any contact with hospital staff during or after the evaluation to attempt or ensure his admission. Because the Town did not violate the RIMHL, there is no crime so § 9-1-2 does not provide Mr. Richer any relief.

The Court GRANTS the Town's Motion for Summary Judgment (ECF No. 79) and DENIES Mr. Richer's Motion for Summary Judgment (ECF No. 77) on Count VI.

G. Count VII–Conversion

Both parties move for summary judgment on Mr. Richer's common law claim for conversion. In his complaint, he alleges that the Town seized his guns without his permission, without legal justification, and retained them for six and a half years despite his repeated requests that the Town return them. He argues for summary judgment because these facts are not in dispute, but the Town objects and argues that the claim should be dismissed because its actions do not legally qualify as a conversion and the individual Town employees cannot be liable because they were acting within the scope of their employment.

In an action for conversion, the Court focuses its inquiry on "whether the defendant has appropriated to his own use the chattel of another without the latter's permission and without legal right." *Terrien v. Joseph*, 73 R.I. 112, 53 A.2d 923, 925 (1947). "This intentional exercise of control over the plaintiff's chattel must 'so seriously interfere[] with the right of another to control it that the [defendant] may justly be required to pay the other the full value of the chattel.'" *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 97 (R.I. 2006) (quoting Restatement (Second) *Torts* § 222(A)(1) at 431 (1965)). Essentially, a conversion forces a defendant to purchase the property by judicial sale. *Prosser and Keeton on Torts* § 15 at 90 (5th ed. 1984).

To determine if a defendant has converted property, the Court should consider

(a) [T]he extent and duration of the actor's exercise of dominion or control;
(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
(c) the actor's good faith;

 (d) the extent and duration of the resulting interference with the other's right of control;
 (e) the harm done to the chattel;
 (f) the inconvenience and expense caused to the other.

*Restatement (Second) of Torts* § 222A(2) (1965). While the Town did retain Mr. Richer's property for six and a half years, there is no evidence that the Town intended to assert ownership over the property. It removed the guns from his home in the interest of public safety, and there is no evidence that the Town used the property or that it was damaged in any way. And while the Town's resistance to returning the guns inconvenienced Mr. Richer, this sole factor does not convince the Court that the Town intended to convert his property.

The Court GRANTS the Town's Motion for Summary Judgment (ECF No. 79) and DENIES Mr. Richer's Motion for Summary Judgment (ECF No. 77) on Count VII.

## IV. CONCLUSION

The Court GRANTS the Town's Motion for Summary Judgment on Counts I, II, III, V, VI, and VII. The Town's Motion to Strike is DENIED AS MOOT. ECF No. 101. The Court DENIES Mr. Richer's motion on Counts III, VI, and VII. Mr. Richer's expanded Motion for Summary Judgment on Count IV is DENIED, but the Court's order in *Richer I* granting summary judgment on due process for failure to return his property stands.


IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

June 4, 2019